**IN RE: DIGERATI TECHNOLOGIES, INC., Debtor.**

**Case No. 13–33264–H4–11**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Signed August 21, 2015

Deirdre Carey Brown, Annie E. Catmull, Melissa Anne Haselden, Edward L. Rothberg, Hoover Slovacek LLP, Lloyd Earl Kelley, The Kelley Law Firm, Johnie J. Patterson, Walker & Patterson, P.C., Craig E. Power, Cokinos Bosien & Young, Michael P. Ridulfo, Kane Russell Coleman and Logan, PC, Misty A. Segura, Cokinos, Bosien & Young, Houston, TX, Lawrence B. Goldstein, Gardere Wynne Sewell LLP, Dallas, TX, Jolene M. Wise, Securities and Exchange Commission, Chicago, IL, for Debtor.

*MEMORANDUM OPINION REGARDING THIRD AND FINAL APPLICATION OF DEBTOR'S COUNSEL HOOVER SLOVACEK LLP FOR ALLOWANCE OF COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD BEGINNING MAY 30, 2013 THROUGH APRIL 4, 2014*

## I. INTRODUCTION

Jeff Bohm, United States Bankruptcy Judge

The Court issues this opinion in the wake of the Fifth Circuit's issuance of *In re Woerner*, 783 F.3d 266 (5th Cir.2015), a watershed case because of its rejection of the 17–year–old holding of *Matter of Pro–Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir.1998). Now, the law in the Fifth Circuit is that bankruptcy courts should eval-

uate fee applications under a "good gamble" approach rather than the "identifiable, tangible, material benefit" retrospective standard. The debtors' bar is breathing a sigh of relief in the wake of this change in the law. However, as this opinion shows, merely because *Pro–Snax* is gone does not necessarily mean that fee applications will more easily be approved in their entirety.

On May 2, 2014, Hoover Slovacek, LLP (the *"Applicant"*), counsel for Digerati Technologies, Inc. (the *"Debtor"*), filed the Third and Final Application of Debtor's Counsel Hoover Slovacek LLP for Allowance of Compensation for Services and Reimbursement of Expenses for the Period Beginning May 30, 2013 Through April 4, 2014 (the *"Fee Application"*). [Doc. No. 831]. In the Fee Application, the Applicant requests this Court's approval of fees in the amount of $1,155,321.50, reimbursable expenses in the amount of $97,406.66, and fees and expenses for the preparation of the Fee Application in the amount of $10,000.00, for a total sum of $1,262,728.16. The Court notes that during the pendency of the case, it awarded fees and expenses to the Applicant on an interim basis under the then-prevailing *Pro–Snax* standard. However, because *Woerner* has since replaced *Pro–Snax*, this Court now reviews all of the services rendered, and the expenses incurred, under the new standard articulated in *Woerner*.

On May 22, 2014, Hunter Carr; Rhodes Holdings, LLC; Robert Rhodes (*"Rhodes"*): American Equity Fund, LLC; WEM Equity Investments, Ltd.; Recap Marketing & Consulting, LLC; Rainmaker Ventures II, Ltd.; William McIlwain; and Scott Hepford, John Howell, Robert L. Sonfield, Jr. and Robert L. Sonfield,

P.C. d/b/a Sonfield & Sonfield (collectively, the *"Objectors"*) filed an Amended Objection to the Fee Application (the *"Amended Objection"*). [Doc. No. 849]. On May 23, 2014, the Applicant filed a response to the Amended Objection. [Doc. No. 855].

This Court held a multi-day hearing on the Fee Application on May 27, 2014, July 8, 2014, August 19, 2014, August 28, 2014, September 23, 2014, January 9, 2015, January 16, 2015, and January 30, 2015, on which date the Applicant concluded its case-in-chief. At this point, the Objectors orally moved for a judgment on partial findings pursuant to Federal Rule of Bankruptcy Procedure 7052,[1] arguing that the Applicant's evidence was insufficient to show entitlement to any fee award. The Court granted the parties time to submit briefing on the motion for judgment on partial findings, and both sides did so. [*See* Doc. Nos. 1129 & 1130], On May 1, 2015, after considering this briefing, the Court denied the oral motion and ordered the Objectors to submit a witness list and an estimate of the amount of time their case in chief would require. [Doc. No. 1132]. The Objectors declined to present a case in chief, but rather requested a hearing solely to make closing arguments based upon the existing trial record. The Court granted this request, and on May 22, 2015, heard closing arguments on the Fee Application. The Court then took the matter under advisement.

The Court now approves the Fee Application in part and denies it in part, and in accordance with Rules 9014 and 7052, issues the following Findings of Fact and Conclusions of Law explaining its decision. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is

---

**1.** Any reference to "the Rules" refers to the Federal Rules of Bankruptcy Procedure. Further, any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party. For the reasons set forth herein, the Court approves $845,014.57 of the requested fees (including the fees for preparing the Fee Application), and $31,849.22 of the requested expenses; and disapproves $320,306.93 of the requested fees and $65,557.44 of the requested expenses.

## II. FINDINGS OF FACT

This Chapter 11 case was extremely acrimonious. Indeed, from the very outset of the case, there was a dispute about whether the board of directors that authorized the filing of the Chapter 11 petition was a legitimately constituted board. [*See* Doc. No. 318, pp. 6–8, ¶ 10–14]. Moreover, there was a dispute about whether the individual who signed the petition—i.e., Arthur Smith ("Smith ")—was actually the duly authorized president of the Debtor who had the power to sign the petition. [Doc. No. 318, pp. 6–8, ¶ 10–13]. The Applicant was certainly aware of this very bitter dispute, which became even more pronounced after the failed mediation session that occurred a few months after the Chapter 11 petition was filed. Given these circumstances, this Court assesses the Fee Application with one eye constantly cocked on how the Applicant dealt with those "frozen out" parties who believed that they were the properly constituted board of directors, or who believed the board which authorized the Chapter 11 filing was illegitimately constituted. This Court's analysis of the Fee Application also focuses closely on the myriad pleadings that the Applicant filed on behalf of the Debtor, many of which were opposed by those individuals who believed that they were the properly constituted board of directors or that the board which authorized the bankruptcy filing was illegitimately formed. The findings of fact relevant to the Fee Application given these—and other relevant—circumstances are as follows:

1. On May 30, 2013, the Debtor—a publicly-held company with approximately 6,000 shareholders—filed a voluntary Chapter 11 petition. [Doc. No. 1]. At the time of the filing of this petition, the Debtor was a holding company, and its primary and most valuable assets were the stock of two subsidiaries named Hurley Enterprises, Inc. and Dishon Disposal, Inc. [Doc. No. 831, ¶ 9]. These two entities were very successful oilfield service companies. The Debtor acquired the stock of these two companies by executing and delivering promissory notes for $60 million payable to the former owners of these entities. [Doc. No. 41, p. 10 of 25]. These former owners therefore became the largest secured creditors of the Debtor. These owners were very unsophisticated individuals who spent most of their waking hours toiling in the oil patch to make these businesses successful.

2. On June 24, 2013, the Applicant, on behalf of the Debtor, filed its Emergency Motion for Authority to Incur Debt under 11 U.S.C. § 364(c) and § 105 (the "*Motion for Authority to Incur Debt* "). [Doc. No. 48]. The Court held a hearing on the Motion for Authority to Incur Debt on June 27, 2013. On June 28, 2013, this Court issued an Order Denying the Motion for Authority to Incur Debt for three separate and independent reasons: (1) the Debtor failed to satisfy the requirement imposed by § 364(d)(1)(A) that the Debtor "is unable to obtain such credit other-

wise"; (2) the Debtor failed to demonstrate that the proposed loans were necessary to avoid immediate and irreparable harm to the estate; and (3) the Debtor failed to show how it was beneficial to the estate to pay the proposed salaries of the three individuals—i.e., Smith, Antonio Estrada ("*Estrada* "), and Katie Keller ("*Keller* ")—referenced in the Motion for Authority to Incur Debt. [Doc. No. 63].

3. On June 24, 2013, the Applicant, on behalf of the Debtor, filed its Motion for Leave to File Official Form 26 Under Seal (the "*Motion to Seal* "). [Doc. No. 47]. The Court held a hearing on the Motion to Seal on July 23, 2013. On this same day, this Court issued an Order Denying the Motion to Seal because the Applicant, on behalf of the Debtor, woefully failed to prove that the financial information of its subsidiaries deserved protection under § 107(b) and also failed to show any compelling reason to justify nondisclosure. [Doc. No. 130].

4. On July 3, 2013, the Applicant, on behalf of the Debtor, filed its Motion for Authority to Incur Debt Under 11 U.S.C. §§ 364(c)(1), 503(b)(1), and 507 (the "Second Motion for Authority to Incur Debt "). · [Doc. No. 74]. The Court held a hearing on the Second Motion for Authority to Incur Debt on July 22, 2013. On July 30, 2013, the Court issued an Order Denying the Second Motion for Authority to Incur Debt because the Debtor: (1) failed to meet its burden to demonstrate that the proposed loan proceeds were necessary to pay certain line. item expenses; and (2) failed to convince this Court that the Debtor needed the services of two individuals (Smith and Estrada) who

were each receiving $5,000.00 per month. [Doc. No. 156].

5. On July 8, 2013, the Applicant filed its Motion for Order Establishing Procedure for Interim Compensation of Professionals (the "*Motion for Procedures* "). [Doc. No. 79]. This Court held a hearing on the Motion for Procedures on September 12, 2013. On September 13, 2013, the Court issued an Order granting in part and denying in part the Motion for Procedures based on the oral ruling made at the hearing. [Doc. No. 280]. The Court denied this request in part because the unusually acrimonious nature of this case made the Applicant's request for automatic periodic fee disbursements inappropriate. [Hr'g held on Sept. 12, 2013, at 3:17–3:21 P.M.].

6. On July 18, 2013, the Applicant, on behalf of the Debtor, filed its Application to Approve Employment of Public Accountant for a Limited Purpose (the "*Application to Employ Public Accountant* ") seeking to employ Carlos Lopez and LBB & Associates, Ltd., LLP. [Doc. No. 107]. This Court held a hearing on the Application to Employ Public Accountant on September 20, 2013. On this same day, the Court issued an Order Denying the Application to Employ Public Accountant because the Debtor failed to adduce testimony in support of the Application to Employ Public Accountant. [Doc. No. 296]. The Debtor failed to adduce testimony because the Applicant, who was representing the Debtor, failed to bring any witnesses to adduce testimony in support of the Application to Employ Public Accountant. [Hr'g Minutes for Hr'g held on Sept. 20, 2013].

7. On August 16, 2013, the Applicant, on behalf of the Debtor, filed its Motion to Clarify the Court's Order Granting Defendant Robert L. Sonfield, Jr. P.C. d/b/a Sonfield & Sonfield and Robert L. Sonfield Jr.'s Motion to Remand Adversary Proceeding (the *"Motion to Clarify"*). [Adv. No. 13–03118, Doc. No. 48]. On August 26, 2013, this Court issued an Order Denying the Motion to Clarify because the Court's order of August 9, 2013, [Adv. No. 13–03118, Doc. No. 43], was unambiguous and did not need clarification. [Adv. No. 13–03118, Doc. No. 49].

8. On August 28, 2013, the Applicant, on behalf of the Debtor, filed its Application to Approve Employment of Special Corporate and Securities Counsel (the *"Application to Employ SEC Counsel"*) seeking to employ David M. Loev ("Loev") and the Loev Law Firm. [Doc. No. 254]. On August 30, 2013, the Applicant, on behalf of the Debtor, withdrew the Application to Employ SEC Counsel. [Doc. No. 260].

9. On September 9, 2013, the Applicant, on behalf of the Debtor, filed its Emergency Motion to Extend the Deadline to Provide Proof of Filing 2012 Federal Income Tax Return (the *"Emergency Motion to Extend Deadline"*). [Doc. No. 274]. On September 19, 2013, this Court held a hearing on the Emergency Motion to Extend Deadline. On the same day, the Court issued an Order Denying the Emergency Motion to Extend Deadline because there was insufficient cause to grant the relief requested on an emergency basis. [Doc. No. 291].

10. On September 23, 2013, the Applicant filed its First Interim Fee Application of Debtor's Counsel Hoover Slovacek LLP for Allowance of Compensation for Services and Reimbursement of Expenses for the Period Beginning May 30, 2013 Through August 31, 2013 and Request for Hearing Within 7 Days (the *"First Interim Fee Application"*). [Doc. No. 302]. On October 18, 2013, this Court held a hearing on the First Interim Fee Application. On October 23, 2013, the Court issued an Order Approving in Part and Denying in Part the First Interim Fee Application (the *"Order on the First Interim Fee Application"*). [Doc. No. 406]. Specifically, the Court authorized the Debtor to pay the Applicant attorneys' fees in the amount of $264,357.50 and expenses in the amount of $24,943.20, for a total of $289,300.70. [*Id.* at p. 3]. The Court denied all other requested fees, which totaled $37,094.50. [*Id.*]. As of the date of the filing of the Fee Application, the Applicant had received sufficient funds to pay the entire amount of the $289,300.70 that this Court had approved. [Doc. No. 831, 36 ¶ 32].

11. On September 27, 2013, the Applicant, on behalf of the Debtor, filed its proposed Chapter 11 Plan of Reorganization (the *"Proposed Plan"*). [Doc. No. 313]. On the same day, the Applicant, on behalf of the Debtor, filed a proposed disclosure statement in support of the Proposed Plan (the *"Proposed Disclosure Statement"*). [Doc. No. 314]. On October 25, 2013, the Applicant, on behalf of the Debtor, filed a Supplemental Exhibit "2" to the Proposed Plan. [Doc. No. 427]. On the same day, the Applicant, on behalf of the Debtor, filed a supplement to the Proposed Disclosure Statement.

[Doc. No. 428]. On October 29, 2013, the Applicant, on behalf of the Debtor, filed an amended supplement to the Proposed Disclosure Statement. [Doc. No. 434].

12. On November 4, 2013, the Applicant, on behalf of the Debtor, filed its Notice of Issuance of Subpoenas for Rule 2004 Examinations to Jennifer Abney, Robert L. Sonfield, Jr., and Martha Tessier a/k/a Mardy Tessier. [Doc. No. 447]. On November 5, 2013, this Court issued an Order Quashing Subpoena for Rule 2004 Examination of Robert L. Sonfield, Jr. because the Applicant (in its representation of the Debtor) had disregarded the Court's determination at a prior status conference that the 2004 Examination of Robert L. Sonfield, Jr. would take place on December 6, 2013. [Doc. No. 450].

13. On November 20, 2013, the Applicant filed its Second Interim Fee Application of Debtor's Counsel Hoover Slovacek LLP for Allowance of Compensation for Services and Reimbursement of Expenses for the Period Beginning September 1, 2013 Through October 31, 2013 and Request for Hearing Within 7 Days (the *"Second Interim Fee Application"*). [Doc. No. 497]. This Court held a hearing on the Second Interim Fee Application on January 6, 2014. On January 8, · 2014, the Court issued an Order Approving the Second Interim Fee Application (the *"Order on the Second Interim Fee Application"*), approving attorneys' fees in the amount of $240,869.00 and expenses in the amount of $19,017.27, for a total of $259,886.27. [Doc. No. 658]. As of the date of the filing of the Fee Application, the Applicant had received funds totaling $132,620.78 against the approved amount of $259,886.27. [Doc. No. 831, 36 ¶ 32]. Thus, as of the date of the filing of the Fee Application, the Applicant had received total funds of $421,921.48—representing payments to retire the entire amount awarded under the First Interim Fee Application (i.e., $289,300.70), plus payments of $132,620.78 to retire a portion of the entire amount awarded under the Second Interim Fee Application (i.e., $259,886.27).

14. On December 4, 2013, this Court held a hearing on a discovery dispute. Specifically, pursuant to this Court's order of November 5, 2013, [Doc. No. 451], a 2004 examination was to take place on December 2, 2013 of David Gorham (*"Gorham"*). A question had been posed to Gorham to which his attorney, Joe Luce (*"Luce"*), instructed him not to answer due to the alleged existence of a non-disclosure agreement. The Court therefore reviewed information received from Luce in his effort to convince this Court that Gorham should not be required to answer the question posed to him. At the conclusion of the hearing held on December 4, 2013, the Court found that there was no nondisclosure agreement in existence, and therefore ordered that Gorham answer the question posed to him. [Hr'g held on Dec. 4, 2013 at 11:07:43 A.M.–11:07:49 A.M.].

15. On December 7, 2013, the Applicant, on behalf of the Debtor, filed an addendum (the *"Addendum"*). [Doc. No. 563–1], to an amended settlement agreement (the *"Amended Settlement Agreement"*) that it had asked this Court to approve in a motion to compromise that the Ap-

plicant (on behalf of the Debtor) had already filed on September 27, 2013, [Doc. No. 312]. On December 9, 2013, Scott Hepford; the Lunaria Heritage Trust; Robert Rhodes, Rhodes Holdings, LLC; William McIlwain; Recap Marketing & Consulting, LLP; American Equity Fund, LLP; and WEM Equity Fund, LLC filed the Emergency Motion to Continue Hearing on Motion to Compromise, asserting that the Addendum substantially modified the Amended Settlement Agreement and "creates substantial prejudice and hardship on the objecting parties" (the *"Emergency Motion to Continue Hearing"*). [Doc. No. 576]. On the same day, the Applicant, on behalf of the Debtor, filed a response to the Emergency Motion to Continue Hearing. [Doc. No. 577]. The Applicant, on behalf of the Debtor, also filed a Notice of Corrected Exhibit B to the Debtor's Response to the Emergency Motion to Continue Hearing. [Doc. No. 579]. The Court held a hearing on December 11, 2013, and orally ruled that the Addendum should be stricken because it was prejudicial to those parties who filed the Emergency Motion to Continue Hearing. On the same day, this Court issued an Order Striking Addendum to Amended Settlement Agreement. [Doc. No. 594].

16. On January 10, 2014, the Applicant, on behalf of the Debtor, filed an amended Proposed Plan (the *"Proposed First Amended Plan"*). [Doc. No. 665].

17. On January 13, 2014, the Applicant, on behalf of Gilbert Herrera (*"Herrera"*) and Herrera Partners, filed the First Interim Fee Application of Debtor's Investment Bank[er] Gilbert A. Herrera and Herrera Partners for Allowance of Compensation for Services and Reimbursement of Expenses for Period Beginning July 1, 2013 Through December 31, 2013 and Request for Hearing Within 7 Days (the *"Herrera Fee Application"*). [Doc. No. 669]. On the same day, the Applicant amended the Herrera Fee Application (the *"Amended Herrera Fee Application"*). [Doc. No. 670], and Notice of the Herrera Fee Application, [Doc. No. 671]. On May 2, 2014, the Applicant, once again on behalf of Herrera, filed a Final Fee Application of Debtor's Investment Banker Gilbert A. Herrera and Herrera Partners for Allowance of Compensation for Services and Reimbursement of Expenses for the Period Beginning July 1, 2013 Through April 4, 2014 (the *"Herrera Final Fee Application"*). [Doc. No. 826]. On May 7, 2014, the Applicant, on behalf of Herrera, filed a Notice of Withdrawal, withdrawing the Amended Herrera Fee Application because the fees and expenses sought were included in the Herrera Final Fee Application. [Doc. No. 842]. This Court held a multi-day hearing on the Herrera Final Fee Application on July 22, 2014; August 18, 2014; August 20, 2014; September 9, 2014; October 1, 2014; October 14, 2014; and November 7, 2014.[2] On January 12, 2015, the Court denied the Herrera Final Fee

---

2. The Court intended to begin the hearing on May 27, 2014, but because exhibits had not been timely exchanged under the applicable local rule, the Court actually began hearing testimony and admitting exhibits on July 22, 2014.

Application in its entirety. [Doc. No. 1057]. The Court issued a memorandum opinion explaining its ruling that Herrera provided no benefit to the estate under either the *Pro–Snax* standard or the more flexible prospective approach already adopted by several other circuits. [Doc. No. 1056]; *In re Digerati Technologies, Inc.,* 524 B.R. 666, 673 (Bankr.S.D.Tex.2015).

18. On January 21, 2014, the Applicant, on behalf of the Debtor, amended the Proposed First Amended Plan (the *"Proposed Second Amended Plan"*), [Doc. No. 684], and amended the Proposed Disclosure Statement (the *"First Amended Disclosure Statement"*), [Doc. No. 685]. On the same day, this Court signed an Order Conditionally Approving the First Amended Disclosure Statement, Authorizing Debtor to Solicit Votes and Setting Confirmation Hearing. [Doc. No. 687].

19. On January 30, 2014, the Applicant, on behalf of the Debtor, filed its Non–Material Modifications to the Second Amended Plan and First Amended Disclosure Statement Dated January 21, 2014 Pursuant to Section 1127 of the Bankruptcy Code (the *"Non–Material Modifications"*). [Doc. No. 700]. On the same day, the Applicant, on behalf of the Debtor, filed the Emergency Motion to Approve the Non–Material Modifications (the *"Emergency Motion to Approve"*). [Doc. No. 701], and the Tabulation of Balloting on the Second Amended Plan, [Doc. No. 702]. The Court held a multiday hearing on the Proposed Second Amended Plan, the First Amended Disclosure Statement, and the Emergency Motion to Approve. At the close of the hearing on January 31, 2014, the Court ordered the Debtor's counsel (i.e., the Applicant) to incorporate the Non–Material Modifications by redlining the Proposed Second Amended Plan.

20. On February 3, 2014, the Applicant, on behalf of the Debtor, filed a redlined version of the Proposed Second Amended Plan. [Doc. No. 708]. On February 4, 2014, the Applicant, on behalf of the Debtor, amended the Non–Material Modifications (the *"Amended Non–Material Modifications"*). [Doc. No. 713]. On the same day, the Applicant, on behalf of the Debtor, filed the Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including Amended Modifications Filed on February 4, 2014, and Corrections to Typographical Errors (the *"Second Amended Plan with Amended Modifications"*). [Doc. No. 714]. Later that day, the Applicant, on behalf of the Debtor, filed a Notice of Filing with a redlined version of the Second Amended Plan with Amended Modifications. [Doc. No. 715].

21. On February 4, 2014, the Applicant, on behalf of the Debtor, amended the Amended Non–Material Modifications (the *"Second Amended Non–Material Modifications"*). [Doc. No. 722]. On the same day, the Applicant, on behalf of the Debtor, amended the Emergency Motion to Approve. [Doc. No. 723]. On February 5, 2014, the Applicant, on behalf of the Debtor, filed a Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including All Modifications and Corrections to Typographical Errors (the *"Second Amended Plan with All Modifications"*). [Doc. No. 726]. On the same day,

the Applicant, on behalf of the Debtor, filed a Notice of Filing with a redlined version of the Second Amended Plan with All Modifications attached as Exhibit A. [Doc. No. 727].

22. On February 6, 2014, the Applicant, on behalf of the Debtor, filed a Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including All Modifications and Corrections to Typographical Errors Dated February 6, 2014 (the *"Plan"*). [Doc. No. 731]. On the same day, the Applicant, on behalf of the Debtor, filed a Notice of Filing with a redlined version of the Plan attached as Exhibit A. [Doc. No. 732], On February 11, 2014, the Court issued an Order Denying Confirmation of the Plan (the *"Order Denying Confirmation of the, Plan"*). [Doc. No. 739]. Specifically, the Court denied confirmation of the Plan because the Debtor failed to satisfy the requirement of § 1129(a)(5)(A)(ii) that the appointment or continuance in office of all proposed officers and directors be "consistent with the interests of creditors and equity security holders and with public policy." *[Id.]*.[3]

23. On February 18, 2014, the Applicant, on behalf of the Debtor, filed the Motion to Approve Selection Process for Independent Director(s) of Debtor and/or Independent Directors of Reorganized Debtor Pursuant to an Amended Plan (the *"Motion to Approve Selection Process for Indepen-*

*dent Director"*). [Doc. No. 749]. On March 10, 2014, the Applicant, on behalf of the Debtor, filed a Notice of Withdrawal, withdrawing the Motion to Approve Selection Process for Independent Director. [Doc. No. 781].

24. On February 25, 2014, the Applicant, on behalf of the Debtor, filed a Notice of Appeal (the *"Notice of Appeal"*). [Doc. No. 765], intending to appeal the Order Denying Confirmation of the Plan. On February 27, 2014, the Court issued an order putting the Applicant on notice that it would not be "disposed to approve any fees for services rendered relating to this appeal" because the Debtor's conduct—prosecuting an appeal of the Order Denying Confirmation of the Plan, while simultaneously negotiating and working on filing a joint plan—was questionable given that existing Fifth Circuit law suggested that an order denying confirmation of a plan is not a final order that can be appealed.[4] [Doc. No. 767]. On February 28, 2014, the Applicant, on behalf of the Debtor, filed a Notice of Withdrawal, withdrawing the Notice of Appeal. [Doc. Nos. 771 & 791].

25. On February 27, 2014, a joint plan (the *"Joint Plan"*) and a disclosure statement (the *"Final Disclosure Statement"*) was filed by certain parties-in-interest, creditors, and the Debtor. [Doc. Nos. 768 & 769]. On March 3, 2014, the Court signed an Order Conditionally Approving the

---

3. This Court subsequently issued a memorandum opinion discussing its reasons for denying confirmation of the Plan. *In re Digerati Technologies, Inc.*, 2014 WL 2203895 (Bankr. S.D.Tex. May 27, 2014).

4. It is worth noting that the Supreme Court has since issued an opinion holding that deni-

al of a proposed Chapter 13 plan is not a final order that can be appealed. *Bullard v. Blue Hills Bank*, —— U.S. ——, 135 S.Ct. 1686, 191 L.Ed.2d 621 (2015). This Court sees no reason why *Bullard* would not apply to Chapter 11 plans as well.

Final Disclosure Statement. [Doc. No. 774]. On April 4, 2014, the Court held a hearing on the Joint Plan. At this hearing, Craig Power, counsel for the largest secured creditors in this case, took the lead in prosecuting the Joint Plan, including making an opening statement and then proffering the testimony of several witnesses in support of the Joint Plan. On the same day, this Court signed an Agreed Order Confirming the Joint Plan. [Doc. No. 795].

26. On May 2, 2014, the Applicant filed the Fee Application. [Doc. No. 831]. On May 9, 2014, the Objectors filed their Objection to Third and Final Application of Debtor's Counsel for Allowance of Compensation for Services and Reimbursement of Expenses (the *"Objection"*). [Doc. No. 843]. On May 22, 2014, the Objectors filed their Amended Objection to Fee Application (already defined as the Amended Objection). [Doc. No. 849]. On May 23, 2014, the Applicant filed a response to the Objection and the Amended Objection. [Doc. No. 855].

27. On May 26, 2014, the Applicant filed its Expedited/Emergency Motion to Strike the Objection and the Amended Objection (the *"Motion to Strike"*). [Doc. No. 863]. On the same day, the Applicant filed a Corrected Exhibit B, [Doc. No. 864], and amended the Motion to Strike (the *"Amended Motion to Strike"*), [Doc. No. 865]. On May 27, 2014, this Court held a hearing on the Amended Motion to Strike. On the same day, this Court issued an Order Denying the Amended Motion to Strike because the Applicant should have timely filed a motion to strike after the Objection was filed, but instead the Applicant waited until the eleventh hour before the hearing on the Fee Application. [Doc. No. 868].

## III. CREDIBILITY OF WITNESSES

Three witnesses testified during the multi-day hearing on the Fee Application: Edward Rothberg (*"ELR"* or *"Rothberg"*), a partner at Hoover Slovacek, LLP; Deirdre Carey Brown (*"DCB"* or *"Brown"*), of counsel at Hoover Slovacek, LLP; and Johnie Patterson, of Walker & Patterson PC, who represents some of the Objectors. The Court finds that all witnesses were credible and accords their testimony equal weight. Having made this finding, however, the Court notes that the testimony from Rothberg and Brown (two of the attorneys from the Applicant who provided extensive services in this case) was lacking with respect to describing why many of the services set forth in the Applicant's timesheets were either necessary to the administration of the case or beneficial to the estate. This deficiency in their testimony has led this Court to find that in numerous instances, as discussed herein, the Applicant has failed to satisfy its burden of proving that the fees requested for certain services are reasonable or necessary. *See Matter of Evangeline Ref. Co.*, 890 F.2d 1312, 1326 (5th Cir.1989) (holding that "[t]he applicant bears the burden of proof in a fee application case ... [and a fee] application must be sufficiently detailed and accurate that, in conjunction with any proceeding in connection therewith and the record in the case, a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable.").

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

#### 1. *Jurisdiction*

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C.

§ 1334(b). This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of this Chapter 11 estate. Further, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) because it involves the allowance or disallowance of claims against the estate—namely, the Applicant's claim for fees and expenses. Additionally, this contested matter is core pursuant to 28 U.S.C. § 157(b)(2)(0) because it involves the adjustment of the debtor-creditor relationship insofar as the fee and expense reimbursement request of the Applicant— a creditor of the Debtor's estate—is being granted in part and denied in part. Finally, it is core pursuant to the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.,* 163 F.3d 925, 930 (5th Cir.1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts),* Adv. No. 06–3556, 2006 WL 3805670, at *19 (Bankr.S.D.Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance.").

### 2. *Venue*

Venue is proper pursuant to 28 U.S.C. § 1408(1) for the reasons set forth in this Court's Findings of Fact and Conclusions of Law entered on the docket on September 30, 2013. [Doc. No. 318].

### 3. *Constitutional Authority to Enter a Final Order*

In the wake of the Supreme Court's issuance of *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475

(2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any dispute brought before it. In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. The pending dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here. A core proceeding under § 157(b)(2)(A), (B), and (O) is entirely different than a core proceeding under § 157(b)(2)(C). *See, e.g., Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547–48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also In re Davis,* 538 Fed.Appx. 440, 443 (5th Cir.2013) *cert. denied sub nom. Tanguy v. W.,* —— U.S. ——, 134 S.Ct. 1002, 187 L.Ed.2d 851 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' ... We decline to extend *Stern*'s limited holding herein.").

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under § 157(b)(2), *see In re Re-*

*naissance Hosp. Grand Prairie Inc.,* 713 F.3d 285, 294 n. 12 (5th Cir.2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) ..."), this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the dispute at bar. In *Stern,* the debtor filed a counterclaim based *solely* on state law; whereas, here, the claim brought by the Applicant is based solely on an express Code provision (§ 330) and judicially-created bankruptcy law interpreting this provision. This Court is therefore constitutionally authorized to enter a final order on the Fee Application. *See In re Airhart,* 473 B.R. 178, 181 (Bankr.S.D.Tex.2012) (noting that the court has constitutional authority to enter a final order when the dispute is based upon an express provision of the Code and no state law is involved).

Finally, in the alternative, this Court has the constitutional authority to enter a final order because all of the parties in this contested matter have consented, impliedly if not explicitly, to adjudication of this dispute by this Court. *Wellness Int'l Network, Ltd. v. Sharif,* — U.S. —, 135 S.Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent. . . ."). Indeed, the Applicant filed its Fee Application in this Court, [Finding of Fact No. 26]; the Objectors filed an initial objection and then thereafter filed the Amended Objection, [*Id.*]; the Applicant then filed its response to the Amended Objection, [*Id.*] and also filed its Motion to Strike the Amended Objection, [Finding of Fact No. 27], which this Court denied, [*Id.*]; and the parties proceeded to make a record in a multi-day hearing without ever objecting to this Court's constitutional authority to enter a final order on the Fee Application. If these circumstances do not constitute implied consent, nothing does.

## B. Standard for Professional Compensation

Section 330 of the Code governs compensation for a debtor's counsel. *In re MSB Energy, Inc.,* 450 B.R. 659, 661 (Bankr.S.D.Tex.2011). A court may award "reasonable compensation for actual, necessary services rendered" by debtor's counsel and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)-(B). Section 330(a)(3) instructs courts, "[i]n determining the amount of reasonable compensation," to "take into account all relevant factors, including":

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Furthermore, § 330 mandates that "the court *shall not* allow any compensation for—"

(i) Unnecessary duplication of services; or

(ii) Services that were not—

(I) Reasonably likely to benefit the debtor's estate; or

(II) Necessary to the administration of the case.

■ This Court has an independent duty to examine the reasonableness of the fees in the Fee Application. *See In re WNS, Inc.*, 150 B.R. 663, 664 (Bankr. S.D.Tex.1993) ("Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and it has the duty to independently examine the reasonableness of the fees."). The leading Fifth Circuit decision regarding § 330 is *Woerner*. In *Woerner*, the Fifth Circuit joined the majority of circuits in adopting a prospective test for determining whether professional services are compensable, as suggested by the third factor that courts must consider under § 330: "whether the services were necessary ... or beneficial *at the time at which the service was rendered*." *Id.* at 268, 273–74 (emphasis added). Additionally, the Fifth Circuit provided the following list of factors that bankruptcy courts "ordinarily consider" when weighing this factor:

the probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff, and any

potential benefits to the estate (rather than to the individual debtor).

*Id.* at 276.

*Woerner* reversed the Fifth Circuit's prior retrospective test, under which professionals could only be compensated for services that *actually* resulted in a tangible, identifiable, and material benefit to the estate. *See Pro–Snax*, 157 F.3d at 426. Instead, under the new, prospective test, "[w]hether the services were ultimately successful is relevant to, *but not dispositive of*, attorney compensation." *Woerner*, 783 F.3d at 276 (emphasis added). In sum, the Fifth Circuit held that when read in its entirety, § 330 "permits a court to compensate an attorney not only for activities that were 'necessary,' but also for good gambles—that is, services that were objectively reasonable at the time they were made—even when those gambles do not subsequently (or eventually) produce an 'identifiable, tangible, and material benefit.' " *Id.* at 273–74. If professional services were *either* " 'necessary to the administration' of a bankruptcy case or 'reasonably likely to benefit' the bankruptcy estate 'at the time at which [they were] rendered,' *see* 11 U.S.C. § 330(a)(3)(C), (4)(A), then the services are compensable." [5] *Id.* at 276. However, the Fifth Circuit emphasized that its *Woerner* ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account *all* relevant factors.' " *Id.* at 277 (quoting § 330) (emphasis added).

■ While *Woerner* overturned *Pro–Snax*, it did not disturb the lodestar approach used in assessing fee applications.

5. Hereinafter, in this Opinion, when this Court uses the word "necessary," it will usually be shorthand for "necessary to the administration of this Chapter 11 case." Further, when this Court uses the word "reasonable," it will usually be shorthand for "reasonably likely to benefit this Chapter 11 estate at the time the services were rendered."

Indeed, courts within the Fifth Circuit have ordinarily used the lodestar method to calculate the amount of reasonable attorneys' fees. *In re Cahill,* 428 F.3d 536, 539–40 (5th Cir.2005) (citation omitted). Under the lodestar method, a court first calculates the compensable hours billed, and then calculates a reasonable hourly rate for the compensable services. *Id.* at 540. The court arrives at the final amount of compensable fees by multiplying the two resulting figures. *Id.* The Supreme Court has emphasized the importance of the lodestar approach in calculating the reasonableness of attorneys' fees, noting that because the method is readily administrable and objective, it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v. Kenny,* 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010).

■ Finally, this Court, after determining the lodestar fee, may consider, in its discretion, whether the resulting lodestar amount should be adjusted upward or downward to account for factors not considered during the lodestar calculation. *In re Pilgrim's Pride Corp.,* 690 F.3d 650, 655 (5th Cir.2012). In assessing whether an adjustment is appropriate, the Court may consider, among other factors, the twelve factors articulated in *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714 (5th Cir.1974). These factors are: "(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases." *Id.* at 716. Aside from the twelve *Johnson* factors, the Court may also "consider all relevant factors" in making any adjustment to the lodestar fee. *Woerner,* 783 F.3d at 277.

### C. Step No. 1 under the Lodestar Approach: Determining Whether all the Hours Billed by the Applicant are Compensable

■ The first step in the lodestar method is to evaluate the time entries submitted by the Applicant and determine which are allowable. This step involves considering whether the services which the Applicant billed were reasonable or necessary. Because of the prominence of this factor in § 330 and in *Woerner,* the Court weighs this factor most heavily.

#### 1. *Whether the Services Were Reasonable or Necessary*

This Court has carefully reviewed the timesheets attached to the Fee Application. Having identified the services for which the Applicant intends to charge the estate, the Court will now address whether these services were either reasonable or necessary with regard to this Chapter 11 case.

#### a. *The Applicant's Timesheets Contain Vague Time Entries and Lumped Time Entries that Lead this Court to Disallow the Fees Associated with These Entries*

■ The Court finds that several of the entries in the Fee Application are vague, are incomplete, contain insufficient detail, or are "lumped," preventing this Court from determining whether the services were either reasonable or necessary. The Court will therefore deduct these entries, amounting to 253.9 hours and $71,460.50 in

billings, from the total amount that the Applicant requests.

### i. Vague Time Entries

Set forth below are a few examples of vague entries. Attached hereto is a chart labeled **Exhibit A** setting forth *all* of the vague entries, the billings for which this Court disallows. The far right column of **Exhibit A** sets forth all of this Court's findings as to why the entries are vague or incomplete. The Court notes that many of these entries assume—incorrectly—that this Court knows the backgrounds and roles of all of the individuals whose names are referenced in the entries. The result of this incorrect assumption is this Court's denial of all of the requested fees associated with these entries, as this Court simply cannot make a finding that the services described therein were necessary or reasonable. Stated differently, the Court cannot divine who these individuals are and what relationship they have to this Chapter 11 case; the Applicant has the burden of educating this Court about this information, and the Applicant has failed to do so. *Matter of Evangeline,* 890 F.2d at 1326 (explaining that "[t]he applicant bears the burden of proof in a fee application case. The reviewing court should not venture guesses nor undertake extensive investigation to justify a fee for an attorney [ ] who has not done so himself. It is not an overly burdensome task to enlighten the court as to the work undertaken.").

■ Time entries that do not provide sufficient detail to determine whether the services described are compensable may be disallowed due to vagueness. *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.1995). Several of the Applicant's time entries are vague. For example, on June 28, 2013, DCB billed 0.7 hours for "Confer with Mr. Rothberg regarding research issues.(.2) Correspondence with

Mr. Smith regarding research issues.(.2) Telephone conference with Mr. Smith.(.3)." [Doc. No. 831–1, p. 11]. On September 27, 2013, Harold May (HNM or "*May* "), an attorney employed by the Applicant, billed 1.8 hours for "Discussion regarding disclosure statement items." [Doc. No. 831–3, p. 89]. Without further information identifying the "research issues" or "disclosure statement items" at issue, this Court cannot determine if these services are reasonable or necessary. Nor can this Court determine if the services are reasonable or necessary where DCB fails to set forth what the subject of her conference with Smith was and where May fails to identify with whom he discussed the disclosure statement issues.

■ Moreover, there are some time entries relating to "review emails" and "exchange emails" without any reference to the recipient or the sender of the emails or what issues the emails concern. For example, on December 9, 2013, HNM billed 0.8 hours for "Discussions and reviewed emails." To merit compensation for time spent on an email, a professional must "identify the participants, describe the substance of the communication, explain its outcome and justify its necessity." *In re Fibermark, Inc.,* 349 B.R. 385, 396 (Bankr.D.Vt.2006). In other entries, the individual billing for the services set forth either the subject or the participants, but not both. These entries therefore fail to provide the information required to establish that the services were reasonable or necessary.

Nor did the Applicant provide any testimony at the Fee Application hearing about these entries that would assist this Court in determining whether the services were reasonable or necessary. For example, if Rothberg had testified that the emails that HNM reviewed concerned the Debtor's NOL carryforward and that Rothberg

used this information to negotiate the Joint Plan, then this Court might well be able to determine that HNM's services were reasonable or necessary. Unfortunately for the Applicant, no such testimony was adduced. *See, e.g., In re Advanced Microbial Solutions, L.L.C.,* 306 B.R. 915, 920 (E.D.Tex.2004) ("Surprisingly, although witnesses were listed ... no testimony ... was presented to the bankruptcy court ... [p]resentation of such evidence in the form of an affidavit or live testimony is fundamental in presenting an attorney's fee application to a court."); *In re First State Bancorporation,* 2014 WL 1203141, *9 (Bankr.N.M.2014) ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation. Absent evidence of how and why [the law firm] divided tasks among its attorneys, why it was appropriate for one partner to routinely review and revise another partner's work, and why it was necessary for both partners to attend and bill for their appearance at hearings, the Court finds that a portion of the requested fees must be disallowed."). Thus, the Applicant has failed to meet its burden of establishing that the services described in **Exhibit A** was either reasonable or necessary.

In total, the Court excludes 42.1 hours, amounting to $13,332.50 in billings, for vague entries. As already noted, **Exhibit A** sets forth all of the vague entries and this Court's findings as to why they are vague.

### ii. Lumped Time Entries

In addition to vague entries, the Fee Application contains several time entries that lump together multiple services without providing the time spent on each discrete task. Like vague entries, lumped entries prevent a court from accurately determining how many hours were reasonably billed. *See In re 900 Corp.,* 327 B.R. 585, 598 (Bankr.N.D.Tex.2005) ("When time entries are vague or lumped together, such that the Court cannot determine how much time was spent on particular services, then the Applicant has not met its burden to show that its fees are reasonable."); *In re Saunders,* 124 B.R. 234, 237 n.1 (Bankr.W.D.Tex.1991) ("In order for the court to determine whether time spent on an activity was reasonable, multiple services cannot be 'lumped' together under one time entry."). Indeed, lumping activities on fee statements violates the U.S. Trustee's Fee Guidelines,[6] and this Court has repeatedly made it known in prior opinions over the past several years that it adheres to these Guidelines and expects the practicing bar to follow them. *See, e.g., In re Ritchey,* 512 B.R. 847, 870–72 (Bankr.S.D.Tex.2014); *In re Jack Kline Co., Inc.,* 440 B.R. 712, 752–53 (Bankr. S.D.Tex.2010); *In re Energy Partners, Ltd.,* 422 B.R. 68, 89 (Bankr.S.D.Tex.2009).

At least 118 time entries in the Fee Application contain "lumped" activities. For example, on July 18, 2013, DCB billed 6.0 hours for performing five separate tasks: "Draft response to motion to transfer venue and assemble multiple exhibits,

---

**6.** U.S. DEP'T OF JUSTICE, *Guidelines for Reviewing Applications for Compensation (Fee Guidelines),* JUSTICE.GOV (Feb. 21, 2013 4:50 PM), *http://www.justice.gov/ust/eo/rules_regulations/ guidelines/docs/feeguide.htm.* The U.S. Trustee Guidelines expressly state that:

Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour. Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; however, tasks performed in a project which total a *de minimis* amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate.

revise, research case law and file." [Doc. No. 831–2, p. 17]. What DCB should have done was to record the amount of time she spent *on each of these discrete tasks* so that this Court could assess whether the time spent on each task was reasonable.

DCB was not the only attorney who entered lumped entries on the timesheets. On January 11, 2014, ELR billed the Debtor 3.0 hours for the following services: "Numerous telephone conferences with Art Smith, D. Brown, and C. Power to discuss revised settlement terms. Draft extensive email with comments on structure of the revised proposed settlement." [*Id.* at p. 129]. Again, on January 20, 2014, ELR billed 2.5 hours for four discrete services: "Review email from C. Power with comments on plan and disclosure statement. Telephone conference with C. Power regarding same. Revise plan and disclosure statement. Draft email transmitting same to Mr. Power." [Doc. No. 831–3, p. 103 of 165]. Once again, this Court reiterates that, as with DCB, ELR needed to break out his time on each of the above-described discrete tasks for this Court to assess reasonableness. His failure to do so results in this Court disallowing the fees associated with these entries.

The Court finds the Applicant's lumping particularly egregious considering that Rothberg and Brown are both experienced, board-certified bankruptcy attorneys who should have known that lumping violates the U.S. Trustee's Fee Guidelines. Both are—or should be—familiar with this Court's stance on lumping. *See Ritchey*, 512 B.R. at 872 (holding a bankruptcy professional to a higher standard due to professional's board certification). Indeed, both Rothberg and Brown know how to bill their time correctly—i.e., break out the time spent on each discrete task—because they did so in several instances as evidenced by the timesheet themselves. [*See, e.g.*, Doc. No. 831–1, p. 23 of 50; Doc. No. 831–2, p. 7 of 160] (DCB's time entries stating: "Review objection to DIP Motion.(.1) Assemble rebuttal documents.(.3) Confer with Mr. Rothberg.(.1)"; and "Internet research for general background on Debtor and other parties in litigation (1.0). Continue overview of various pleadings and matters pending in various courts (2.0)." and ELR's time entry stating: "Review objection to DIP loan filed by Rhodes (.3). Prepare for and attend interim DIP Loan hearing.(4.7)."; and subsequent time entries of February 18, 2014 where he broke out his time for one discrete task as taking 0.4 hours and another discrete task taking 1.5 hours).

In sum, the Applicant's lumped entries in the Fee Application amount to 211.8 hours and $58,128.00 in billings. This Court will deduct these time entries because, due to the lumping, the Applicant has not met its burden of proving that the services described therein were reasonable or necessary. Attached hereto is a chart labeled **Exhibit B** setting forth all of the lumped entries, the billings for which this Court completely disallows.

b. *The 20 Project Categories of Services Described in the Fee Application Contain Certain Entries that are Disallowed, Resulting in this Court's Disapproval of the Fees Associated Therewith*

With regard to the remaining time entries, the Court has examined whether the services rendered were reasonable or necessary according to the twenty project categories into which the Applicant has grouped its services in the Fee Application. Attached hereto as **Exhibit C** is a one-page chart setting forth for each category: (1) the number of hours billed; (2) the amount of fees requested; (3) the number of hours disallowed; and (4) the

amount of fees disallowed. In total, the services that are disallowed—because they were neither necessary to case administration nor reasonably likely to benefit the estate at the time they were performed— amount to 246.70 hours and $93,132.23 in billings.[7] Attached hereto is a chart labeled **Exhibit D** which breaks out the disallowed time entries for each of the categories that are summarized in **Exhibit C** and discussed immediately below.[8] The far right column of **Exhibit D** sets forth all of this Court's comments and findings as to why the Court is completely disallowing the requested fee associated with each entry.

i. *Project Category # 1: "General, Miscellaneous Services"*

With respect to the services listed in the "General, Miscellaneous" category, the Court finds that these services, with certain exceptions set forth below, were reasonable and necessary.

The Court finds that some of the time entries in the "General, Miscellaneous Services" category involve services that were not necessary to case administration, nor were they reasonably likely to benefit the estate at the time they were performed. The Court notes once again that the Applicant provided no testimony at the Fee Application hearing explaining how the services described therein were necessary or reasonable. *First State Bancorporation,* 2014 WL 1203141, at \*9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing

to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions,* 306 B.R. at 920.

The Court discusses all of the infirmities in the time entries from the "General, Miscellaneous Services" category on pages 1–28 of **Exhibit D.** A few are discussed below to provide context.

First, on June 27, 2013, DCB billed 4.0 hours for "Meet with Debtor representatives.(1.0) Attend. Status Conference to provide litigation strategy update, and hearing on [debtor-in-possession] lending motion(3.)." [Doc. No. 831–2, p. 11 of 160]. For the same reasons this Court denied the Debtor's request for post-petition financing, [Finding of Fact No. 2], this Court finds that the services associated with this request were not necessary to case administration, nor were they reasonably likely to benefit the estate at the time they were performed. Specifically, the Applicant's services were not reasonably likely to benefit the estate when performed because the Applicant, as Debtor's counsel prosecuting the motion, did not come close to introducing sufficient evidence for the Debtor to meet its burden of proof on the two issues required to obtain this particular post-petition financing: (1) that the debtor was unable to obtain financing on less onerous terms than those proposed; and (2) that the financing was required to avoid irreparable harm. [Doc. No. 63, pp.

---

7. Of the $93,132.23, $67,143.50 represents actual hours billed that this Court is disapproving, and the remaining $25,988.73 represents the percentage reductions that this Court made due to (a) the Applicant's prosecution of the Plan which, as discussed under the "Plan and Disclosure Statements" category, was not a "good gamble;" (b) the reduction relating to the Motion for Procedures (*see* **Exhibit E**); and (c) the reduction relating to

the First Interim Fee Application (*see* **Exhibit F**).

8. **Exhibit D** does not contain the disallowed time entries for two categories: (1) Recap Marketing v. Jaclin Litigation; and (2) Arrayit. The disallowed time entries associated with these two categories are, however, discussed in the main body of this Memorandum Opinion.

3–4 of 9]. While this Court recognizes that the new standard articulated in *Woerner* is "good gamble"—and no longer an actual, tangible, identifiable, material benefit— this Court concludes that the Applicant cannot satisfy the "good gamble" standard because its courtroom performance at this hearing was woeful. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony that the Applicant adduced at the hearing.

Second, on September 12, 2013, Melissa Haseldon (MMH), an attorney employed by the Applicant, billed 0.10 hours for "Review and approve Notice of Hearing on Motion to Extend Deadline to Provide Proof of Filing Taxes." [Doc. No. 831–2, p. 38 of 160]. For the same reasons this Court denied the Emergency Motion to Extend Deadline on September 19, 2013, [Finding of Fact No. 9], this Court finds that the services associated with this request were not necessary to case administration, nor were they reasonably likely to benefit the estate at the time they were performed. Specifically, at the hearing on the Motion to Extend Deadline, the Applicant, as Debtor's counsel, failed to put forth an acceptable effort to introduce sufficient evidence for the Debtor to meet its burden of proof on the necessity of extending the deadline. [Doc. No. 291]. Stated in *Woerner*'s terms, the effort put forth by the Applicant was not a "good gamble."

Third, there are several time entries relating to the Debtor's subpoena for a Rule 2004 Examination of Robert L. Sonfield, Jr. [Doc. No. 831–2, pp. 66–67 & 72–73 of 160]. Because the Applicant, on behalf of the Debtor, disregarded the Court's determination at a prior status conference that the 2004 Examination of Robert L. Sonfield, Jr. would take place on December 6, 2013, this subpoena was quashed. [Finding of Fact No. 12]. Accordingly, the Applicant's services relating to the subpoena for Rule 2004 Examination of Robert L. Sonfield, Jr. were not necessary to case administration, nor were they reasonably likely to benefit the estate at the time they were performed.

Fourth, there are several time entries relating to the Notice of Addendum to Amended Settlement and the Addendum, including entries relating to the Emergency Motion to Continue Hearing, which certain parties filed in response to the Debtor's filing of the Addendum. [Finding of Fact No. 15]; [Doc. No. 831–2, pp. 89, 93, 97, 98, 103, 107–09 & 111 of 160]. For the same reasons this Court issued the Order Striking Addendum to Amended Settlement Agreement, [Finding of Fact No. 15], this Court finds that none of the Applicant's services relating to the Addendum were necessary to case administration, nor were they likely to benefit the estate at the time they were performed. Specifically, the Applicant sprung the addendum at the eleventh hour on all of the parties who were involved in global settlement negotiations, and by doing so, the Applicant sandbagged these parties, which caused the Court to strike the addendum. The Applicant's actions fomented further mistrust between the Debtor and various active creditors and parties-in-interest, which harmed the estate because it undermined achieving global resolution sooner rather than later. Stated differently, the Applicant did not make a "good gamble" by filing the Addendum at the last minute.

Fifth, there are six time entries relating to pleadings that were not filed. Specifically, there are: (1) five entries relating to a motion opposing re-opening discovery for a particular controversy; and (2) one entry relating to a notice of filing certain deposition transcripts. [Doc. No. 831–2, pp. 123–24 & 129 of 160]. Because the Applicant,

during the course of the hearing on this Fee Application, gave no testimony explaining to the Court why these pleadings were never filed—and because the Court has been unable to review these unfiled pleadings to determine how their content benefited the estate—the Court finds that the Applicant has not met its burden of proof of establishing that the services associated with these pleadings were reasonable or necessary. *Matter of Evangeline,* 890 F.2d at 1326 (explaining that "[t]he applicant bears the burden of proof in a fee application case. The reviewing court should not venture guesses nor undertake extensive investigation to justify a fee for an attorney [ ] who has not done so himself. It is not an overly burdensome task to enlighten the court as to the work undertaken.").

Sixth, there are several time entries relating to the Motion to Approve Selection Process for Independent Director. [Doc. No. 831–2, pp. 141–43 of 160]. Yet, the Debtor withdrew the Motion to Approve Selection Process for Independent Director. [Finding of Fact No. 23]. In light of this fact, the value of the services relating to this motion are not self-evident, and it is the Applicant's burden to prove their value to the Court to be entitled to compensation. *Matter of Evangeline Ref. Co.,* 890 F.2d at 1326. Because the Applicant has failed to do so—indeed, no testimony was adduced about these particular services—the Court cannot find that these services were either necessary to case administration or reasonably likely to benefit the estate at the time they were performed. *First State Bancorporation,* 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and

necessity of its requested compensation."); *Advanced Microbial Solutions,* 306 B.R. at 920.

In sum, the Court finds that hours billed for the services in the "General, Miscellaneous Services" category that were neither necessary to case administration nor reasonably likely to benefit the estate at the time they were performed total 30.8 hours, corresponding to $8,098.50 in fees requested, and it is this amount that the Court declines to approve.[9]

### ii. Project Category # 2: "Schedules and Statements, 341 meeting, and Monthly Operating Reports"

With respect to the services listed in the "Schedules and Statements, 341 meeting, and the Monthly Operating Reports" category, the Court finds that these services, with certain exceptions set forth below, were reasonable and necessary.

First, there are several time entries relating to the Motion to Seal. [Doc. No. 831–3, pp. 8, 10 & 14–16 of 165]. For the same reasons this Court denied the Motion to Seal, [Finding of Fact No. 3], this Court finds that the services associated with the request to file its Official Form 26 under seal were not necessary to case administration, nor were they reasonably likely to benefit the estate at the time they were performed. Once again, the Applicant did a poor job of introducing evidence at the hearing on the Motion to Seal; therefore, prosecuting this motion was not a "good gamble." Moreover, at the Fee Application hearing, the Applicant failed to introduce any exhibits or adduce any testimony to alter this conclusion. *First State Bancorporation,* 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish

---

**9.** *See* Exhibit D, pp. 1–28, for the time entries corresponding to this disallowed amount.

the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions*, 306 B.R. at 920. Therefore, the Applicant is not entitled to compensation for these services.

Second, there are several time entries relating to the Emergency Motion to Extend Deadline. [Doc. No. 831–3, pp. 24–26 of 165]. For the same reasons this Court denied the Emergency Motion to Extend Deadline, [Finding of Fact No. 9], this Court finds that the services associated with extending the deadline to provide proof of filing the 2012 tax return were not necessary to case administration, nor were they reasonably likely to benefit the estate at the time they were performed. Specifically, the Applicant did not do a good job at the hearing of adducing testimony to establish that cause existed to extend the deadline. Moreover, the Applicant did not provide any testimony at the hearing on the Fee Application to convince this Court that the attempt to obtain approval of the Emergency Motion to Extend Deadline was a "good gamble" at the time the Applicant prosecuted this motion. *First State Bancorporation*, 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions*, 306 B.R. at 920. Therefore, the Applicant is not entitled to compensation for these services.

In sum, the Court finds that the fees for the services in the "Schedules and Statements, 341 meeting, and the Monthly Operating Reports" category that were neither necessary to case administration nor reasonably likely to benefit the estate at

the time they were performed total 26.5 hours, corresponding to $7,038.00 in fees requested, and it is this amount that the Court declines to approve.[10]

### iii. Project Category # 3: "Professionals"

With respect to the services listed in the "Professionals" category, the Court finds that these services, with certain exceptions set forth below, were reasonable and necessary. However, the Court finds that several of the time entries in the "Professionals" category involve services that were not necessary to case administration, nor were they reasonably likely to benefit the estate at the time they were performed.

First, several time entries involve services relating to the Application to Employ Public Accountant. [ *Id.* at pp. 47, 52–57, 63 & 64]. For the same reasons this Court denied the Debtor's request to employ Carlos Lopez and LBB & Associates, Ltd., LLP, [Finding of Fact No. 6], this Court finds that the services associated with this particular application were not necessary to case administration, nor were they reasonably likely to benefit the estate at the time they were performed. Once again, the Applicant did a poor job of introducing evidence at the hearing on the Motion to Employ Public Accountant; therefore, prosecuting this motion was not a "good gamble." Moreover, at the Fee Application hearing, the Applicant failed to introduce any exhibits or adduce any testimony to alter this conclusion. *First State Bancorporation*, 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish

---

10. *See* Exhibit D, pp. 29–59, for the time entries corresponding to this disallowed amount.

the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions,* 306 B.R. at 920. Therefore, the Applicant is not entitled to compensation for these services.

Second, there are several time entries relating to the Debtor's efforts to employ a special corporate and securities counsel and the application to employ David M. Loev and The Loev Law Firm. [Doc. No. 831–3, pp. 49, 59, 60 & 62 of 165]. Because the Debtor later withdrew its Application to Employ SEC Counsel, [Finding of Fact No. 8], the value of the related services is not obvious to this Court. Nor did the Applicant provide any testimony to demonstrate the value of these services; therefore, the Court cannot find that they were either necessary to case administration or reasonably likely to benefit the estate at the time they were performed. *First State Bancorporation,* 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions,* 306 B.R. at 920. Because the Applicant has failed to meet its burden that these services were necessary or reasonable, the Applicant is not entitled to compensation for these services.

Third, the Court finds that two entries on September 17, 2013 should be excluded. Specifically, ELR billed 1.00 hours for "Conference with R. Remy regarding potential retention as corporate/securities counsel," and DCB billed 2.00 hours for "Meeting with Mr. Rothberg and Mr. Remy regarding potential employment as SEC attorney and receive his feedback on transaction." [Doc. No. 813–3, p. 63 of 165]. Ultimately, however, Mr. Remy was not hired as an SEC attorney; therefore, to be paid, the Applicant needed to explain

to the Court how these discussions were necessary to case administration or likely to benefit the estate. Having given no testimony on this point, the Applicant is not now entitled to compensation for these services. *First State Bancorporation,* 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions,* 306 B.R. at 920.

Fourth, the Court finds that none of the time entries relating to the application to employ a tax accountant, totaling 5.1 hours and $1,476.50 in billings, are compensable. [Doc. No. 831–3, pp. 78 & 79 of 165]. The Applicant (on behalf of the Debtor) never filed any such application, and therefore, to be compensated for preparing one, the Applicant needed to explain to the Court why the related services were reasonable or necessary. Having failed to provide any testimony on these entries, the Applicant has failed to meet its burden of proof to establish these services as compensable. *First State Bancorporation,* 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions,* 306 B.R. at 920. The Applicant is therefore not entitled to compensation for these services.

Fifth, the Applicant billed a total of 5.70 hours for services relating to the Motion for Procedures, corresponding to $1,650.50 in fees. Attached hereto as **Exhibit E** is a chart showing the time entries related to the Motion for Procedures. For the same reasons the Motion for Procedures was denied in part, [ *See* Finding of Fact No.

5], the Court finds that compensation for services related to the Motion for Procedures should be denied in part. More specifically, the Court denied that part of the Motion for Procedures in which Applicant requested that 80% of its requested fees and 100% of its requested expenses be automatically approved each month if no objection was lodged. [*See* Doc. No. 79, 4¶ 11]. The Court denied this request because of the unusually contentious nature of the instant Chapter 11 case. The Applicant knew—or should have known—that it was highly likely that one or more parties (including, but not limited to, those now objecting to the Fee Application) would indeed object to the Applicant receiving virtually all of its requested fees and expenses each month. Indeed, Rhodes Holdings, LLC did in fact lodge an objection, [Doc. No. 145], and its counsel made persuasive arguments at the hearing on this motion. If the Court had granted all of the relief sought in the Motion for Procedures, there is no doubt—either now or at the time the Applicant filed this motion—that monthly objections to the fee and expense reimbursement requests would have been lodged, resulting in, at a minimum, at least one lengthy and acrimonious hearing each month. And, it is important to note, the hearing would *not* have primarily concerned obtaining a confirmed plan to pay all creditors, but rather determining what interim amounts to pay to one creditor—i.e., the Applicant. Given that an express Code provision (i.e., § 331) establishes that the general rule for applying for payment of interim compensation of professionals is once every 120 days, it was unreasonable for the Applicant to draft and prosecute the Motion for Procedures in the extra-adversarial milieu of this case, evident since its onset. Stated differently, it was unreasonable for Applicant to believe that such a request would

benefit the estate. In *Woerner*'s lexicon, it was not a "good gamble."

Furthermore, seeking such relief was unnecessary to the administration of this Chapter 11 case; at least, the Applicant, at the hearing on the Motion for Procedures, provided no evidence that complying with the normal 120–day rule would impose a serious financial hardship. *In re Commercial Financial Services, Inc.*, 231 B.R. 351, 357 (Bankr.N.D.Okla.1999) ("Section 331 permits the Court to grant leave to file more frequent interim applications for compensation and reimbursement. This Court will permit such relief to professionals who present credible evidence that complying with the 120–day rule will impose serious financial hardship.").

Accordingly, because the Court finds that half of the relief requested in the Motion for Procedures was neither necessary to case administration nor likely to benefit the estate, the Court finds that half of the services relating to this motion were similarly neither necessary nor reasonable. Consequently, the Court will disapprove one-half of the hours billed for these services to be used in calculating the Applicant's fee (i.e., $1,650.50 / 2 = $825.25). Accordingly, the Court disapproves fees in the amount of $825.25.

Sixth, the Fee Application includes a total of 35.7 hours related to preparing the First Interim Fee Application, corresponding to fees of $5,713.50. Attached hereto as **Exhibit F** is a chart showing the time entries in the pending Fee Application related to the First Interim Fee Application. Yet, this Court did not approve the First Interim Fee Application in its entirety. The Applicant requested attorneys' fees and expenses in the amount of $326,395.20, but the Court authorized the Debtor to pay the Applicant a total of $289,300.70 in

attorneys' fees and expenses[11] (i.e., 88.7% of the requested fees and expenses). [Finding of Fact No. 10]. As set forth in the Court's Order on the First Interim Fee Application, the Court denied fees for services relating to motions that it had either denied due to the Applicant's woeful presentation of evidence or that the Applicant had withdrawn. [Doc. No. 406]. Under the retrospective test of *Pro–Snax* that governed at that time, it was clear that services related to these motions had not provided an identifiable, tangible, and material benefit to the estate; thus, the Applicant should have known that it could not collect fees from the estate for services related to these motions. *See Pro–Snax,* 157 F.3d at 426. And, if *Woerner* had been applicable at this time, this Court still would have denied fees for services relating to the same motions because prosecuting those motions were not "good gambles"—which in turn means that the Applicant could not collect fees for the services rendered relating to these motions.

Under these circumstances, the Court finds that it should not now award the entire $5,713.50 of time that the Applicant spent prosecuting the First Interim Fee Application. Rather, it should award 88.7% of this amount because this is the percentage of fees and expenses that the Court approved for that specific interim application. Stated differently, the Court now deducts 11.3% of the $5,713.50, as 11.3% represents the amount that the Court disallowed in the First Interim Fee Application. Therefore, with respect to the Fee Application presently pending, the Court finds that $645.63 (i.e., $5,713.50 × 0.113) of the fees relating to the First

Interim Fee Application should be disallowed. Attached hereto as **Exhibit F** is a chart showing those time entries related to the First Interim Fee Application.

Finally, there are several time entries relating to the preparation of the Herrera Fee Application and the Amended Herrera Fee Application, [*see* Finding of Fact No. 17], including communications with Herrera about his fee applications. [Doc. No. 831–3, pp. 63, 65, 71, 72, 74 & 76 of 165]. The Court finds that these services were neither necessary to the administration of the case nor reasonably likely to benefit the Debtor's Chapter 11 estate at the time they were rendered because the Applicant—in this highly-charged case—should not be representing the Debtor's professional (i.e., Herrera), and then charging the Debtor's estate for that representation. Rather, Herrera should have sought his own counsel to assist him in preparing his fee applications.[12] *But see In re 1002 Gemini Interests LLC,* No. 11–38815, 2015 WL 913542, at *4 (Bankr.S.D.Tex. Feb. 27, 2015) (granting an examiner fees for defending other professionals' fee applications). Moreover, Herrera himself also billed the Debtor 15.1 hours for a total of $5,285.00 for preparing his fee applications, [Doc. No. 826–1, p. 33 of 166], so there was double billing to some extent. Finally, the Court finds that, for the same reasons it denied the Herrera Final Fee Application in full, [Finding of Fact No. 17], the Applicant's services related to the Herrera Final Fee Application were not necessary to case administration, nor were they reasonably likely to benefit the estate at the time they were performed. Indeed, this Court issued a lengthy memorandum opinion explaining its findings and conclu-

---

11. The amount of $289,300.70 represents the sum of $264,357.50 in fees and $24,943.20 in expenses.

12. Herrera did, in fact, eventually retain his own counsel, who represented him at the hearing on the Herrera Fee Application. [*See* Doc. Nos. 859 & 874].

sion as to why Herrera provided no benefit to the estate. *Digerati Technologies, Inc.*, 524 B.R. at 673.

In sum, the Court finds that the services under the "Professionals" category that were neither necessary to case administration nor reasonably likely to benefit the estate at the time they were performed total 38.4 hours and $10,607.88 in fees requested, and it is this amount that the Court declines to approve.[13]

### iv. Project Category # 4: "Plan and Disclosure Statements"

The Applicant seeks a total of $245,178.50 for services rendered in the "Plan and Disclosure Statement" category. This Court's review of the time entries reflects that the Applicant spent substantial time thinking about and working on numerous drafts of plans, amended plans, disclosure statements, and amended disclosure statements—some, but not all, of which were actually filed. This Court must now determine how many hours of services related to the Debtor's proposed plans and disclosure statements are compensable.

 "Counsel for a debtor or debtor in possession will not be compensated for time spent in preparation of a plan which has no realistic hope of confirmation." *In re Phillips*, 291 B.R. 72, 82 (Bankr.S.D.Tex.2003); *see also In re Saturley*, 131 B.R. 509, 521 (Bankr.D.Me. 1991) ("[F]utile efforts aimed at achieving unattainable objectives are unreasonable. Fees generated in tilting at windmills will be disallowed."). A percentage downward adjustment is appropriate when a professional's unreasonable efforts to confirm a plan brought no benefit to the estate. *See, e.g., In re Nwokedi*, No. 12–32759, 2014

WL 4199106, at *3 (Bankr.S.D.Tex. Aug. 22, 2014). In *Nwokedi*, the professional sought compensation for work done on a plan and disclosure statement regarding which she had never consulted with any estate creditors. *Id.* at *6. Unsurprisingly, the plan was not confirmed. *Id.* Because of the professional's unsuccessful attempts to confirm the plan, as well as her unsuccessful, unreasonable efforts related to a claim objection, the bankruptcy court adjusted the fees downward by 25%. *Id.*

In the case at bar, the Applicant prosecuted an arrogant plan that drew vigorous objection and which this Court denied without the Applicant even concluding its case in chief at the confirmation hearing. [*See* Finding of Fact No. 22], The Plan, which was drafted by the Applicant, proposed that Smith and Estrada become the sole directors of the Reorganized Debtor and receive exorbitant compensation packages. [*See* Doc. No. 731]. This Court denied confirmation of the Plan because it proposed the appointment of officers and directors of the reorganized Debtor (i.e., Smith and Estrada)—which was not "consistent ... with public policy" as required by § 1129(a)(5)(A)(ii), *Digerati Technologies, Inc.*, 2014 WL 2203895 at *5. Indeed, Smith himself did not understand all of the terms of the Plan, and the Plan proposed exorbitant compensation packages for both Smith and Estrada. In *Woerner*'s terms, the Applicant's attempt to obtain confirmation of the Plan was not a "good gamble."

After this Court denied the confirmation of the Debtor's Plan, the attorneys for these individuals obtained authorization from them to take charge of negotiating, filing, and taking the lead role in obtaining

---

**13.** *See* Exhibit D, pp. 60–121, for the time entries corresponding to the disallowed amount of $9,137.00. This figure is then added to the percentage reduction referenced in Exhibit E ($825.25) and Exhibit F ($645.63) to arrive at the figure of $10,607.88 representing the amount of fees disallowed in the "Professionals" category.

confirmation of the Joint Plan. [Finding of Fact No. 25]. Indeed, these secured creditors, in order to at least recover some of the indebtedness owed to them by the Debtor, agreed to a joint plan that they knew might well lead to the sale of their collateral (i.e., the two subsidiaries) for less than 100% of the outstanding debt owed to them. And, in fact, after the Joint Plan was confirmed, these two subsidiaries were ultimately sold for approximately two-thirds of the amount of the debt secured by the stock of these two entities. [Doc. Nos. 910 & 910–1, p. 4 of 28]; [Doc. Nos. 929 & 929–1, p. 3 of 22]. Thus, while facially a success, the result the Debtor obtained through its Chapter 11 case did not go according to the Debtor's "plan or intent," as Smith, the CEO of the Debtor, testified at the outset of the case—which was for the Debtor's investment banker, Herrera, to sell the Debtor's subsidiaries for a sum sufficient to pay both the secured and unsecured creditors in full. [App. to Employ Investment Banker Hr'g Tr. 5:25–6:6, July 10, 2013].[14] This Court has already detailed Herrera's failure to achieve this goal, as well as the incestuous relationship between the Applicant and Herrera, in its memorandum opinion *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr.S.D.Tex.2015).

Under the circumstances described above, this Court finds it appropriate to impose a reduction of the fees requested by the Applicant for this "Plan and Disclosure Statement" category. As already noted, the Applicant's prosecution of the Plan was simply not a "good gamble." The question is how much of the requested

fees should be reduced? After this Court denied confirmation of the Plan on February 11, 2014, the Applicant did still assist in negotiating the Joint Plan, which was confirmed. [Finding of Fact Nos. 24 & 25]. And, indeed, the Joint Plan resulted in payment of all unsecured claims, if not payment of all secured claims. The Applicant estimates that 90% of the provisions in the Plan were incorporated into the Joint Plan. [Doc. No. 1127, p. 3]. After comparing the Debtor's proposed plan that this Court did not confirm (i.e., the Plan) to the Joint Plan, the Court agrees. The Court has also compared the Debtor's proposed disclosure statements with the Final Disclosure Statement, and finds that 90% of the proposed disclosure statements was also incorporated into the Final Disclosure Statement; indeed, this Court conditionally approved the Debtor's First Amended Disclosure Statement, [Finding of Fact No. 18]. Thus, the Court finds that the Applicant's services in this respect did provide a benefit to the estate. The Applicant's conduct in the case at bar is simply not as egregious as the conduct of the Debtor's counsel in *Nwokedi.*

However, the Court further finds that the remaining 10% of the plans and disclosure statements that the Applicant actually filed did not appear reasonably likely to benefit the estate when filed; this is so because, for example, these documents contained provisions that would have vested control of the reorganized Debtor solely with the pre-petition officers (who did not entirely comprehend the mechanics of the Plan) and that would have compensated these individuals to an excessive degree.[15]

---

14. Not only did Smith testify that the Debtor's intent was to sell the two subsidiaries in order to generate sufficient funds to pay *all* creditors in full; Herrera testified that the sale of the Hurley Enterprises subsidiary *alone* "would be in the range of 50 to $55 million, which would be almost enough to take care of

all the Creditors...." [Hr'g Tr. 12:19–13:2, July 10, 2013].

15. In its order denying confirmation of the Plan, this Court wrote the following: "This Court also has questions about the competence of Smith. During his testimony, it be-

[*See* Doc. No. 731, Plan Ex. 5 (the Debtor proposed to assume the management contracts of Smith and Estrada) ]. The Applicant knew, or should have known, that the Plan would draw vigorous objection— which it did, [Doc. No. 699],—and that attempting to obtain confirmation of the Plan with these onerous terms would not be a "good gamble."

In sum, the Court finds that 10% of the content of the Debtor's proposed plans and disclosure statements (i.e., those that were drafted and actually filed) was neither reasonable nor necessary, while 90% was reasonable and necessary, and therefore was eventually incorporated into the Joint Plan and Final Disclosure Statement. Under these circumstances, the Court finds that it is appropriate to disallow 10% of the Applicant's requested amount of $245,-178.50—which means that the disallowed amount is $24,517.85. If the analysis stopped here, then this Court would simply find that $220,660.65 is the allowed amount for services that the Applicant rendered in the "Plan and Disclosure Statements" category.

However, the analysis does not stop here. The reason is that there are entries relating to a "third amended plan" and a "second amended disclosure statement," [Doc. No. 831–3, pp. 131–32 of 165], and yet the Applicant never filed a third amended plan nor a second amended disclosure statement on the Debtor's behalf. Indeed, the last plan that the Applicant actually filed was entitled a "second amended" plan (defined ·as the Plan and

denied by this Court on February 11, 2014). [Finding of Fact No. 22]. The last disclosure statement filed by the Applicant was the First Amended Disclosure Statement, which this Court conditionally approved on January 21, 2014. [Finding of Fact No. 18]. Therefore, the Court is unable to determine whether the language in the unfiled, third amended plan and the unfilled, second amended disclosure statement were actually incorporated into the Joint Plan and Final Disclosure Statement; and, there was no testimony from the Applicant on this issue at the hearing on the Fee Application. *First State Bancorporation*, 2014 WL 1203141, at *9 ("[The law firm] presented no· testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions*, 306 B.R. at 920. Accordingly, this Court is unable to find that the services relating to a "third amended plan" and a "second amended disclosure statement" were either necessary to the administration of the case or reasonably likely to benefit the estate at the time they were performed.

The .time entries relating to the "third amended plan" and the "second amended disclosure statement" show that services were rendered on February 13 and 14, 2014 by ELR, MSK, and DCB. [Doc. No. 831–3, pp. 131–33 of 165]. These entries are set forth on **Exhibit G.** These entries· total 15.7 hours, equating to fees of $5,343.50. Thus, this amount must be de-

---

came clear to this Court that Smith does not understand many of the provisions of the Plan. Indeed, at one point during the hearing when Smith was unable to answer a question about a provision of the Plan, one of the attorneys representing the Debtor, Ed Rothberg, informed the Court that he (i.e., Rothberg) had listed himself as a witness so that he could give testimony about the

Plan's meaning and implementation. While such a trial strategy is not prohibited, it is nevertheless disconcerting that the CEO of the Debtor—who is to be handsomely rewarded monetarily if the Plan is confirmed—cannot satisfactorily explain important provisions of the Plan." [Doc. No. 739, p. 9 of 11].

ducted from the amount of $220,660.65, which results in an amount totaling $215,317.15. It is this amount that the Court finds should be allowed for services rendered in the "Plan and Disclosure Statements" category.

### v. Project Category # 5: "Executory Contracts"

The Court finds that the services rendered by the Applicant in the "Executory Contracts" category were reasonable and necessary at the time that they were rendered. Specifically, it was necessary for the Applicant to review the executory contracts that the Debtor had on the date of the filing of its Chapter 11 petition. The Debtor, in consultation with the Applicant, had to make a determination of which contracts to assume and which ones to reject. Although this Court did not confirm the Plan proposed by the Debtor, it did confirm the Joint Plan; and the Joint Plan assumed and rejected most of the contracts that the Plan had proposed be assumed and rejected (with the notable exception that the Joint Plan rejected the employment agreements of Smith and Estrada, whereas the Plan proposed that these agreements be assumed). [Compare Exs. 5 & 6 of the Plan (Doc. No. 708) to Exs. 5 & 6 of the Joint Plan (Doc. No. 795–1) ]. Stated differently, the Applicant's review of the Debtor's executory contracts was beneficial to the estate because the proponents of the Joint Plan were able to prosecute the Joint Plan by knowing which executory contracts to assume and which ones to reject. For these reasons, the Court finds that the 3.4 hours billed by the Applicant reviewing these executory contracts (which equates to $1,240.00) was beneficial to the estate and should be approved.

### vi. Project Category # 6: "Lift Stay"

The Court finds that the services rendered by the Applicant in the "Lift Stay" category were reasonable and necessary at the time that they were rendered. Specifically, the Applicant, on behalf of the Debtor, objected to two attempts by Rhodes Holdings, LLC, Robert C. Rhodes, William E. McIlwain, Robert L. Sonfield, Jr., and Sonfield & Sonfield, P.C. to lift the stay with respect to certain proceedings pending in the 14th Court of Appeals of Texas. [See Doc. Nos. 122, 152, 159, 166, 231, 249 & 263]. In the first instance, the Applicant was entirely successful at obtaining an order from this Court denying the request to lift the stay due to the failure of the movant to comply with the applicable Bankruptcy Local Rules. [Doc. No. 212]. In the second instance, the Applicant provided a benefit to the estate insofar as this Court issued an order denying a lifting of the stay to prohibit any non-debtor party in the appeal pending in the 14th Court of Appeals from prosecuting a derivative claim that belonged solely to the Debtor. [Doc. No. 276]. For these reasons, the Court finds that the services totaling 38.3 hours billed by the Applicant opposing these two motions to lift stay (which equates to $9,085.00) were beneficial to the estate and should be approved.

### vii. Project Category # 7: "Asset Disposition"

The Court finds that the services rendered by the Applicant in the "Asset Disposition" category, with one exception, were reasonable and necessary at the time that they were rendered. The exception concerns services rendered relating to preparation of a non-disclosure agreement. [Doc. No. 831–4, pp. 13, 15, 20–21, 30–31, 33 & 44 of 197]. This Court, at a hearing held on December 4, 2013, found that no non-disclosure agreement was in existence. [Finding of Fact No. 14]. Without a non-disclosure statement in existence or further detail about the services rendered relating to this document, the Court is

unable to determine whether the Applicant's services were necessary to the administration of the case or reasonably likely to benefit the estate at the time they were performed. Indeed, the Applicant did not provide any testimony in connection with this Fee Application to justify the value of these services. *First State Bancorporation*, 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions*, 306 B.R. at 920. Therefore, the Applicant is not entitled to compensation for these particular services.

In sum, the Court finds that the services in the "Asset Disposition" category that were neither necessary to case administration nor reasonably likely to benefit the estate at the time they were performed total 2.2 hours and $842.50 in fees requested, and the Court will not approve the fees associated with these services.[16]

### viii. Project Category # 8: "Claims"

The Court finds that the services rendered by the Applicant in the "Claims" category, with four exceptions, were reasonable and necessary. The first exception concerns services rendered relating to an objection to The Venturebanc, Inc.'s proof of claim. [Doc. No. 831–4, pp. 72–73 & 77–79 of 197]. After reviewing the Claims Register and the docket sheet, the Court finds that the Debtor has never filed such an objection; indeed, The Venturebanc, Inc. has never filed a proof of claim in this case. At the hearing on the Fee Application, the Applicant provided no testimony to explain how these particular services were necessary or beneficial to the estate. *First State Bancorporation*, 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions*, 306 B.R. at 920. Therefore, this Court finds that the services relating to an objection to The Venturebanc, Inc.'s proof of claim were not necessary to the administration of the case, nor were they likely to benefit the estate at the time they were performed.

The second exception concerns services rendered by the Applicant relating to a proof of claim filed by Harris County. [Doc. No. 831–4, p. 74 of 197]. After reviewing the Claims Register, the Court finds that Harris County has never filed a proof of claim; therefore, this Court finds that the services relating to Harris County's proof of claim were not necessary to the administration of the case, nor did they benefit the estate at the time they were performed. Indeed, at the hearing on the Fee Application, the Applicant provided no testimony to explain how these particular services were necessary or beneficial. *First State Bancorporation*, 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions*, 306 B.R. at 920.

The third exception concerns services rendered relating to the withdrawal of Smith and Estrada's proofs of claim, including communications to Smith and Es-

---

**16.** *See* Exhibit D, p. 122–24, for the time entries corresponding to this disallowed amount.

trada. [Doc. No. 831–4, p. 74, 76, 77 & 80 of ·197]. Smith and Estrada should have consulted their own respective attorneys, and not the Debtor's counsel, regarding whether to withdraw their respective proofs of claims. Moreover, there are two time entries relating to the preparation of notices of withdrawal of the claims of Smith and Estrada. [*Id.* at p. 74]. These two notices were never filed, and Smith and Estrada have never withdrawn their proofs of claim. Moreover, the Applicant provided no testimony about how the services relating to the notices of withdrawals were necessary or benefited the estate. *First State Bancorporation,* 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions,* 306 B.R. at 920. Therefore, this Court finds that the services relating to the withdrawal of Smith and Estrada's proofs of claim were neither necessary to the administration of the case, nor were they likely to benefit the estate at the time they were performed.

Finally, the fourth exception concerns services rendered relating to an objection to proof of claim no. 3 filed by a Dr. Roqueni. [Doc. No. 831–4, pp. 73 & 77 of 197]. Unlike The Venturebanc, Inc., Dr. Roqueni actually filed a proof of claim. [Claims Register, Claim No. 3]. However, the Debtor never filed an objection to his proof of claim. Without an explanation as to why the claim objection was never filed, the Court is unable to determine whether the services relating to Dr. Roqueni's proof of claim were either necessary to the administration of the case or reasonably likely to benefit the estate at the time they were performed. Therefore, this Court finds that the services relating to Dr. Roqueni's proof of claim were neither necessary nor reasonable. Accordingly, the Court finds that the fees associated therewith should be disallowed.

In sum, the Court finds that the services in the "Claims" category that were neither necessary to case administration nor reasonably likely to benefit the estate at the time they were performed total 17.9 hours and $3,337.50 [17] in fees requested, and the Court will not approve the fees associated with these services.

### ix. Project Category # 9: "DIP Financing"

For the same reasons this Court denied the Debtor's two requests for post-petition financing, [Findings of Fact Nos. 2 & 4], this Court finds that the services relating to these requests as set forth in the "DIP Financing" category were neither necessary to case administration nor reasonably likely to benefit the estate at the time they were performed. Specifically, the Applicant's services were not reasonably likely to benefit the estate when performed because the Applicant put forth a woeful effort in first attempting to show that the financing requested was necessary to avoid irreparable harm to the estate, [Doc. No. 63], and later attempting to show that the financing was necessary to pay line item expenses that could not be explained or that were unnecessary. [Doc. No. 156]. Stated differently, due to the Applicant's failure to introduce sufficient evidence, there was no chance that the Debtor would be able to obtain post-petition financing. In *Woerner*'s lexicon, the Applicant's ef-

---

**17.** *See* Exhibit D, pp. 125–39, for the time entries corresponding to this disallowed amount.

forts did not rise to the level of being a "good gamble."

The Court also notes that some of the time entries in the DIP Financing category relate to the Motion to Seal. For the same reasons the Court denied the Motion to Seal, [Finding of Fact No. 3], the Court also finds these services were neither necessary to case administration nor reasonably likely to benefit the estate at the time they were performed.

In sum, the Court finds that all of the services in the "DIP Financing" category—which total 97.5 hours and $29,-585.50—should be disapproved.[18]

### x. Project Category # 10: "Digerati v. Sonfield Litigation"

The Court finds that the services rendered by the Applicant in the "Digerati v. Sonfield Litigation" category, with certain exceptions, were reasonable and necessary. This suit was an asset of the estate that the Debtor prosecuted against several individuals and entities, many of whom are the Objectors to this Fee Application. Prosecution of this suit was beneficial to the estate because it kept pressure on the defendants, which in turn kept them at the negotiating table with the Debtor and other creditors and parties-in-interest—eventually resulting in all of these parties filing and obtaining confirmation of the Joint Plan. [Finding of Fact No. 25].

The exceptions concern services rendered relating to the Motion to Clarify. [Doc. No. 831–4, pp. 106–07 of 197]. For the same reasons this Court denied the Motion to Clarify, [*see* Finding of Fact No. 7], this Court finds that the services relating to the Motion to Clarify were neither necessary to case administration nor were

reasonably likely to benefit the estate at the time they were performed. Specifically, it was not a "good gamble" for the Applicant to file the Motion to Clarify when no clarification was needed.

In sum, the Court finds that the services in the "Digerati v. Sonfield Litigation" category that were neither necessary to case administration nor likely to benefit the Debtor's estate when performed total 7.5 hours and $1,374.00 in fees requested, and thus the Court declines to approve the fees associated with these particular services.[19]

### xi. Project Category # 11: "Digerati v. Oleum Capital Litigation"

The Court finds that the services rendered by the Applicant in the "Digerati v. Oleum Capital Litigation" category were reasonable and necessary. This was a suit initiated in Nevada prior to the filing of the Debtor's Chapter 11 petition; it was an asset of the estate. However, the Debtor did *not* want the suit to be prosecuted because it had been filed at the behest of the board of directors whose authority the Debtor disputed. Stated differently, the Debtor believed that prosecution of this suit would harm, not benefit, the estate. The Debtor therefore took steps to obtain dismissal of the suit, and succeeded in doing so. This Court finds that the services rendered by the Applicant were both necessary to the administration of this Chapter 11 estate and, additionally, beneficial to the estate at the time the services were rendered. If the Debtor had not taken action to dismiss this suit, then the parties in that suit would still be mired in depositions and document production in Las Vegas, and it is highly doubtful that the Joint Plan would have been con-

---

18. *See* Exhibit D, pp. 140–273, for the time entries corresponding to this disapproved amount.

19. *See* Exhibit D, pp. 274–80, for the time entries corresponding to this disallowed amount.

firmed in this case—which, in turn, means that no claims would have been paid.

### xii. Project Category # 12: "Rhodes Holdings v. Gorham Litigation"

The Court finds that the services rendered by the Applicant in the "Rhodes Holdings v. Gorham Litigation" category were reasonable and necessary. This suit involved several of the Objectors, who were prosecuting derivative causes of action that belonged to the Debtor, not to them individually. These derivative causes of action were property of the estate that only the Debtor, not these individuals, had standing to prosecute. The Debtor therefore removed the suit initiated by the Objectors to this Court, and this Court then ruled that only the Debtor could prosecute these derivative claims. Therefore, this Court approves all of the requested fees of $69,576.50 in this category.

### xiii. Project Category # 13: "Sonfield v. Albeck Litigation"

The Court finds that the services rendered by the Applicant in the "Sonfield v. Albeck Litigation" category, with one exception, were reasonable and necessary. The Debtor was one of the defendants in this suit brought by Robert L. Sonfield, Jr. and Robert L. Sonfield, P.C., who are two of the Objectors to the Fee Application. The Debtor removed this suit to this Court and obtained an order preventing the prosecution of any claims against the Debtor thereafter. These actions benefitted the estate because they allowed the Debtor to focus on reorganization and eventually helped to obtain confirmation of the Joint Plan.

The one exception concerns services rendered relating to the Motion to Clarify.

[Doc. No. 831–4, p. 186 of 197]. For the same reasons this Court denied the Motion to Clarify, [Finding of Fact No. 7], this Court finds that the services relating to the Motion to Clarify were neither necessary to case administration nor reasonably likely to benefit the estate at the time they were performed. Specifically, it was not a "good gamble" for the Applicant to file the Motion to Clarify when clarification was not needed.

In sum, the Court finds that the services in the "Sonfield v. Albeck Litigation" category that were neither necessary to case administration nor reasonably likely to benefit the Debtor's estate when performed total 2.9 hours and $549.00 in fees requested, and the Court will not approve these particular fees.[20]

### xiv. Project Category # 14: "Recap Marketing v. Jaclin Litigation"

The Fee Application provides a skeletal background of this litigation: "Applicant has monitored this lawsuit after filing its Suggestion of Bankruptcy, ensuring that the automatic stay against Debtor had not been violated." [Doc. No. 831, p. 31 of 55]. This "bare bones" discussion does not help the Court in assessing whether the services rendered by the Applicant were necessary or reasonable. Nor did the Applicant adduce any testimony or introduce any exhibits at the hearing on the Fee Application to educate the Court as to just exactly what this litigation entailed. *First State Bancorporation*, 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions*, 306 B.R. at 920. Ac-

---

**20.** *See* Exhibit D, pp. 281–87, for the time entries corresponding to this disallowed amount.

cordingly, the Court finds that the Applicant has failed to satisfy its burden of proving that the services were either necessary or reasonable, and therefore the Court disallows all of the requested fees of $1,673.00 associated with this category.

### xv. Project Category # 15: "14th Court of Appeals"

The Court finds that the services rendered by the Applicant in this category were reasonable and necessary. This Court, in its order of August 9, 2013, [Adv. Pro. No. 13–03118, Adv. Doc. No. 43], had remanded certain direct claims of non-debtor parties to the Harris County District Court, but did not remand derivative claims belonging to the Debtor. A dispute thereafter arose as to whether the non-debtor parties were taking positions in the Harris County District Court and in the 14th Court of Appeals that could be construed as prosecuting derivative claims belonging to the Debtor. This Court therefore held a hearing on September 10, 2013, and issued an order on the same day, [Doc. No. 276], delineating what actions could take place in the state court system and what avenues were available to the Debtor if any state court issued a ruling that the claim being prosecuted was a derivative claim. The Applicant's services in this respect—which totaled 3.5 hours—were beneficial to the estate because they ensured that no party, except the Debtor, would prosecute a derivative claim. Accordingly, the Court finds that the requested fees of $741.00 are approved.

### xvi. Project Category # 16: " Arrayit"

The Fee Application provides a skeletal background of this litigation: "Applicant investigated the connection and similarities between the Debtor's November 26 Transaction and a contemplated business combination/merger between Arrayit and Avant Diagnostics around the same time which also contemplated an equity line facility.

Some of the parties involved in the Arrayit transaction were also involved in the November Transaction with the Debtor." [Doc. No. 831, p. 32 of 55]. This "bare bones" discussion does not help the Court in assessing whether the services rendered by the Applicant were necessary or reasonable. Nor did the Applicant adduce any testimony or introduce any exhibits at the hearing on the Fee Application to educate the Court as to just exactly what this matter specifically entailed. *First State Bancorporation,* 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions,* 306 B.R. at 920. Accordingly, the Court finds that the Applicant has failed to satisfy its burden of proving that the services were either necessary or reasonable, and therefore the Court disallows the requested fees of $165.00 associated with this category.

### xvii. Project Category # 17: "Dishon & Hurley v. Special Waste"

The Court finds that the services rendered by the Applicant in this category were reasonable and necessary. The Applicant rendered services reviewing a complaint to void a certain contract that needed to be eliminated in order to facilitate a sale of one of the subsidiaries owned by the Debtor. The Applicant's services in this respect were beneficial to the estate because they kept tabs on a certain contract that had the potential to negatively affect the sale of one of the Debtor's subsidiaries and therefore negatively affect payment of claims in this Chapter 11 case. Accordingly, the Court finds that the requested fees of $400.00 for this category are approved.

### xviii. Project Category # 18: "Perfect Circle"

The Court finds that the services rendered by the Applicant in this category were reasonable and necessary. The Applicant rendered services reviewing a complaint to void a certain contract that needed to be eliminated in order to facilitate a sale of one of the subsidiaries owned by the Debtor. The Applicant's services in this respect were beneficial to the estate at the time rendered because they kept tabs on a certain contract that had the potential to negatively affect the sale of one of the Debtor's subsidiaries and therefore negatively affect payment of claims in this Chapter 11 case. Accordingly, the Court finds that the requested fees of $330.00 for this category are approved.

### xix. Project Category # 19: "Appeal (Venue)"

The Court finds that the services rendered by the Applicant in this category were reasonable and necessary. After a lengthy hearing at the beginning of this case as to whether venue should be transferred to the U.S. Bankruptcy Court for the Western District of Texas, this Court denied the request to transfer venue and kept the case in the Southern District of Texas—as the Debtor had requested. The losing parties in this dispute filed a notice of appeal, and therefore the Applicant, on behalf of the Debtor, had to render services as the appellee in order to make any argument at the appellate court level that this Court's venue ruling should be affirmed. The Applicant's services were beneficial because if the Applicant, on behalf of the Debtor, had not fended off the appeal, the appellants might have, on an uncontested basis, convinced an appellate court to reverse this Court's ruling—which would have then transferred venue of this case to the Western District of Texas and caused delay, and more attorneys' fees and expenses, as a new judge would have had to spend substantial time coming up to speed on all of the disputes in this case. Instead, by fighting the appeal, the Applicant, on behalf of the Debtor, made sure that venue remained in the Southern District of Texas, which paved the way for a relatively quick confirmation process. Accordingly, the Court finds that the requested fees of $5,861.50 for this category are approved.

### xx. Project Category # 20: "Appeal (2004 Exam)"

The Court finds that the services rendered by the Applicant in this category were reasonable and necessary. Due to the extremely acrimonious disputes between the Debtor and the Applicant, as its counsel, and some of the Objectors, and their respective counsel, this Court issued an order regarding the method of taking 2004 examinations of various individuals. The parties dissatisfied with this order, which included some of the Objectors—filed a notice of appeal, and therefore the Applicant, on behalf of the Debtor, had to render services as the appellee in order to make any argument at the appellate court level that this Court's 2004 examination ruling should be affirmed. The Applicant's services were beneficial because if they had not fended off the appeal, the appellants might have, on an uncontested basis, convinced an appellate court to reverse this Court's ruling—which would have resulted in more depositions and, therefore, more attorneys' fees and expenses. Instead, by fighting the appeal, the Applicant, on behalf of the Debtor, made sure that this Court's order regarding the proper method of taking the 2004 examinations was preserved, which paved the way for a global settlement through the eventual filing and confirmation of the Joint Plan. Accordingly, the Court finds

that the requested fees of $1,533.00 for this category are approved.

A review of the 20 categories described in **Exhibit C** reflects that $93,132.23 should be deducted from the total fee amount requested by the Applicant. Of this deduction of $93,132.23, **Exhibit C** reflects that this figure represents the sum of (1) $67,143.50, which equates to 246.70 hours; (2) $24,517.85, which equates to 10% of the total amount of fees requested by the Applicant relating to the "Plan and Disclosure Statements" category; (3) $825.25, which equates to 50% of the total amount of fees requested relating to the Motion for Procedures (*see* **Exhibit E**); and (4) $645.63, which equates to 11.3% of the total amount of fees requested relating to the First Interim Fee Application (*see* **Exhibit F**).

2. *Whether the Amount of Time Billed on the Services Was Excessive*

 After determining which services rendered by the Applicant were reasonable and/or necessary, this Court next determines whether the Applicant spent a reasonable amount of time rendering these services. *See Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (stating that courts should exclude from attorneys' fees hours that are "are excessive, redundant, or otherwise unnecessary"); *League of United Latin Am. Citizens # 4552 (LULAC) v. Roscoe Indep. Sch. Dist.,* 119 F.3d 1228, 1232 (5th Cir.1997) (noting that any hours not reasonably expended should be excluded from consideration). The burden is on the party seeking payment of attorneys' fees to show that the hours requested are reasonable. *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933; *Firth v. Don McGill of W. Houston, Ltd.,* No. Civ.A. H–04–0659, 2006 WL 846377, at *4 (S.D.Tex. Mar. 28, 2006), *aff'd sub nom. Firth v. McGill,* 233 Fed.

Appx. 346 (5th Cir.2007). Because this factor is listed in § 330, this Court affords it significant weight.

After reviewing the Fee Application, this Court concludes that a number of the entries contain excessive hours. Attached hereto is a chart labeled **Exhibit H** setting forth *all* of the entries containing excessive time. The far right column of **Exhibit H** sets forth all of this Court's findings as to why the time billed is excessive. For context, set forth below is a discussion of some examples of this excessive billing.

First, the Application contains several entries reflecting excessive hours spent reviewing or drafting short documents. For example, on June 7, 2013, Lorna Wellborn (LKW), a paraprofessional employed by the Applicant, billed 1.0 hours for "Review rule regarding emergency hearing and exhibits for hearing on June 11, 2013." [Doc. No. 831–2, p. 8 of 160]. The rule referenced, Bankruptcy Local Rule 9013–2, is only three, double-spaced pages long. The Court finds that 1.0 hours is excessive and should be reduced to 0.3 hours. Therefore, this Court excludes 0.7 hours for this entry.

On November 10, 2013 and November 11, 2013, Mazelle Krasoff (MSK), an attorney employed by the Applicant, and Samantha Ray (SKR), a paraprofessional employed by the Applicant, billed a total of 2.8 hours for drafting and revising the Debtor's Designation of Experts Witnesses for the Hearing on the Debtor's Amended Motion to Approve Compromise of Controversy. [Doc. No. 831–2, p. 78 of 160]. This particular pleading is only four, double-spaced pages (excluding the certificate of service). [Doc. No. 477]. Moreover, no case law is cited in the Designation. [*Id.*]. Therefore, the Court finds that 2.8 hours is excessive; further finds that only 0.5 hours should have been billed; and therefore

excludes the remaining 2.3 hours. [*See* **Exhibit H**, pp. 18–20 of 104].

On December 5, 2013 and December 6, 2013, MSK and SKR spent a total of 5.0 hours drafting and reviewing the Debtor's Objection to American Equity Fund and Robert Rhodes' Motion for Leave to Amend Proofs of Claim. [Doc. No. 831–4, p. 69 of 197]. The Court finds 5.0 hours to be excessive because the objection is only eight, double-spaced pages, [*see* Doc. No. 565]; further finds that only the initiated 3.1 hours billed by MSK should have been billed; and therefore disallows the remaining 1.9 hours.

On December 4, 2013, MSK drafted twelve proposed orders—each of which was only two short paragraphs on one page—denying proofs of claim and proofs of interests. For each proposed order, MSK billed 0.3 hours; yet these orders are all very similar and were undoubtedly created through a form. This Court finds the amount of time billed for each order to be excessive and excludes 0.2 hours for each proposed order; only 0.1 hour is appropriate for each of these skeletal orders.

In fact, the Court observes a pattern in which the Applicant's professionals billed 0.3–0.5 hours for drafting, filing, or revising mundane and routine pleadings that were only a few pages long—such as certificates of service, subpoenas, notices of sworn return of service of subpoenas, and notices of hearing. By way of one example only, on November 13, 2013, SKR, a legal assistant, billed 30 minutes for drafting a notice of issuance of trial subpoenas—and yet this notice contains *one* sentence referring the Court to the attached subpoenas. [*See* **Exhibit H**, p. 21 of 104]. The Court finds this practice to be suspicious, and concludes that these time entries are excessive. The Court will therefore reduce these entries to reflect appropriate amounts of time for the tasks involved, which it finds to be 0.1–0.2 hours each.

In addition to billing excessive periods of time for simple tasks, the Applicant billed excessive amounts of time working on longer and/or less routine work products. Accordingly, the Court has also reduced entries related to preparing or filing such documents when the entries reflect an excessive amount of time spent. For example, on December 7, 2013, MSK billed 0.6 hours for drafting a motion to strike, and then billed another 0.2 hours for reviewing and revising this motion. [Doc. No. 831–2, p. 103 of 160]. Having reviewed this particular 3–page, double-spaced motion, this Court finds that 0.6 hours is wholly sufficient for both drafting and revising, and any additional time is excessive. Therefore, the Court will not allow the time billed for revising this motion. Again, on May 31, 2013 and June 3, 2013, MSK billed 1.1 hours for drafting a motion to extend the deadline to file Schedules and the Statement of Financial Affairs, billed an additional 0.6 hours to review and revise this motion, and then billed another 1.0 hours to "continue drafting" this motion. This document is only eight, double-spaced pages long. [*See* Doc. No. 8]. This Court therefore finds the amount of time excessive and disallows the 0.6 hours for "review[ing] and revis[ing]" and the 1.0 hours for "continue drafting."

Finally, on August 6, 2013, DCB billed 10.0 hours for "Attend hearings on Motions set for August 6, 2013." [Doc. No. 831–2, p. 25 of 160]. However, this hearing lasted on 7.4 hours. Therefore, this Court finds that this particular time entry is excessive and excludes 2.6 hours.

In sum, the Court finds that entries totaling 78.9 hours, for a total of $11,299.00, are excessive and should be excluded. As already noted, **Exhibit H** sets forth all of a chart setting forth the

entries containing excessive time and this Court's findings as to why the time billed is excessive.

3. *Summary of Disallowed Fees After Completing Step One of Lodestar Approach*

In conclusion, with respect to those services that this Court finds were neither reasonable nor necessary, it is necessary to review **Exhibits A, B,** and **C. Exhibit A** sets forth all of this Court's findings as to why certain entries are vague; **Exhibit B** sets forth this Court's findings as to all of those entries that are lumped; and **Exhibit C** sets forth all of this Court's findings regarding unacceptable entries in the 20 categories described by the Applicant in the Fee Application. **Exhibit H** then sets forth this Court's findings as to those entries containing excessive time. The chart set forth below reflects the total hours disallowed and the corresponding fees that this Court disallows:

| | | |
|---|---|---|
| **Exhibit A:** | 42.1 hours | $13,332.50 |
| **Exhibit B:** | 211.8 hours | $58,128.00 |
| **Exhibit C:** | 246.70 hours | $67,143.50 |
| **Exhibit C:** | | $24,517.85 (10% of $245,178.50)[21] |
| **Exhibit E:** | | $825.25 (50% of $1,650.50)[22] |
| **Exhibit F:** | | $645.63 (11.3% of $5,713.50)[23] |
| **Exhibit H:** | 78.9 hours | $11,299.00 |
| | 579.5 hours | $175,891.73 |

Thus, this Court will deduct $175,891.73 from the requested amount of fees for services of $1,155,321.50. The resulting figure of $979,429.77 represents the non-excessive fees billed by the Applicant for services that this Court finds were necessary or reasonable—or both. The first step in the lodestar method is therefore complete.

**D. Step No. 2 under the Lodestar Approach: Determining Whether the Applicant's Hourly Rates are Reasonable**

After determining which time entries are compensable, the Court now calculates the reasonable hourly fee for the services described in those entries. The Court accords this factor the same weight as the number of hours spent on compensable services.

The Court determines a reasonable hourly billing rate by evaluating the prevailing market rate in the relevant legal community. *McClain v. Lufkin Indus., Inc.,* 649 F.3d 374, 381 (5th Cir.2011). At the hearing on the Fee Application, Rothberg gave testimony that the rates charged by the Applicant for its services to the Debtor have been lower than the prevailing rates in the community. [Mot. For Comp. & Reimb. Hr'g Tr. 59:15–60:16, May 27, 2014]. Rothberg did not give any testimony specifically identifying the rates of other attorneys in the community whose experience are similar to his, so this Court cannot give too much weight to this particular testimony. However, this Court may rely on its knowledge of customary billing practices in the local community to determine a reasonable rate. *Matter of Lawler,*

**21.** *See supra* Part C.1.b(iv).

**22.** *See id.* Part C.1.b(iii).

**23.** *See id.*

807 F.2d 1207, 1212 (5th Cir.1987); *see also In re El Paso Refinery, L.P.*, 257 B.R. 809, 832 (Bankr.W.D.Tex.2000); *In re Weaver*, No. 13–10–12204 JA, 2011 WL 867136, at *3 (Bankr.D.N.M. Mar. 11, 2011). By virtue of sitting as a bankruptcy judge in the Southern District of Texas, Houston Division, the undersigned judge is aware of the hourly rates of attorneys from other firms who appear in this District representing Chapter 11 debtors. The rates of Rothberg and Brown are very comparable to the rates of various other attorneys who represent corporate debtors in Chapter 11 cases in Houston. For example, Rothberg's hourly rate of $400 is certainly comparable to the hourly rates of Leonard Simon ($450.00),[24] Wayne Kitchens ($425.00),[25] and Matthew Probus ($350.00),[26] all of whom have similar legal experience to Rothberg in Chapter 11 cases. Further, Brown's hourly rate of $275.00 is very comparable to the hourly rates of Karen Emmott ($300.00),[27] William Haddock ($250.00),[28] and William Kyle Vaughn ($275.00),[29] all of whom have similar legal experience to Brown in Chapter 11 cases, particularly prosecuting and defending motions and adversary proceedings. Further, the hourly rate of the Applicant's most junior associate who provided services in this case—Mazelle Krasoff

($185.00)—compares favorably to the hourly rates of associate attorneys at other firms who represent debtors in Chapter 11 cases. In sum, the Court finds that the hourly rates of the Applicant's attorneys in this case are reasonable given the prevailing rates in the community.

Further, the Court finds that the hourly rates of the legal assistants employed by the Applicant are comparable to the rates charged by legal assistants employed at other law firms in Houston who represent Chapter 11 debtors. The hourly rates of the legal assistants employed by the Applicant are $100.00 (for SAA and LKW), $110.00 for SKR, and $130.00 for KJM. [Doc. No. 831]. These rates are very comparable to the rates of legal assistants employed by other firms who represent debtors in Chapter 11 cases having similar levels of complexity and acrimony among creditors and parties-in-interest. For example, in the Chapter 11 case of Johnson Broadcasting, Inc., the rates of the legal assistants at the law firm representing the debtor ranged from $195.00–$230.00,[30] and in the Chapter 11 case of Las Torres Development, LLC, the rates of the legal assistants at the law firm representing the debtor ranged from $75.00 to $150.00 per hour.[31] In sum, the Court finds that the

**24.** *See* Doc. No. 286, p. 21, in the Chapter 11 case of *In re Las Torres Dev., LLC*, Case No 14–34883 (Bankr.S.D.Tex.2014).

**25.** *See* Doc. No. 18–1, p. 2, in the Chapter 11 case of *In re Village Culinary Group, LLC*, Case No. 14–32354 (Bankr.S.D.Tex.2014).

**26.** *See* Doc. No. 11, p. 3, in the Chapter 11 case of *In re Media Design, Inc.*, Case No. 15–30791 (Bankr.S.D.Tex.2015).

**27.** *See* Doc. No. 4, p. 2, in the Chapter 11 case of *In re Patrick M. Ralph*, Case No. 15–32257 (Bankr.S.D.Tex.2015).

**28.** *See* Claim Number 5–2, pp. 4 & 5, in the Chapter 11 case of *In re Juan Carlos Castillo*, Case No. 15–31471 (Bankr.S.D.Tex.2015).

**29.** *See* Doc. No. 6, p. 4, in the Chapter 11 case of *In re UPD Global Resources, Inc.*, Case No. 11–36970, 2011 WL 10795906 (Bankr. S.D.Tex.2011).

**30.** *See* Doc. No. 157, p. 10 & Doc. No. 797, p. 16, in the Chapter 11 case of *In re Johnson Broadcasting, Inc.*, Case No. 08–36583 (Bankr.S.D.Tex.2008).

**31.** *See* Doc. No. 286, p. 21, in the Chapter 11 case of *Las Torres Development, LLC*, Case No. 14–34883 (Bankr.S.D.Tex.2034).

hourly rates of the Applicant's legal assistants in this case are reasonable given the prevailing rates in the community.

Given that the hourly rates of the attorneys and legal assistants employed by the Applicant are quite comparable to the hourly rates of attorneys and legal assistants at other firms in Houston who represent Chapter 11 debtors in highly-charged cases, this Court finds that the Applicant's hourly rates are reasonable and that therefore there should be no adjustment—either upward or downward—in the total lodestar fee.

Thus, the total lodestar fee is $979,429.77, which is derived as follows:

| | |
|---|---|
| **Amount Requested by the Applicant for Services Rendered:** | **$1,155,321.50** |
| (Less) | - |
| (1) amount deducted for vague entries (**Exhibit A**): | $13,332.50 |
| (2) amount deducted for lumped entries (**Exhibit B**): | $58,128.00 |
| (3) amount deducted for services that were neither necessary nor reasonable (**Exhibit C**): | $93,132.23 |
| (4) amount deducted for excessive time (**Exhibit H**): | $11,299.00 |
| | $979,429.77 |

## E. Adjusting the Lodestar Fee

This Court, in its discretion, may consider whether the lodestar fee of $979,429.77 should be adjusted upward or downward to account for factors not considered during the lodestar calculation. *Pilgrim's Pride*, 690 F.3d at 655. In assessing whether to make an adjustment, the Court may consider, among other factors, the twelve factors articulated in *Johnson*: "(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases." *Johnson*, 488 F.2d at 716.

### 1. Applying the Twelve Johnson Factors Results in No Adjustment to the Lodestar Fee

In applying each of the twelve factors, this Court concludes that several of the factors were already subsumed in its calculation of the lodestar fee. First, in evaluating the number of hours the Applicant reasonably expended in the main case and in various adversary proceedings, the Court has considered the novelty and difficulty of the questions presented, the time and labor required to complete necessary task, and the skill needed to perform the legal services properly. The Court acknowledges that some of the issues which the Applicant confronted involved relatively complex questions of law, and that a certain level of skill and expertise in bankruptcy and corporate law was required to represent the estate. Even considering this relative complexity, the Court has found a certain amount of inappropriate billing in the fee statements that—as discussed in detail above and on **Exhibits A, B, D** and **H**—warrants a decrease in the number of hours reasonably expended by the Applicant. Additionally, in evaluating the reasonableness of hourly rates billed in the fee statements, the Court has consid-

ered whether the professionals and legal assistants employed by the Applicant have charged a customary fee, and has also examined the relative experience, reputation, and ability of the attorneys and legal assistants involved. Thus, the Court will not adjust the lodestar fee of $979,429.77 either upwards or downwards based upon further consideration of these *Johnson* factors. *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir.2006) ("The lodestar may not be adjusted due to a *Johnson* factor ... if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting.").

Further, the Court concludes that a number of the *Johnson* factors are not relevant to an evaluation of the reasonableness of attorneys' fees in this case. Indeed, certain factors—such as preclusion of other employment due to acceptance of the case, whether the case involves a fixed or contingent fee, the time limitations imposed by the client or other circumstances, the "undesirability" of the case, and the nature or length of the professional relationship with the client—are factors which bear more relevance in a fee-shifting case. *In re El Paso Refinery, L.P.*, 257 B.R. 809, 826 (Bankr.W.D.Tex.2000). Typically, preclusion of employment presumes that an attorney does not generally engage in the sort of representation for which fees are being requested and, therefore, is prevented from undertaking a customary amount of additional work due to the increased time demand of that particular case. *See id.* at 826, n. 30. The professionals involved in the case at bar, and in the adversary proceedings associated therewith, may have been precluded from representing other clients, but such preclusion is simply due to the natural limitations on billable hours, as the fees sought by the Applicant are fixed per hour, rather than on a contingency fee basis. Consideration of the time limitations imposed by the client or other circumstances likewise does not add to the analysis, as similar limitations are present in all bankruptcy related representations.

While this Court notes that litigating the various issues presented in this case and the numerous adversary proceedings could certainly be construed as less than desirable, the relative "undesirability" of a bankruptcy case or related adversary proceeding arguably does not have the same effect as in contingency fee cases. Nevertheless, the Court does not find cause to adjust the Applicant's fees based on the "undesirability" of this case or any adversary proceeding associated therewith. Further, the length of the professional relationship between counsel and clients rarely affects the nature of the fees requested in a bankruptcy context, especially since a substantial pre-bankruptcy relationship may disqualify attorneys from representation of the debtor.

Finally, in calculating the lodestar fee in this case, the Court has taken into consideration the results that the Applicant obtained. In some instances, the Court has awarded all of the fees requested by the Applicant due to the results obtained—for example, the litigation involving the Debtor and Oleum Capital. [*See supra* Part C.1.b(xi) ]. Conversely, in other instances, the Court has reduced the fees—for example, the Court has denied the fees associated with the Applicant's attempts, on behalf of the Debtor, to obtain post-petition financing because of the woeful efforts by the Applicant to adduce testimony to satisfy the Debtor's burden to obtain the financing. [*See supra* Part C.1.b(ix) ]. Thus, having already considered the results obtained in arriving at the lodestar fee, the Court finds that no further adjustment, upward or downward, should be made. *Saizan,* 448 F.3d at 800 ("The lodestar

may not be adjusted due to a *Johnson* factor ... if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting.").

2. *Consideration of "All Other Relevant Equitable Factors" in this Case Results in Further Reduction of the Lodestar Fee*

Aside from adjusting the lodestar fee based upon the twelve *Johnson* factors, this Court may consider other factors as well. In his concurring opinion in *Woerner*, Judge Grady Jolly contextualized this broad discretion within the new framework:

> (1) a court is permitted, but not required, to award fees under § 330 for services that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed (or contributed to the administration of the estate); and (2) **courts may consider all other relevant equitable factors,** as stated in § 330(a)(3), including as one of those factors, when appropriate, whether a professional service contributes to a successful outcome.

783 F.3d at 278 (Jolly, J., concurring) (emphasis added). Further, though Judge Prado's majority opinion in *Woerner* clarifies that bankruptcy courts *may* award compensation for failed efforts as long as the efforts were reasonable, it "is not intended to limit courts' broad discretion" to consider "all relevant factors," including the ultimate outcome of the case. 783 F.3d at 277. In the case at bar, this Court now exercises its discretion to "consider all other relevant factors," and in doing so, finds that further reduction of the lodestar fee is appropriate for three reasons.

a. *Reason Number One for Reducing the Lodestar Fee: The Applicant's Failure to Completely Disclose Its Relationship with Herrera*

In its application to represent the estate in this Chapter 11 case, [Doc. No. 6], the Applicant failed to disclose that in 2011, in a different Chapter 11 case, Rothberg had represented Herrera in an appeal of one of this Court's orders. [*See* Notice of Appeal filed by Gilbert A. Herrera and Herrera Partners, Doc. No. 288, Case No. 10–37503, *In re IRH Vintage Park Partners, L.P.*]. The Applicant was required to disclose this prior attorney-client relationship. *See Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir.1994) ("[A]s soon as counsel acquires even constructive knowledge reasonably suggesting an actual or potential conflict, ..., a bankruptcy court ruling should be obtained."). In the Fifth Circuit, failure to make required disclosures to a bankruptcy court can be grounds for total denial of a fee application. *In re W. Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir.2005); *see also In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir.2012) ("Courts may deny all compensation to professionals who fail to make adequate disclosure"). Indeed, in *Delta Oil*, the Fifth Circuit denied all fees after finding that the professional failed to disclose an interest that would have been disqualifying. 432 F.3d at 357–58. In *Am. Int'l Refinery*, the Fifth Circuit affirmed a fee reduction of 20% even though it found the interest would not have been disqualifying. 676 F.3d at 465–66. In that case, the debtor's counsel failed to disclose that its initial retainer was paid by one of debtor's largest creditors.

Here, Rothberg initially testified that he did not recall any previous representation of Herrera. [Hr'g Tr. 57:12–24, Aug. 28, 2014]. Later, he testified that he had in fact represented Herrera. [*Id.* at 77:15–

79:15].[32] This Court finds that the Applicant's failure to disclose its relationship to Herrera is related to the limited success of the Debtor's case, because this relationship led—at least in part—to the employment of an investment banker (i.e., Herrera) whose services were woeful and did not come within hailing distance of providing the benefit to the estate that both Smith and Herrera testified initially could be provided (i.e., selling the subsidiaries for sufficient proceeds to pay all creditors in full). *See In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr.S.D.Tex.2015) (describing Herrera's substandard efforts and denying in its entirety Herrera's fee application request of $483,971.81).

This Court weighs heavily both the Applicant's failure to disclose, a transgression the Fifth Circuit treats seriously, and the ultimate outcome of the case. However, the Court finds that the Applicant's failure to disclose was not as egregious as the failure to disclose in *Am. Int'l Refinery*, and notes that this pending Chapter 11 case did at least result in a fairly successful reorganization, with a 100% payout to unsecured creditors, if not to secured creditors. Therefore, the Court finds that it is appropriate to impose a 5% fee reduction for the Applicant's failure to disclose its prior representation of Herrera. Five percent of the total fees that the Applicant requested, not counting fees for preparation of the Fee Application, amounts to $57,766.08 (i.e., $1,155,321.50 × .05).

b. *Reason Number Two for Reducing the Lodestar Fee: The Applicant Slavishly Looked Out for the Individual Interests of Smith and Estrada to the Detriment of the Estate's Interests*

This is not the only reduction to be made due to relationships. This Court finds that another of the Applicant's relationships damaged the estate—its overly cozy relationship with the two officers of the Debtor, Smith and Estrada. There is no question that the Applicant was aware at the outset of this case of the bitter dispute between the Objectors (some of whom believed that they constituted the proper board), on the one hand, and Smith and Estrada, on the other hand. And, there is no question that from the outset,

---

**32.** There is no question that Rothberg had represented Herrera in an appeal of one of the. undersigned judge's orders in a Chapter 11 case known as *In re IRH Vintage Park Partners*, Case No. 10–37503. Specifically, this Court denied a fee application of Herrera. [Case No. 10–37503, Doc. No. 285]. Rothberg filed the Notice of Appeal on September 19, 2011. [Case No. 10–37503, Doc. No. 288]. To the extent that the Applicant suggests that it did not need to disclose this representation because the *IRH Vintage Park Partners* case was assigned to the undersigned judge, the Applicant is wide off the mark for two reasons. First, this Court did not recollect Rothberg's prior legal representation of Herrera in this particular appeal. Indeed, the undersigned judge does not keep tabs on who is representing parties who are appealing orders from this Court; and if it had recollected Rothberg's representation, it would have further explored this relationship at the hearing in this case on the Debtor's applica-

tion to employ Herrera before deciding on whether to allow the Debtor to employ Herrera. Second, even if this Court did know of this past legal representation, the Applicant is not excused from its duty to make the disclosure to all creditors and parties-in-interest in this case, as they were not involved in the *IRH Vintage Park Partners* case in which Rothberg represented Herrera on appeal; and had the creditors and parties-in-interest in this case known of this prior attorney-client relationship, they would have had the opportunity to argue that this Court should not approve the Debtor's retention of Herrera on the grounds that there was an unacceptable conflict of interest. If they had been given such an opportunity, they might well have convinced this Court not to approve Herrera. The Applicant's failure to disclose the Rothberg/Herrera prior attorney-client relationship, however, precluded any creditor or party-in-interest from having such an opportunity.

the Applicant was aware that the Objectors would actively participate in this case. Under these circumstances, the Applicant's vigorous prosecution of a plan of reorganization that kept Smith and Estrada as the *sole* officers and *sole* directors of the Debtor with excessive compensation packages was patently unconfirmable.[33]

The Applicant's approach in filing and prosecuting the Plan can only be explained by its slavish desire to benefit Smith and Estrada, individually. Indeed, the Applicant's attempt to foist Smith and Estrada on the creditors and stockholders of the Debtor was particularly galling because, as this Court noted in its order denying confirmation of the Plan, "Smith does not understand many provisions of the Plan. Indeed, at one point during the hearing when Smith was unable to answer a question about a provision of the Plan, one of the attorneys representing the Debtor, Ed Rothberg, informed the Court that he (i.e., Rothberg) had listed himself as a witness so that he could give testimony about the Plan's meaning and implementation." [Doc. No. 739, p. 9 of 11]. Thus, the Applicant, in drafting and prosecuting the Plan, not only wanted the creditors and

shareholders to swallow absurdly high compensation packages for Smith and Estrada while allowing them to be the sole officers and directors of the Reorganized Debtor; the Applicant wanted them to do so despite their fundamental lack of understanding of the Plan provisions. Stated differently, the Applicant wanted the creditors and shareholders of the Debtor to reward incompetence. If this is not elevating the interests of Smith and Estrada above the interests of the estate, then nothing is.

The Applicant's insistence on promoting this unrealistic, arrogant plan for the benefit of Smith and Estrada wasted time that could have been spent prosecuting a feasible plan and also fomented further mistrust with the other parties-in-interest and their attorneys. Indeed, after this Court denied confirmation of the Debtor's Plan, the attorney for the major secured creditors (i.e., the Dishon and the Hurley families) had to take the laboring oar to obtain confirmation of the Joint Plan. [Finding of Fact No. 25]. This Court finds that the Applicant's prosecution of the Plan placed the individual interests of Smith and Es-

---

**33.** In its order denying confirmation of the Plan, this Court, in giving its reasons for denying confirmation, made the following observations: "Article 9.1 of the Plan sets forth that the Debtor assumes the executory contracts set forth in exhibit 5 attached to the Plan. [Doc. No. 732, p. 43 of 131]. A review of Exhibit 5 reflects that the Debtor intends to assume employment agreements with Smith and Estrada. [Doc. No. 732, p. 128 of 131]. Indeed, Smith testified about his employment agreement at the confirmation hearing. It is—to put it mildly—a very rich deal for Smith. Section 6(a)(iii) allows Smith for "good reason" to terminate his employment under a variety of circumstances, many of which are circumstances he would control as an officer and director of the Debtor. And, by his own testimony, if his employment was terminated, he would be entitled to receive compensation in the range of $700,000—$1.2

million. This package is unreasonable given that Smith will be the officer and director of a holding company which will own the stock of one fairly small and fledging company named Shift 8." [Doc. No. 739, p. 8 of 11]. The Court also notes that early on in the case, it had already expressed its concern to the Applicant on just exactly what services Smith and Estrada were providing to the estate. [Doc. No. 63, p. 8 of 9] ("Given the Debtor's use of all of these professionals, the Court wants to know: (1) what exactly is Smith going to do eight hours per day for the estate?; (2) what exactly is Estrada going to do eight hours per day for the estate?"); [Doc. No. 156, p. 2 of 12] ("An additional reason for denial of the Motion is that the Debtor has failed to convince this Court that the Debtor needs the services of both Smith and Estrada, with each receiving $5,000.00 per month.").

trada above the interests of the Debtor's estate, and therefore that the Applicant ceased to be "disinterested" during this period. The Court has not accounted for this particular damage and wasted time in its modest reduction of fees totaling $24,517.85 for services related to the Plan that the Applicant unsuccessfully attempted to confirm. [See supra Part C.1.b(iv)]. Under these circumstances, the Court finds that a reduction in the Applicant's fees is appropriate. See In re Kendavis Industries Int'l, Inc., 91 B.R. 742, 754 (Bankr.N.D.Tex.1988) ("An attorney who claims to represent a partnership, but also has some agreement, whether express or implied, with the general or limited partners, or with any control person, to protect its interest, that attorney has an actual conflict of interest, and is subject to disqualification and a disallowance of fees."); In re Liberty Trust Co., 92 B.R. 706, 707 (Bankr.W.D.Tex.1988) ("[W]hen the attorneys for the debtor [corporation] begin to represent the debtor's principal, they may not be compensated because they are not disinterested parties."). The Court will therefore deduct an additional 5% for the Applicant's failure to remain disinterested. Five percent of the total fees that the Applicant has requested, not counting fees for preparation of the Fee Application, amounts to $57,766.08 (i.e., $1,155,321.50 × .05).

c. *Reason Number Three for Reducing the Lodestar Fee: The Applicant's Employment of Unsavory Litigation Tactics*

Finally, this Court finds that a further reduction should be made due to an unacceptable litigation tactic that the Applicant has employed. After the record was closed, but prior to the date for closing arguments to be made, the Applicant filed a pleading entitled: Hoover Slovacek, LLP's Supplement and Notice Related to Its Final Fee Application and Its Objection to the Rule 52 Motion(s) (the "Supplement"). [Doc. No. 1127]. The first section of the Supplement is entirely appropriate because it informed the Court that the Fifth Circuit had recently issued the *Woerner* opinion reversing the standards set forth in *Pro–Snax*. Counsel certainly owes a duty to bring to the Court's attention any change in the law applicable to the dispute at bar.

The second section of the Supplement, however, is entirely inappropriate. This section is entitled "Robert Rhodes." Rhodes is one of the Objectors, and there is no question that he has been at serious odds with the Debtor and its two officers, Smith and Estrada. The Supplement contains the following paragraph, among others, about Rhodes:

> Mr. Rhodes was arrested in Sugarland, Texas. He has surrendered his passport and posted bond of $10,000. [See Ex. B to the Supplement]. The State of Iowa asked for a bond of $500,000 alleging Mr. Rhodes was a flight risk. According to the Court's docket, an extradition hearing is set for May 7, 2015. [See Ex. C to the Supplement], Criminal Case Reset Form. The actions complained of in the Complaint pre-date the November 2012 Transaction.

Informing the Court about Rhodes's arrest, plus attaching exhibits about the background of the arrest, is blatantly beyond the scope of the authorized briefing. At the last evidentiary hearing on the Fee Application, the Applicant requested time to order transcripts and to submit "briefs and citations to transcript evidence as part of a closing." [Hr'g Tr. 115:21–25, Jan. 30, 2015]. The Court granted the parties leave to "get transcripts and make argument based on the transcripts." [Id. at 145:11–15]. The Court did *not* grant the parties leave to submit new evidence after

the parties had both rested on January 30, 2015. Exhibits B and C attached to the Supplement—are exactly that: new evidence—and this Court will not now consider it. *See Hansen v. Schubert,* No. CIV W–02–0850 FCD GG, 2007 WL 1029812, at *2 (E.D.Cal. Apr. 2, 2007) (The court's direction for supplemental briefing was not an invitation for plaintiffs to take a second bite at the apple in bringing new evidence to the court's attention. . . .").

In *Woerner,* the Fifth Circuit directs bankruptcy courts to consider "all other relevant factors" in assessing whether fees should be adjusted. *Woerner,* 783 F.3d at 277 (citing § 330). Here, the portion of the Supplement on Robert Rhodes cited above is both frivolous and in bad faith, and this Court finds that this "Rambo" conduct merits a reduction in the lodestar fee.

Even if this Court had granted the Applicant leave to submit new evidence, the evidence submitted in the Supplement would have been irrelevant to the issues before the Court. The arrest of Robert Rhodes has absolutely nothing to do with the Fee Application. Because the Supplement provides no explanation of the relevance of Rhodes's arrest to the dispute at bar, the Court necessarily concludes that the Applicant hopes the Court will consider the Objection less credible in general because Rhodes is one of the Objectors. The Court does not recognize this connection and finds the evidence irrelevant.

Furthermore, the evidence is impermissible under Federal Rules of Evidence 404, which generally bars evidence of a crime or other bad act to prove a person's character on a particular occasion. Because the dispute at bar is simply not a criminal proceeding in which Rhodes is a defendant, there is no possibility of an exception to this rule, unless Rhodes was a witness at the Fee Application hearing—which he was not. *United States v. Farias,* 925 F.2d 805, 811 (1991) ("The fact that Rule 608(b) by its terms refers to prior conduct specifically 'of a *witness,* for the purpose of attacking or supporting the *witness' credibility'* reflects that the rule is not intended broadly to restrict the introduction of exculpating or incriminating substantive evidence.").

Finally, assuming arguendo that Rhodes's arrest is somehow relevant to the dispute at bar, Federal Rule of Evidence 403 allows this Court, in its discretion, to exclude such evidence if its probative value is substantially outweighed by, among other things, unfair prejudice and confusing the issues. Here, the Supplement constitutes unfair prejudice because the Applicant submitted it to this Court long after the record had been closed. Moreover, the Supplement confuses the issues, as the Applicant attempts to cast aspersions on Rhodes—who is only one of the many Objectors—in order to mask the infirmities of the Fee Application, all of which are discussed in this Opinion.

In sum, the Supplement represents nothing more than the Applicant's improper attempt to prejudice this Court against Rhodes in particular and the Objectors in general. This "Rambo" litigation tactic will not work. The Court finds that the second section of the Supplement is frivolous, and the Applicant's attempt to cast aspersions on Rhodes's character—and, by implication, all of the Objectors—is in bad faith. The Court will therefore impose an additional reduction of the total fees that the Applicant has requested, not counting fees for preparation of the Fee Application.

The Court finds that the reduction should not be as great as the 5% reductions that the Court has imposed for the Applicant's failure to disclose its prior representation of Herrera and for the Applicant's lack of disinterestedness with re-

spect to promoting the personal interests of Smith and Estrada when prosecuting the Plan. The Court takes this view because the failure to disclose its past attorney-client relationship with Herrera and its lack of disinterestedness with respect to Smith and Estrada occurred pre-confirmation and clearly these circumstances had a deleterious effect on the plan confirmation process—i.e., it took longer to confirm a plan (i.e., the Joint Plan) then would otherwise have been the case. Conversely, the "Rambo" tactics concerning Rhodes occurred long after confirmation of the Joint Plan, so this unseemly litigation strategy did not undermine or delay the key objective of any Chapter 11 case: namely, to obtain confirmation of a plan. Nevertheless, the tactic is not only a "cheap shot" at Rhodes in particular, but an abject disregard of and lack of respect for the rules that govern the adversarial process. Under these circumstances, the Court finds that a reduction of 2.5% of the total fees requested by the Applicant is appropriate. This percentage is one-half of the percentage reduction that this Court made with respect to the Applicant's failure to disclose its relationship with Herrera and its disinterestedness with respect to Smith and Estrada.

Accordingly, the reduction will be in the amount of $28,883.04 (i.e., $1,155,321.50 x .025).

### d. Summary of Reductions to the Lodestar Fee

In sum, pursuant to *Woerner*'s directive that this Court may exercise "broad discretion" to "consider all relevant factors," this Court finds that further reductions to the lodestar fee totaling $144,415.20 is appropriate due to: (a) failure to disclose that the Applicant had served as counsel of record for Herrera in an appeal in a prior case; (b) slavishly looking out for the individual interests of Smith and Estrada

when these interests were not beneficial to the estate; and (c) employing "Rambo" litigation tactics by attempting to introduce prejudicial evidence long after the record had been closed and without obtaining leave of this Court. The amount of the reduction is the sum of $57,766.08 plus $57,766.08 plus $28,883.04—which totals $144,415.20. Thus, the lodestar fee of $979,429.77 is reduced by $144,415.20, resulting in approved fees of $835,014.57.

### F. Whether the Expenses Requested are Reasonable

■■■ The Applicant has requested a total of $97,406.66 in reimbursable expenses. [Doc. No. 831, Exhibit F]. The Court finds that, with two significant exceptions, the expenses for which reimbursement is requested are reasonable.

First, the Court finds that the Applicant's request for $5,962.01 for "Lexis–Nexis Online Research" is not reasonable. Online legal research is a cost that is reflected in an attorney's billing rate and is therefore subsumed into attorneys' fees. *See Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.,* 952 F.Supp. 415, 418 (N.D.Tex.1997). As the Seventh Circuit explained:

> The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee. In both cases the total costs are attorney's fees and may not be recovered as "costs."

*Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago,* 38 F.3d 1429, 1440–41 (7th Cir.1994). Therefore, the Lexis–Nexis

fees the Applicant requests are already factored into the hourly rates of the professionals employed by the Applicant. To award these fees as reimbursable expenses would therefore represent double-counting, which is unreasonable. The Court consequently denies all $5,962.01 for the requested "Lexis–Nexis Online Research."

Second, the Court finds that the Applicant's request for $59,595.43 for "Outside Copy Charges" is not reasonable. The Applicant bears the burden of establishing what the requested expenses paid for and why they were necessary to the work performed. *See Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir.1991) ("[R]eproductions necessarily obtained for use in the case are included within taxable costs, provided that the prevailing party demonstrates that necessity."). The Applicant has failed to provide the barest modicum of detail regarding this notably high cost of "Outside Copy Charges." [Doc. No. 831–6, p. 1 of 15]. By contrast, for the "Digital Copies," the Applicant provided the number of copies and the cost per page. [*Id.*]. The Court finds that at the very least, this level of

detail is required to justify reimbursement for such a high cost for copy charges. Nor did the Applicant provide any testimony or introduce any exhibits at the Fee Application hearing on this particular expense. *First State Bancorporation*, 2014 WL 1203141, at *9 ("[The law firm] presented no testimony in support of the [its] Fee Application, instead choosing to rely solely on the [law firm's] Fee Application itself to establish the reasonableness and necessity of its requested compensation."); *Advanced Microbial Solutions*, 306 B.R. at 920. Consequently, the Applicant has failed to meet its burden of proof of establishing that the "Outside Copy Charges" of $59,595.43 are reasonable, and therefore reimbursable. Thus, the Court will deny all $59,595.43 requested in this category.

Other than these two categories of disallowed expenses, the Court has reviewed the one-page list of expenses, [Doc. No. 831–6, p. 1 of 15], and finds that they are reasonable. Specifically, the Court finds that the Applicant should receive reimbursement for following out-of-pocket expenses:

| | |
|---|---|
| • Certified Copies: | $712.25 |
| • Conference Call: | $522.54 |
| • Court Copies: | $1,285.95 |
| • *Deposition Transcripts*: | $5,109.35 |
| • Digital Copies: | $22.60 |
| • Document Retrieval: | $91.27 |
| • Federal Express: | $1,516.53 |
| • Filing Fees: | $2,480.73 |
| • Delivery Service: | $2,850.95 |
| • Local Parking: | $854.50 |
| • OT Air Conditioning: | $1,100.00 |
| • Outgoing Fax Charge: | $75.25 |
| • Pacer Research Fees: | $1,985.70 |
| • Photocopy Expenses: | $5,730.30 |
| • Postage: | $632.08 |
| • Record Search: | $68.00 |
| • Research Fee Secretary of State: | $544.00 |
| • Service Fees: | $4,226.15 |
| • Travel Out of Town: | $1,089.87 |
| • Trial/Hearing Transcripts: | $951.20 |

In sum, the Court will allow $31,849.22 and deny $65,557.44 of the requested $97,406.66 in expenses.

### G. Whether the Amount Requested for Preparing the Fee Application is Reasonable

Finally, the Court turns to whether the Applicant is entitled to the $10,000.00 it has requested for preparing the Fee Application. Although the Supreme Court has determined that bankruptcy professionals are not entitled to compensation for *defending* a fee application, they are entitled to reasonable fees and expenses incurred in simply *preparing* a fee application. *Baker Botts, L.L.P. v. ASARCO, L.L.C.,* —— U.S. ——, 135 S.Ct. 2158, 2167, 192 L.Ed.2d 208 (2015) ("Section 330(a)(1) ... authorize[s] ... 'reasonable compensation for actual, necessary services rendered by' the § 327(a) professional.... A § 327(a) professional's preparation of a fee application is best understood as a 'servic[e] rendered' to the estate administrator under § 330(a)(1), whereas a

professional's defense of that application is not."); *Rose Pass Mines, Inc. v. Howard,* 615 F.2d 1088, 1093 (5th Cir.1980). While the Fifth Circuit has not set a definitive cap on what is considered reasonable for preparation of a fee application, many courts limit such awards to 5% of the total amount requested in a fee application. *See, e.g, In re Mesa Air Grp., Inc.,* 449 B.R. 441, 445 (Bankr.S.D.N.Y.2011); *In re New Boston Coke Corp.,* 299 B.R. 432, 446 (Bankr.E.D.Mich.2003). In *Rose Pass Mines,* the Fifth Circuit reversed an award of $3,850.00 for a $59,000.00 fee application, representing approximately 6%. Here, the $10,000.00 that the Applicant has requested for preparing the Fee Application represents less than 1% of the amount requested for the services rendered to the Debtor. Further, it represents only 1.14% of the amount of fees and expenses this Court is actually awarding the Applicant. This Court therefore finds that the $10,000.00 in fees and expenses that the Applicant has requested for pre-

paring the Fee Application is reasonable, and allows this amount in full.

## V. CONCLUSION

The level of vitriol between the Objectors and their attorneys, on the one hand, and the Debtor (including its officers, Smith and Estrada) and the Applicant, on the other hand, has been—and continues to be—extremely high. Indeed, the Applicant's recent outside-of-the-record reference to Rhodes's arrest underscores the continuing level of disdain among the parties. The Objectors, to a certain degree, perhaps goaded the Applicant into making imprudent, strategic calls—such as filing the arrogant Plan that was patently unconfirmable. But, even if goaded, the Applicant, on behalf of the Debtor, inadvisably spent time prosecuting this Plan, and taking other ill-advised actions—such as trying to obtain post-petition financing without coming within hailing distance of adducing testimony to meet the necessary burden under § 364 or attempting to obtain "sweetheart" compensation packages for Smith and Estrada. Now, the Applicant must suffer the consequences of its actions by having its requested fees reduced due to these poorly conceived and executed efforts. Moreover, the Applicant must suffer the consequences of questionable internal billing practices: namely, lumping as well as entering standardized amounts of time for certain mundane services when the amount of time is patently excessive. Finally, the Applicant must suffer the consequences of failing to adduce sufficient testimony at the hearing on the Fee Application. As the discussion of various time entries in this Opinion illustrates, the Applicant simply failed to make a record sufficient to meet its burden so that this Court could make a finding that the services described by the various time entries were either necessary or reasonable.

The Applicant has requested total fees of $1,155,321.50 (not including the $10,000.00 fee request for preparing the Fee Application). As set forth in this Opinion, the Court disallows the following amounts relating to the following categories:

- Vague Time Entries (**Exhibit A**): $13,332.50
- Lumped Time Entries (**Exhibit B**): $58,128.00
- General/Miscellaneous (**Exhibit D**, pp. 1-28): $8,098.50
- Schedules, SOFA, 341 Meeting, MORs (**Exhibit D**, pp. 29-59): $7,038.00
- Professionals (**Exhibit D**, pp. 60-121): $9,137.00
- Plan and Disclosure Statements (**Ex. G;** *see supra* **Part C.1.b(iv)**): $29,861.35
- Asset Disposition (**Exhibit D**, pp. 122–124): $842.50
- Claims (**Exhibit D**, pp. 125–139): $3,337.50
- DIP Financing (**Exhibit D**, pp. 140–273): $29,585.50
- Digerati v. Sonfield Litigation (**Exhibit D**, pp. 274–280): $1,374.00
- Sonfield v. Albeck Litigation (**Exhibit D**, pp. 281–287): $549.00
- Recap Marketing v. Jaclin Litigation (*see supra* **Part C.1.b(xiv)**): $1,673.00
- Arrayit (*see supra* **Part C.1.b(xvi)**): $165.00
- Entries Related to the Motion for Procedures (**Exhibit E**) $825.25
- Entries Related to the First Interim Fee App (**Exhibit F**) $645.63
- Excessive Time Billed (**Exhibit H**): $11,299.00
- Failure to Disclose Herrera Representation: $57,766.08
- Placing the Personal Interests of Smith and Estrada Above the Interests of the Estate: $57,766.08
- Improperly Attempting to Prejudice this Court Against Rhodes by Attaching to the Supplement Certain Documents Regarding his Arrest that are Outside of the Record: $28,883.04

The sum of the above-referenced figures equals $320,306.93, and it is this amount that the Court disallows. Subtracting $320,306.93 from $1,155,321.50 results in $835,014.57 and it is this amount of fees that this Court approves for the services rendered on behalf of the estate in this Chapter 11 case.

The Court also approves the entire $10,000.00 requested by the Applicant for preparing the Fee Application.

The Applicant has also requested reimbursement of expenses totaling $97,406.66. As set forth in this Opinion, the Court disallows the amount of $5,967.01 for "Nexus–Lexus Online Research" and $59,595.43 for "Outside Copy Charges." Thus, the total amount of expenses that this Court disallows is $65,557.44. Subtracting $65,557.44 from $97,406.66 results in $31,849.22, and it is this amount of reimbursable expenses that this Court approves. The Applicant requests an aggregate amount of $1,262,728.16.[34] This

34. As set forth in the Introduction, the aggre-

gate amount requested of $1,262,728.16 is the

Court, however, will not award this entire amount. As set forth above, the Court allows $835,014.57 in fees for services rendered on behalf of the estate and denies $320,306.93 in fees; allows $31,849.22 in expenses and denies $65,557.44 in expenses; and allows all $10,000.00 for preparation of the Fee Application. The sum of $835,014.57 plus $31,849.22 plus $10,000.00 amounts to a **total award of** $876,863.79. As noted, the Applicant has already received $421,921.48, [Findings of Fact Nos. 10 & 13], so the Court is now authorizing a disbursement of $454,942.31.

A separate order consistent with this Opinion will be entered simultaneously on the docket.

### EXHIBIT A (Vague or Incomplete Entries)

sum of $1,155,321.50 of fees for services rendered + $10,000.00 of fees to prepare the Fee Application + $97,406.66 of reimbursable expenses.

Exhibit A (Vague or Incomplete Entries)[1]

### FEE APPLICATION CATEGORY: "GENERAL"[2]

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 05/31/13 | KJM | Email discussions regarding stock lists | 1.00 | $130.00 | $130.00 | Email discussions regarding stock lists with whom? What information was exchanged during the email discussions? |
| 06/03/13 | DCB | Review correspondence from Mr. Flack regarding email concerns | 0.10 | $275.00 | $27.50 | Who is Mr. Flack? What were the specific email concerns? |
| 06/28/13 | DCB | Confer with Mr. Rothberg regarding research issues.(2) Correspondence with Mr. Smith regarding research issues.(2) Telephone conference with Mr. Smith.(3) | 0.70 | $275.00 | $192.50 | Research issues regarding what? Telephone conference with Mr. Smith regarding what? |
| 07/10/13 | DCB | confer with client (.5) | 0.50 | $275.00 | $137.50 | Confer with client regarding what? |
| 07/20/13 | DCB | Review new records from Mr. Estrada and follow up regarding emails | 0.50 | $275.00 | $137.50 | New records and emails regarding what? |
| 07/20/13 | DCB | Correspondence with Mr. Gore following up on Mr. Howell's emails | 0.10 | $275.00 | $27.50 | Correspondence following up on emails regarding what? |
| 07/25/13 | DCB | Review research from law clerk and confer with Mr. Rothberg regarding overall strategy | 0.50 | $275.00 | $137.50 | Research regarding what? Strategy to accomplish what specific objective? |
| 07/25/13 | DCB | Confer with Mr. Rothberg (.2) | 0.20 | $275.00 | $55.00 | Confer with Mr. Rothberg regarding what? |
| 07/31/13 | DCB | Telephone conference with Kristin Wallis regarding pending matter related to Debtor | 0.50 | $275.00 | $137.50 | Who is Kristin Wallis? What specifically is the pending matter? |

[1] The first six columns are verbatim the same as the time sheets attached to the Fee Application. The seventh column (i.e., the far right column) contains this Court's comments as to why each entry is vague or incomplete. These comments constitute this Court's findings that the entries are vague and/or incomplete. The Court notes that in several instances, there is more than one comment for the particular time entry. However, even if there were only one comment rather than multiple comments, the entry would still be vague or incomplete. To the extent that this Court is incorrect that one of its comments does not render the entry vague or incomplete, then, in the alternative, one or more of the other comments for the particular entry renders that entry vague or incomplete—which, in turn, results in this Court disallowing the value of the time associated with the entry.

| 09/12/13 | MMH | Phone conference with Mr. Middleton regarding hearing | 0.20 | $285.00 | $57.00 | What hearing? What was explained to Mr. Middleton about the hearing? |
|---|---|---|---|---|---|---|
| 09/25/13 | DCB | Confer with Mr. Smith (.1) | 0.10 | $275.00 | $27.50 | Confer with Mr. Smith regarding what? |
| 10/01/13 | DCB | Correspondence with Mr. Farwell regarding dates in bankruptcy case | 0.10 | $275.00 | $27.50 | Who is Mr. Farwell? Regarding dates for what specifically? |
| 10/02/13 | DCB | Correspondence with Mr. Soumas | 0.10 | $275.00 | $27.50 | Who is Mr. Soumas? Correspondence with Mr. Soumas regarding what? |
| 10/03/13 | DCB | Confer with Mr. Herrera (.3) . . . Correspondence with Mr. Middleton. (.1) . . Prepare notice to file with Court. (.5). Review other notices. (.2) . . . Receipt and download of additional email files from Mr. Smith. (.3). | 1.40 | $275.00 | $385.00 | Confer with Mr. Herrera regarding what? Correspondence with Mr. Middleton regarding what? What notice was filed with the Court? What other notices were reviewed? Receipt and download of additional email files regarding what? |
| 11/05/13 | DCB | Telephone conference with Mr. Rothberg, Ms. Melchers, Ms. Segura and Mr. Power | 0.30 | $275.00 | $82.50 | Telephone conference regarding what? |
| 12/06/13 | DCB | Confer with client and Mr. Rothberg (.5) | 0.50 | $275.00 | $137.50 | Confer with client and Mr. Rothberg about what? |
| 12/09/13 | HNM | Discussion regarding tax returns. (0.3) | 0.30 | $400.00 | $120.00 | Discussion with whom? Reason for discussing tax returns? (Are they not filed, or are they inaccurate, or do they need to be produced to someone, or is there some other reason?) |
| 12/09/13 | DCB | Confer with Ms. Catmull (.2) | 0.20 | $275.00 | $55.00 | Confer with Ms. Catmull regarding what? |
| 12/23/13 | HNM | Discussion regarding Dishon's tax return and accounting matters | 1.80 | $400.00 | $720.00 | With whom was the discussion? What specifically is the reason for discussing Dishon's tax return? (Is it not filed, or inaccurate, or does it need to be produced to someone, or is there some other reason?) What are the accounting matters specifically being discussed? |
| 12/23/13 | DCB | Review correspondence from Mr. Wagner | 0.10 | $275.00 | $27.50 | Who is Mr. Wagner? Correspondence from Mr. Wagner regarding what? |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 12/26/13 | HNM | Discussions and reviewed emails (0.8) | 0.80 | $400.00 | $320.00 | With whom were the discussions? Discussions and review of emails regarding what? |
| 12/27/13 | DCB | Telephone conference with Mr. Head regarding documents | 0.50 | $275.00 | $137.50 | Who is Mr. Head? Telephone conference with Mr. Head regarding what documents? |
| 01/03/14 | DCB | Partial: Follow up correspondence with Mr. Luce | 0.10 | $275.00 | $27.50 | Follow up correspondence with Mr. Luce regarding what? |
| 01/11/14 | DCB | Confer with Ms. Melchers. (.3). Confer with Mr. Smith. (.1). Confer with Mr. Rothberg (.3). Confer about Rule 11 draft still having the language which was to be omitted.(.2) | 0.90 | $275.00 | $247.50 | Confer with Ms. Melchers, Mr. Smith, and Mr. Rothberg regarding what? Confer about Rule 11 draft with whom? |
| 01/22/14 | DCB | Teleconference with George Gore. (2) | 0.20 | $275.00 | $55.00 | Telephone conference with Mr. Gore regarding what? |
| 01/28/14 | DCB | Correspondence with Mr. Hancock regarding call he wanted to have Friday | 0.10 | $275.00 | $27.50 | Who is Mr. Hancock? Correspondence with Mr. Hancock regarding call about what? |
| 02/24/14 | HNM | Discussion regarding status of case and Hurley's tax return | 0.30 | $400.00 | $120.00 | With whom was the discussion? What specifically is the reason for discussing Hurley's tax return? (Is it not filed, or inaccurate, or does it need to be produced to someone, or is there some other reason?) |
| 03/12/14 | DCB | Additional follow up correspondence from Mr. Luce | 0.20 | $275.00 | $55.00 | Additional follow up correspondence from Mr. Luce regarding what? |

**FEE APPLICATION CATEGORY: "SCHEDULES & STATEMENTS, 341, MORS"**

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 10/04/13 | HNM | Discussion regarding document production. (0.3) | 0.30 | $400.00 | $120.00 | Discussion with whom? Discussion regarding document production related to what issue? (Are the documents privileged, or is the request improper in some other respect?) |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 10/05/13 | HNM | Discussion regarding filing tax return and production of same. (0.5) | 0.50 | $400.00 | $200.00 | Discussion with whom? Reason for discussion regarding filing tax return and production of tax return? (Are these actions related to a motion or other pending matter?) |
| 10/09/13 | HNM | Review and sent emails regarding filing tax return. (0.3) | 0.30 | $400.00 | $120.00 | To whom is HNM sending emails? Whose tax return? (the Debtor's return or one of its subsidiary's return?) |
| 11/05/13 | HNM | Review draft tax returns and email regarding same | 1.50 | $400.00 | $600.00 | To whom is HNM sending email? For what reason is HNM reviewing the draft tax return? Whose tax return? (the Debtor's return or one of its subsidiary's return?) |
| 11/08/13 | HNM | Review emails regarding tax returns. (0.3) | 0.30 | $400.00 | $120.00 | Reason for reviewing emails regarding tax returns? Review emails from whom? |
| 11/26/13 | HNM | Meeting to discuss tax liability of subsidiaries. (0.5) | 0.50 | $400.00 | $200.00 | Meeting with whom? |
| 11/27/13 | HNM | Exchange emails regarding tax matters. (0.3) | 0.30 | $400.00 | $120.00 | Exchanged emails with whom? Exchange emails regarding tax matters related to what specific issue? |
| 11/29/13 | HNM | Discussion regarding tax payments for subsidiaries. (0.3) Discussion regarding financing matters. (0.2) | 0.50 | $400.00 | $200.00 | Discussion with whom? Discussion regarding financing matters related to the Debtor or to its subsidiaries, or all of them? |
| 01/02/14 | HNM | Discussion regarding Hurley's tax return. (0.2) | 0.20 | $400.00 | $80.00 | Discussion with whom? Discussion regarding Hurley's tax return related to what specific issue? |

**FEE APPLICATION CATEGORY: "PROFESSIONAL"**

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 08/14/13 | DCB | Correspondence with Mr. Norwood regarding scheduling a call with Mr. Jaclin | 0.20 | $275.00 | $55.00 | Who is Mr. Norwood? Who is Mr. Jaclin? Correspondence with Mr. Norwood regarding scheduling a call with Mr. Jaclin related to what issue or matter? |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments |
|---|---|---|---|---|---|---|
| 08/27/13 | DCB | Conference call with Mr. Rothberg and Mr. Herrera | 0.50 | $275.00 | $137.50 | Conference call with Mr. Rothberg and Mr. Herrera regarding what issue or issues? |
| 09/25/13 | MMH | Phone conference and email with Mr. Goolsby regarding fee application | 0.40 | $285.00 | $114.00 | Who is Mr. Goolsby? Whose fee application? What information was discussed during the conference call? What information was conveyed in the email? |
| 09/25/13 | KJM | Email to Ms. Keller regarding the fee application | 0.20 | $130.00 | $26.00 | Who is Ms. Keller? What information was discussed or transmitted in the email regarding the fee application? Whose fee application? |

**FEE APPLICATION CATEGORY: "PLAN AND DISCLOSURE STATEMENT"**

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 09/27/13 | HNM | Discussion regarding disclosure statement items | 1.80 | $400.00 | $720.00 | Discussion with whom? What specific items were discussed regarding the disclosure statement? |
| 10/08/13 | HNM | Discussion regarding sale of subs assets as part of an offer. (0.4) | 0.40 | $400.00 | $160.00 | Discussion with whom? |
| 10/15/13 | HNM | Discussion and review email regarding trust agreement | 0.60 | $400.00 | $240.00 | Discussion with whom? What information was exchanged during discussion regarding the trust agreement? What does this trust agreement concern? The trust agreement was between which parties? |
| 10/16/13 | HNM | Review email regarding same. (0.2) | 0.20 | $400.00 | $80.00 | Review email from whom? Review email regarding what? |
| 10/17/13 | HNM | Discussion regarding trust agreement and review same. (1.0) Review email regarding same. (0.3) | 1.30 | $400.00 | $520.00 | Discussion with whom? What information was exchanged during the discussion regarding the trust agreement? What does this trust agreement concern? The trust agreement was between which parties? What was the email about specifically? |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 01/14/14 | HNM | Discussion regarding settlement and NOL consideration | 1.00 | $400.00 | $400.00 | The discussion was with whom? Settlement with whom? What specific consideration was given to the NOL? |
| 01/20/14 | HNM | Discussion regarding same. (0.7) Discussion regarding same. (0.3) | 1.00 | $400.00 | $400.00 | Discussion with whom? Discussion about what? |
| 01/21/14 | HNM | Discussion regarding filing plan and trust document. (0.4) Discussion and review and respond to email regarding stock power. (0.3) | 0.70 | $400.00 | $280.00 | Discussion with whom regarding filing plan and trust documents? Discussion, review, and respond to email regarding stock power with whom? What stock power is being discussed (stock of the Debtor or stock of the subsidiaries)? |
| 01/30/14 | HNM | Review tax return and emails regarding same. (0.7) Discussion regarding same. (0.3) | 1.00 | $400.00 | $400.00 | Emails from whom? Discussion with whom? Reason for reviewing tax return and emails regarding tax return? What was discussed with regard to the tax return? |
| 03/13/14 | DCB | Confer with Mr. Power regarding setting up conference call meeting with Mr. Clishem | 0.10 | $275.00 | $27.50 | Who is Mr. Clishem? Reason for setting up conference call meeting with Mr. Clishem? What was the conference call supposed to be about? |

**FEE APPLICATION CATEGORY: "ASSET DISPOSITION"**

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 07/26/13 | DCB | Correspondence with Mr. Herrera and teleconference with Mr. Herrera | 0.50 | $275.00 | $137.50 | Telephone conference with Mr. Herrera about what? Correspondence with Mr. Herrera about what? |
| 07/26/13 | DCB | Correspondence with Mr. Power | 0.10 | $275.00 | $27.50 | Correspondence with Mr. Power about what? |
| 07/28/13 | DCB | Telephone conference with Mr. Herrera (.5), and follow up correspondence from Mr. Herrera (.2) | 0.70 | $275.00 | $192.50 | Telephone conference with Mr. Herrera about what? Follow up correspondence with Mr. Herrera about what? |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 08/02/13 | DCB | Teleconference with Mr. Herrera, Mr. Smith, Mr. Estrada, and Mr. Biggerstaff | 1.00 | $275.00 | $275.00 | Telephone conference with Mr. Herrera, Mr. Smith, Mr. Estrada, and Mr. Biggerstaff about what? |
| 08/13/13 | DCB | Telephone conference with Gilbert Herrera (.5). Follow up with client regarding same (.2) | 0.70 | $275.00 | $192.50 | Telephone conference with Mr. Herrera about what? Follow up with client about what? |
| 12/14/13 | DCB | Detailed correspondence from Mr. Herrera following up on call | 0.20 | $275.00 | $55.00 | What was the "detailed" correspondence from Mr. Herrera about? |
| 02/19/14 | MMH | Conference with Mr. Rothberg. (.1) | 0.10 | $285.00 | $28.50 | Conference with Mr. Rothberg about what? |
| 03/03/14 | DCB | Telephone conference with Mr. Lopez. (.2) | 0.20 | $275.00 | $55.00 | Who is Mr. Lopez? Telephone conference with Mr. Lopez about what? |

### FEE APPLICATION CATEGORY: "CLAIMS"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 10/16/13 | DCB | Confer with client. (2) | 0.20 | $275.00 | $55.00 | Confer with client about what? |

### FEE APPLICATION CATEGORY: "DIGERATI v. SONFIELD LITIGATION"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 06/29/13 | DCB | Continued Research | 1.00 | $275.00 | $275.00 | Continued research on what topic? What pending matter was this research related to? |
| 01/02/14 | DCB | Confer with Mr. Ansley. (.1) | 0.10 | $275.00 | $27.50 | Who is Mr. Ansley? Confer with Mr. Ansley about what? |

### FEE APPLICATION CATEGORY: "DIGERATI v. OLEUM LITIGATION"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 07/19/13 | LAW | Conference regarding the results (0.2) | 0.20 | $135.00 | $27.00 | Conference with whom? What results? What were the results with regard to? |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 07/23/13 | DCB | confer with clients and Mr. Rothberg (.5) | 0.50 | $275.00 | $137.50 | Confer with clients and Mr. Rothberg about what? Confer with which clients (Note: The Applicant has only one client—the Debtor—so who are the "clients")? |
| 07/26/13 | DCB | Multiple correspondence with Mr. Luce | 0.50 | $275.00 | $137.50 | Multiple correspondences with Mr. Luce about what? |
| 07/26/13 | DCB | Correspondence from Mr. Luce | 0.10 | $275.00 | $27.50 | Correspondence with Mr. Luce about what? |

## FEE APPLICATION CATEGORY: "RHODES HOLDINGS v. GORHAM LITIGATION"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 06/04/13 | DCB | Correspondence with Ms. Kandra from Mr. Ayers office (.2) | 0.20 | $275.00 | $55.00 | What was the correspondence with Ms. Kandra about? |
| 06/12/13 | DCB | Confer with Mr. Rothberg (.5) | 0.50 | $275.00 | $137.50 | Confer with Mr. Rothberg about what? |
| 06/16/13 | DCB | Correspondence with opposing counsel | 0.20 | $275.00 | $55.00 | What was name of opposing counsel and whom did he/she represent? Correspondence with opposing counsel about what? |
| 06/20/13 | DCB | Follow up confirmation email with Mr. Spiller (.1) | 0.10 | $275.00 | $27.50 | Who is Mr. Spiller? What was the follow up confirmation email with Mr. Spiller about? |
| 06/25/13 | DCB | Additional correspondence from Mr. Kelley (.1) | 0.10 | $275.00 | $27.50 | What was the additional correspondence from Mr. Kelley about? |
| 06/27/13 | DCB | Confer with Ms. Krasoff regarding memorandum for the morning (.3) | 0.30 | $275.00 | $82.50 | What was the memorandum about? |
| 08/05/13 | DCB | Conference call with Mr. Jewell | 0.30 | $275.00 | $82.50 | Conference call with Mr. Jewell about what? |
| 09/07/13 | DCB | Lexis case law research on Legal Issue 1 | 1.00 | $275.00 | $275.00 | What was Legal Issue 1? The Lexis case law research was regarding what? |
| 09/08/13 | DCB | Research issues related to Legal Issue 1, 2 and 3 | 4.00 | $275.00 | $1,100.00 | What were the Legal Issues 1, 2, and 3? What was the specific research that was done? |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 09/09/13 | DCB | Additional research related to Legal Issue 3 | 1.50 | $275.00 | $412.50 | What was the Legal Issue 3? What specific additional research was done? |
| 10/02/13 | DCB | Call with Mr. Lindenberg and counsel | 0.50 | $275.00 | $137.50 | Who is Mr. Lindenberg? Conference call with Mr. Lindenberg and counsel about what? What is the name of "counsel"? |
| 10/28/13 | DCB | Confer with H. Ron Davidson | 0.10 | $275.00 | $27.50 | Who is Mr. H. Ron Davidson? Confer with H. Ron Davidson about what? |
| 11/06/13 | DCB | Conference call with Ms. Murray | 0.20 | $275.00 | $55.00 | Who is Ms. Murray? Conference call with Ms. Murray about what? |
| 11/22/13 | DCB | Confer with opposing counsel | 0.20 | $275.00 | $55.00 | Confer with opposing counsel about what? What was the name of opposing counsel and who did he/she represent? |
| 01/16/14 | DCB | Additional correspondence with Ms. Brandt | 0.20 | $275.00 | $55.00 | Who is Ms. Brandt? Correspondence about what? |

**FEE APPLICATION CATEGORY: "SONFIELD v. ALBECK LITIGATION"**

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 07/01/13 | DCB | Correspondence from Ripoff Report's counsel. (2) | 0.20 | $275.00 | $55.00 | What was the name of the counsel who sent the correspondence? What was the correspondence about? |
| 07/02/13 | DCB | Correspondence from Sonfield's office. (1) | 0.10 | $275.00 | $27.50 | Who specifically was the correspondence from? What was the correspondence about? |

**FEE APPLICATION CATEGORY: "14th COURT OF APPEALS"**

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Comments as to why each entry is vague |
|---|---|---|---|---|---|---|
| 02/14/14 | DCB | Review, revise and draft motion and sign | 0.20 | $75.00 | $55.00 | Review, revise, and draft what motion? What relief was being sought for the estate? |
| TOTAL AMOUNT DISALLOWED | | | 42.1 | | $13,332.50 | |

EXHIBIT B (Lumped Entries)

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| General | 05/30/13 | ELR | Lengthy conference calls with client and research relative to venue of Chapter 11 case | 3.0 | $400.00 | $1,200.00 |
| General | 05/30/13 | AEC | Research 28 U.S.C. 1408 and subject matter jurisdiction and propose modifications to official form for voluntary petition | 1.0 | $320.00 | $320.00 |
| General | 05/31/13 | MSK | Prepare for and attend conference with Epiq regarding noticing | 1.0 | $130.00 | $130.00 |
| General | 06/09/13 | DCB | Review witness and exhibit list filed by Rhodes Holdings. Confer with Mr. Rothberg. Prepare for hearings on June 11 | 1.0 | $275.00 | $275.00 |
| General | 07/18/13 | DCB | Draft response to motion to transfer venue and assemble multiple exhibits, revise, research case law and file | 6.0 | $275.00 | $1,650.00 |
| General | 07/19/13 | KJM | Revised and filed Exhibit List and Witness List for hearing on contempt motions | 1.5 | $130.00 | $195.00 |
| General | 08/04/13 | DCB | Draft Motion to Strike Designation of Transcript and research related to same | 3.5 | $275.00 | $962.50 |
| General | 08/04/13 | DCB | Prepare witness outlines on Motion to Transfer Venue and prepare outline for opening. | 3.0 | $275.00 | $825.00 |
| General | 08/21/13 | DCB | Attend hearing telephonically on ruling on Motion to Transfer Venue, and confer with client regarding same | 2.1 | $275.00 | $577.50 |
| General | 08/25/13 | ELR | Detailed review of email and attachments from Holly Pappas regarding status of remanded lawsuits. Draft email reply | 1.0 | $400.00 | $400.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| General | 08/28/13 | DCB | Attend hearing on Motion to Quash and confer with Mr. Solomon afterwards | 0.7 | $275.00 | $192.50 |
| General | 09/10/13 | DCB | Meet with clients after hearing to discuss and prepare for settlement meeting scheduled for 2:30 and confer with Mr. Rothberg regarding settlement related issues | 1.1 | $275.00 | $302.50 |
| General | 09/20/13 | DCB | Attend hearings on exhibits to be added to record on motion to transfer and confer with client | 1.5 | $275.00 | $412.50 |
| General | 09/23/13 | DCB | Work on document production. Instructions to file clerk regarding saving all transcripts in chronological order for production purposes | 0.6 | $275.00 | $165.00 |
| General | 09/26/13 | DCB | Telephone call with Mr. Smith regarding Mr. McIlwain and general litigation strategy and confer with Mr. Rothberg regarding same | 0.6 | $275.00 | $165.00 |
| General | 09/30/13 | DCB | Review ruling on motion to remand and provide copy to client | 0.6 | $275.00 | $165.00 |
| General | 10/02/13 | DCB | Prepare for and attended document hearing related to Agreed Order on Rule 2004 examinations | 3.5 | $275.00 | $962.50 |
| General | 10/30/13 | DCB | Deposition of A. Estrada and concurrently taking notes, dealing with additional emails regarding retention of settlement hearing experts, follow up on information for Mr. Herrera and meet with clients over 45 minute lunch break discussing follow up issues on audits, marketing | 11.0 | $275.00 | $3,025.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| General | 11/14/13 | DCB | Attend deposition of Vess Hurley (delayed to indefinite time due to settlement discussions). Multiple correspondence and conferences regarding settlement issues while waiting for deposition to resume | 3.5 | $275.00 | $962.50 |
| General | 12/01/13 | DCB | Further revisions to witness and exhibit list and instructions to paralegal regarding same | 1.0 | $275.00 | $275.00 |
| General | 12/03/13 | LKW | Compile exhibits to business records affidavit and prepare a binder for Johnie Patterson | 0.6 | $100.00 | $60.00 |
| General | 12/09/13 | LKW | Finalize and file Debtor's Emergency Motion to Strike John Howell's Joinder in Response in Opposition to Debtor's Amended Motion to Compromise Controversy (Doc. No. 361) and Amended Response in Opposition to Debtor's Motion to Compromise of Controversy (Doc. 531) as Untimely | 0.6 | $100.00 | $60.00 |
| General | 12/10/13 | HNM | Review financial information and research various tax issues | 1.0 | $400.00 | $400.00 |
| General | 12/10/13 | MSK | Drafted the Designation of Deposition Transcripts and combined the Transcript portions for each witness | 1.8 | $185.00 | $333.00 |
| General | 12/11/13 | HNM | Review tax returns and discuss possible adjustments with Antonio | 1.0 | $400.00 | $400.00 |
| General | 12/12/13 | HNM | Review financial information and discussion with Antonio regarding income deferral into 2013 | 0.8 | $400.00 | $320.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| General | 12/20/13 | DCB | Telephone conference with lead trial counsel in the Reynolds litigation confirming misrepresentations in Hepford deposition and other pending investigations against Hepford. Voice message for special counsel | 0.9 | $275.00 | $247.50 |
| General | 12/22/13 | DCB | Research related to Philip Johnston finding recent SEC filings for Medswipe and a phone number. Leave voice message for Philip Johnston | 0.6 | $275.00 | $165.00 |
| General | 12/23/13 | DCB | Revise and modify motion to strike. Draft Order | 1.3 | $275.00 | $357.50 |
| General | 12/31/13 | HNM | Discussion with Antonio regarding Dishon's tax return and review emails regarding same | 1.3 | $400.00 | $520.00 |
| General | 01/11/14 | ELR | Numerous telephone conferences with Art Smith, D. Brown, and C. Power to discuss revised settlement terms. Draft extensive email with comments on structure of the revised proposed settlement | 3.0 | $400.00 | $1,200.00 |
| General | 01/12/14 | ELR | Review and comment on provisions to Rule 9019 agreement and Rule 11 Agreement. Conference call with counsel regarding same | 3.5 | $400.00 | $1,400.00 |
| General | 01/14/14 | MSK | Attended and prepared for trial on the continuation of the Motion to Approve Compromise at Docket 312 | 1.7 | $185.00 | $314.50 |
| General | 01/15/14 | KJM | Finalize Notice of Settlement and coordinate mailing of same to all shareholders and master service list by Epiq | 1.0 | $130.00 | $130.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| General | 01/21/14 | LKW | Finalize and file Supplemental Certificate of Service for Notice of Entry of Order Approving Compromise and Settlement | 3.0 | $100.00 | $300.00 |
| General | 02/18/14 | LKW | Compile additional rebuttal exhibits and assist D. Brown with hearing on preparation set for February 18, 2014 | 2.2 | $100.00 | $220.00 |
| Schedules & Statement, 341, MORS | 06/11/13 | KJM | Final review of client documents to finalize and upload creditor matrix | 2.0 | $130.00 | $260.00 |
| Schedules & Statement, 341, MORS | 06/12/13 | KJM | Telephone discussion with Mr. Estrada regarding schedules and statements, and detailed email to Mr. Estrada regarding same | 1.0 | $130.00 | $130.00 |
| Schedules & Statement, 341, MORS | 06/17/13 | KJM | Finalize and file Schedules A, B, D, E, and F | 1.0 | $130.00 | $130.00 |
| Schedules & Statement, 341, MORS | 06/27/13 | DCB | Attend hearing on emergency motion to extend deadlines and notice procedures. Confer with clients regarding Court's setting hearing on AP motion for remand set for 8:00 a.m. | 2.0 | $275.00 | $550.00 |
| Schedules & Statement, 341, MORS | 07/26/13 | KJM | Revise and assemble attachments to Form 26 and email same to Messrs. Estrada and Smith for review and signature | 1.0 | $130.00 | $130.00 |
| Schedules & Statement, 341, MORS | 08/07/13 | LKW | Finalize and file Amended Schedule B, Amended Schedule F and Amended Statement of Financial Affairs | 1.0 | $100.00 | $100.00 |
| Professionals | 12/16/13 | KJM | Review fee application and detailed email to Mr. Herrera regarding same | 0.70 | $130.00 | $91.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| Professionals | 01/01/14 | KJM | Draft Exhibit List and Witness List for hearing on second interim fee application of Debtor's counsel, and begin preparing for hearing on same | 2.0 | $130.00 | $260.00 |
| Plan and Disclosure Statements | 08/15/13 | ELR | Draft plan term sheet. Email same to clients for review and comment | 1.0 | $400.00 | $400.00 |
| Plan and Disclosure Statements | 08/27/13 | ELR | Revise draft plan term sheet. Draft email circulating same to clients | 0.8 | $400.00 | $320.00 |
| Plan and Disclosure Statements | 09/18/13 | HNM | Review Section 382 and review emails in preparation for discussion regarding NOL | 1.3 | $400.00 | $520.00 |
| Plan and Disclosure Statements | 09/19/13 | HNM | Discussion regarding NOL and corporate stock history and researched Section 382 provisions | 2.0 | $400.00 | $800.00 |
| Plan and Disclosure Statements | 09/23/13 | HNM | Discussion and review documents on stock sale and draft plan of organization | 2.8 | $400.00 | $1,120.00 |
| Plan and Disclosure Statements | 09/24/13 | HNM | Review plan and researched Section 382 | 3.0 | $400.00 | $1,200.00 |
| Plan and Disclosure Statements | 09/25/13 | HNM | Review plan and discuss stock and tax issues | 1.5 | $400.00 | $600.00 |
| Plan and Disclosure Statements | 09/25/13 | CWM | Research regarding Section 382 application and calculate "change in ownership." | 3.0 | $285.00 | $855.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| Plan and Disclosure Statements | 09/26/13 | HNM | Discussion, review and commented on disclosure statement and plan of reorganization | 3.0 | $400.00 | $1,200.00 |
| Plan and Disclosure Statements | 09/26/13 | CWM | Review of Digerati Plan and discuss Section 382 issue and suggest revisions | 2.0 | $285.00 | $570.00 |
| Plan and Disclosure Statements | 09/27/13 | CWM | Review of disclosure and discuss and suggest revisions | 3.0 | $285.00 | $855.00 |
| Plan and Disclosure Statements | 10/14/13 | CWM | Review emails and discussion regarding net operating loss footnote and revise. | 1.5 | $285.00 | $427.50 |
| Plan and Disclosure Statements | 01/20/14 | ELR | Review email from C. Power with comments on plan and disclosure statement. Telephone conference with C. Power regarding same. Revise plan and disclosure statement. Draft email transmitting same to Mr. Power. | 2.5 | $400.00 | $1,000.00 |
| Plan and Disclosure Statements | 01/21/14 | KJM | Prepare plan package for mailing to all creditors and parties in interest, excluding public shareholders, and coordinate mailing of same with Copy Source 1 | 1.0 | $130.00 | $130.00 |
| Plan and Disclosure Statements | 01/28/14 | ELR | Draft further revisions to the plan modification and extensive email to Mr. Patterson and others regarding same | 1.0 | $400.00 | $400.00 |
| Plan and Disclosure Statements | 01/31/14 | KJM | Review email discussions, and begin working on assembling of rebuttal exhibits for confirmation | 1.0 | $130.00 | $130.00 |
| Plan and Disclosure Statements | 01/31/14 | DCB | Prepare notes to rebut such arguments and review draft transcript from January 14 hearing and review audio. | 2.0 | $275.00 | $550.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| Plan and Disclosure Statements | 02/01/14 | DCB | Review documents and assemble potential emails and documents for rebuttal list for Plan Confirmation Hearing. | 1.0 | $275.00 | $275.00 |
| Plan and Disclosure Statements | 02/01/14 | LKW | Finalize rebuttal exhibits and email to Copy Source 1 to make exhibit binders | 0.8 | $100.00 | $80.00 |
| Plan and Disclosure Statements | 02/02/14 | ELR | Review plan and exhibits redlined to include changes from the modification. Draft email transmitting same to client for review | 1.0 | $400.00 | $400.00 |
| Plan and Disclosure Statements | 02/03/14 | ELR | Revise plan modifications to reflect changes discussed at settlement conference. Draft email circulating same to interested parties | 1.3 | $400.00 | $520.00 |
| Plan and Disclosure Statements | 02/05/14 | MSK | Final review of the Second Amended Plan and had A. Smith review and sign the Second Amended Plan prior to filing | 0.7 | $185.00 | $129.50 |
| Plan and Disclosure Statements | 02/05/14 | LKW | Finalize and file Debtor's Second Amended and Restated Chapter 11 Plan | 0.7 | $100.00 | $70.00 |
| Plan and Disclosure Statements | 02/15/14 | DCB | Case law research related to independent directors issue and to prepare for hearing/additional memo in opposition to motion to terminate exclusivity and agreement for Trustee | 2.0 | $275.00 | $550.00 |
| Plan and Disclosure Statements | 03/11/14 | HNM | Review email and discussion regarding tax issues and confirmation prospects | 0.5 | $400.00 | $200.00 |
| Plan and Disclosure Statements | 04/03/14 | DCB | Revise the Exhibit B to the Confirmation Order and send to Ms. Segura | 0.8 | $275.00 | $220.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| Lift Stays | 08/02/13 | DCB | Finalize exhibit and witness list and delivery of same to all parties via DropBox for Motion to Transfer Venue and Motion to Lift Stay | 1.5 | $275.00 | $412.50 |
| Asset Disposition | 06/21/13 | ELR | Conference call with potential purchaser to discuss status of case and draft letter of intent | 0.8 | $400.00 | $320.00 |
| Asset Disposition | 07/26/13 | DCB | Draft Exhibit A to subpoena to Watts Capital, Secretary of State research related to Watts Capital, review address, and review subpoena and instructions for service | 1.5 | $275.00 | $412.50 |
| Asset Disposition | 07/27/13 | DCB | Correspondence from Mr. Herrera, response to same, share DropBox files with Herrera's team, and correspondence with client | 1.0 | $275.00 | $275.00 |
| Asset Disposition | 07/31/13 | DCB | Correspondence and assembling records for Mr. Herrera and links via DropBox | 1.0 | $275.00 | $275.00 |
| Asset Disposition | 08/09/13 | DCB | Conference call with Ms. Melchers, Mr. Herrera, Mr. Smith and Mr. Estrada regarding sale related issues, and meet with Ms. Melchers regarding issues related to sale | 1.0 | $275.00 | $275.00 |
| Asset Disposition | 08/12/13 | DCB | Begin review of correspondence provided by Ms. Barnes and provide links to client and Mr. Herrera | 2.0 | $275.00 | $550.00 |
| Asset Disposition | 08/22/13 | DCB | Review documents produced by Mr. Effid and transmit same to Mr. Herrera and client | 0.7 | $275.00 | $192.50 |
| Asset Disposition | 08/27/13 | ELR | Telephone conference with G. Herrera regarding status of due diligence. Draft email to client regarding deficiencies and possible cures | 0.7 | $400.00 | $280.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| Claims | 11/11/13 | ELR | Analyze amended claims and interests as compared to those which were originally filed. Create chart showing comparisons. Assign M. Krasoff to file amended objections where appropriate | 2.5 | $400.00 | $1,000.00 |
| Claims | 12/02/13 | KJM | Review docket and prepare index of objections to proofs of interest, and assemble exhibits to same in preparation for the hearing on the objections | 4.5 | $130.00 | $585.00 |
| Digerati v. Sonfield Litigation | 05/30/13 | SKR | Review emails and documents from client and review, revise, file and serve Suggestion of Bankruptcy in Digerati Technologies v Sonfield and Sonfield, et al., Cause No. 2013-06483, In the 281st Judicial District for Harris County, Texas | 0.7 | $110.00 | $77.00 |
| Digerati v. Sonfield Litigation | 06/13/13 | ELR | Attend hearing on motion to modify Temporary Restraining Order. Draft order requiring Chase Bank to make interim payments | 7.5 | $400.00 | $3,000.00 |
| Digerati v. Sonfield Litigation | 06/28/13 | DCB | Review motion to remand and begin research for response (prorated) | 2.0 | $275.00 | $550.00 |
| Digerati v. Sonfield Litigation | 07/03/13 | DCB | Draft and file motion to entry of scheduling order (pro rated between adversaries) and review state court docket and Bexar County docket for reference | 1.0 | $275.00 | $275.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| Digerati v. Sonfield Litigation | 07/08/13 | DCB | Continue work on the Motion for Turnover of Robert J. Sonfield, P.C.'s records with additional facts, review records for applicable exhibits and legal research | 3.0 | $275.00 | $825.00 |
| Digerati v. Sonfield Litigation | 07/19/13 | DCB | Drafting and research for objection to motion to remand and ECF filing of same | 5.0 | $275.00 | $1,375.00 |
| Digerati v. Sonfield Litigation | 07/28/13 | DCB | Receive additional records from Mr. Flack, and review Defendant and Plaintiff exhibits from TI Hearing | 3.5 | $275.00 | $962.50 |
| Digerati v. Sonfield Litigation | 08/01/13 | KJM | Draft exhibit list and witness list for hearing on Motion to Dismiss, and assemble exhibits to same | 3.0 | $130.00 | $390.00 |
| Digerati v. Sonfield Litigation | 08/22/13 | DCB | Draft response to Motion to Reinstate Appeal, additional research, further modify, and confer with client regarding same | 3.8 | $275.00 | $1,045.00 |
| Digerati v. Sonfield Litigation | 09/13/13 | DCB | Additional work on adversary complaint and provide draft to client for review with brief explanation | 3.1 | $275.00 | $852.50 |
| Digerati v. Sonfield Litigation | 09/26/13 | DCB | Research additional information related to Mr. McIlwain and assets (identify lender is Vista Bank with UCC on Arrayit and UGH stock) and confer with Mr. Smith regarding issues related to same | 1.5 | $275.00 | $412.50 |
| Digerati v. Sonfield Litigation | 10/11/13 | DCB | Research other entities that Rhodes was involved in to show pattern and further investigate equity line issues | 2.0 | $275.00 | $550.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| Digerati v. Oleum Capital Litigation | 05/30/13 | SKR | Review emails and documents from client and review, revise, file and serve Suggestion of Bankruptcy in Digerati Technologies v Oleum Capital LLC, Case No. 2:13-cv-00191-GMN-VCF, In the U.S. District Court for the District of Nevada | 0.7 | $110.00 | $77.00 |
| Digerati v. Oleum Capital Litigation | 06/10/13 | MSK | Reviewed the local rules to be admitted Pro Hac Vice, and drafted verified petition according to the Rules | 0.6 | $185.00 | $111.00 |
| Digerati v. Oleum Capital Litigation | 07/08/13 | SKR | Initial draft of Motion to Withdrawal as counsel and Motion to Substitute counsel in Nevada | 1.2 | $110.00 | $132.00 |
| Digerati v. Oleum Capital Litigation | 07/09/13 | DCB | Begin drafting Motion to Compel production of records from Mr. Gewerter with legal research related to post-petition representation of debtor | 1.5 | $275.00 | $412.50 |
| Digerati v. Oleum Capital Litigation | 07/17/13 | MMH | Various email and phone conference with Mr. Goolsby regarding Nevada lawsuit | 0.7 | $285.00 | $199.50 |
| Digerati v. Oleum Capital Litigation | 07/18/13 | DCB | prepare motion for contempt against Mr. Hepford and research related to same and related order | 4.0 | $275.00 | $1,100.00 |
| Digerati v. Oleum Capital Litigation | 07/19/13 | LKW | Finalize, file and serve Notice of Hearing for July 22, 2013 | 0.6 | $100.00 | $60.00 |
| Digerati v. Oleum Capital Litigation | 07/21/13 | DCB | Review emails provided by Mr. Sonfield and Mr. Smith and correspondence with client and Mr. Rothberg on emails related to financials, Recap/AEF involvement. | 5.0 | $275.00 | $1,375.00 |
| Digerati v. Oleum Capital Litigation | 07/24/13 | DCB | Review draft motion to dismiss, and detailed response to Mr. Goolsby regarding same | 1.0 | $275.00 | $275.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| Rhodes Holdings v. Gorham Litigation | 05/30/13 | SKR | Review emails and documents from client and review, revise, file and serve the Suggestion of Bankruptcy in Rhodes Holdings, et al v Gorham, et al., Cause No. 2013-CI-02253, In the 258th District Court for Bexar County, Texas | 0.7 | $110.00 | $77.00 |
| Rhodes Holdings v. Gorham Litigation | 06/07/13 | DCB | Review Court's orders. Meet with Mr. Ayres regarding events arising since entry of TRO and hearing in State Court | 1.0 | $275.00 | $275.00 |
| Rhodes Holdings v. Gorham Litigation | 06/14/13 | LKW | Finalize, file and serve Emergency Motion to Redact Financial Account Information | 0.6 | $100.00 | $60.00 |
| Rhodes Holdings v. Gorham Litigation | 06/19/13 | DCB | Prepare emergency motion and related order for 105 injunction, confer with client that he was served and receipt of photograph of subpoena | 1.5 | $275.00 | $412.50 |
| Rhodes Holdings v. Gorham Litigation | 06/21/13 | DCB | Court hearing on redacting order and confer with Ms. Krasoff regarding notice issues | 0.7 | $275.00 | $192.50 |
| Rhodes Holdings v. Gorham Litigation | 06/29/13 | DCB | Prepare draft of motion to intervene and related order. Research related to intervention | 3.0 | $275.00 | $825.00 |
| Rhodes Holdings v. Gorham Litigation | 07/01/13 | DCB | Confer with clients regarding draft motion to intervene, finalize motion and order | 0.8 | $275.00 | $220.00 |
| Rhodes Holdings v. Gorham Litigation | 07/03/13 | DCB | Draft motion for scheduling order and review state court docket and standard Order normally issued by Judge Bohm (pro rated) | 1.0 | $275.00 | $275.00 |

| Category | Date | Professional | Activity | Hours | Hourly Rate | Amount Excluded |
|---|---|---|---|---|---|---|
| Rhodes Holdings v. Gorham Litigation | 07/05/13 | DCB | Draft subpoena to Robert Rhodes and Rhodes Holdings with exhibit A document request and research addresses for service | 2.0 | $275.00 | $550.00 |
| Rhodes Holdings v. Gorham Litigation | 08/01/13 | DCB | Review all records provided by Rhodes Bates No. 1-3340 and confer with clients regarding particular records, as well as mark some as exhibits for Tuesday hearing | 4.0 | $275.00 | $1,100.00 |
| Sonfield v. Albeck Litigation | 05/30/13 | SKR | Review emails and documents from client and review, revise, file and serve the Suggestion of Bankruptcy in Robert Sonfield, Jr. v Albeck, et al., Cause No. 2013-05429, In the 129th Judicial District Court for Harris County, Texas | 0.7 | $110.00 | $77.00 |
| Sonfield v. Albeck Litigation | 06/04/13 | DCB | Finalize notice of removal and prepare and file 9027 statement | 1.0 | $275.00 | $275.00 |
| Sonfield v. Albeck Litigation | 07/19/13 | DCB | Drafting of objection to Motion to Remand and ECF file same | 0.6 | $275.00 | $165.00 |
| Sonfield v. Albeck Litigation | 08/02/13 | LKW | Finalize and file Debtor's Supplemental Memo Objecting to Sonfield's Motion to Remand and Joinder to Motion | 0.8 | $100.00 | $80.00 |
| Recap Marketing v. Jaclin Litigation | 05/30/13 | SKR | Review emails and documents from the client and review, revise, file and serve the Suggestion of Bankruptcy in Recap Marketing v Jaclin, et al, Cause No 2013-04580 in the 157th Judicial District Court for Harris County, Texas | 0.7 | $110.00 | $77.00 |
| 14th Court of Appeals | 02/14/14 | LKW | Finalize, file and serve Agreed Motion to Dismiss Appeal with Prejudice | 0.7 | $100.00 | $70.00 |
| **TOTAL AMOUNT DISALLOWED** | | | | 211.8 | | $58,128.00 |

EXHIBIT C (Summary of Fees Disallowed Because the Applicant has Failed to Prove that the Services Associated With the Entries in These Categories Were Necessary or Reasonable)

| CATEGORY (As Described in the Fee Application) | NUMBER OF HOURS | AMOUNT OF FEES REQUESTED | NUMBER OF HOURS EXCLUDED | AMOUNT OF FEES DISALLOWED | REMAINING FEE REQUEST[1] |
|---|---|---|---|---|---|
| General, Miscellaneous Services | 2,160.70 | $521,196.00 | 30.80 | $8,098.50 | $513,097.50 |
| Schedules and Statements, 341 Meeting, and Monthly Operating Reports | 237.10 | $52,656.50 | 26.50 | $7,038.00 | $45,618.50 |
| Professionals | 187.10 | $44,101.50 | 38.40 | $9,137.00 $825.25* (Ex. E) $645.63* (Ex. F) $10,607.88 | $33,493.62 |
| Plan and Disclosure Statements | 885.20 | $245,178.50 | 15.70 | $5,343.50 $24,517.85** $29,861.35 | $215,317.15 |
| Executory Contracts | 3.40 | $1,240.00 | 0.00 | $0.00 | $1,240.00 |
| Lift Stay | 38.30 | $9,085.00 | 0.00 | $0.00 | $9,085.00 |
| Asset Disposition | 167.80 | $54,326.00 | 2.20 | $842.50 | $53,483.50 |
| Claims | 200.10 | $39,579.00 | 17.90 | $3,337.50 | $36,241.50 |
| DIP Financing | 97.50 | $29,585.50 | 97.50 | $29,585.50 | $0.00 |
| Digerati v. Sonfield Litigation | 187.40 | $41,964.00 | 7.50 | $1,374.00 | $40,590.00 |
| Digerati v. Oleum Capital Litigation | 101.70 | $23,802.00 | 0.00 | $0.00 | $23,802.00 |
| Rhodes Holdings v. Gorham Litigation | 294.10 | $69,576.50 | 0.00 | $0.00 | $69,576.50 |
| Sonfield v. Albeck Litigation | 55.50 | $12,327.50 | 2.90 | $549.00 | $11,778.50 |
| Recap Marketing v. Jaclin Litigation | 6.70 | $1,673.00 | 6.70 | $1,673.00 | $0 |
| 14th Court of Appeals | 3.50 | $741.00 | 0.00 | $0.00 | $741.00 |
| Arrayit | 0.60 | $165.00 | 0.60 | $165.00 | $0 |
| Dishon & Hurley v. Special Waste | 1.90 | $400.00 | 0.00 | $0.00 | $400.00 |
| Perfect Circle | 1.20 | $330.00 | 0.00 | $0.00 | $330.00 |
| Appeal (Venue) Case No. 13-2973 | 26.60 | $5,861.50 | 0.00 | $0.00 | $5,861.50 |
| Appeal (2004 Exam) Case No. 13-3221 | 11.20 | $1,533.00 | 0.00 | $0.00 | $1,533.00 |
| **TOTAL** | **4,667.60** | **$1,155,321.50** | **246.70** | **$93,132.23** | **$1,062,189.27** |

[1] The figures in this column are still subject to further adjustment, as discussed in the Memorandum Opinion. For example, further reductions are made due to numerous entries reflecting time billed that was excessive given the services that were rendered (*see* Exhibit H).

* The Court has made two types of reduction with respect to the requested fees in the "Professionals" category. First, the Court has made a reduction of 38.40 hours relating to time entries discussed in **Exhibit D**. Second, the Court has made two percentage reductions, one of which is reflected in Exhibit E ($825.25) and the other of which is reflected in **Exhibit F** ($645.63). These two exhibits are discussed on pages 37–40 of the Memorandum Opinion.

** The Court has made two types of reductions with respect to requested fees in the "Plan and Disclosure Statements" category. First, the Court has made a reduction of 15.70 hours relating to certain plan and disclosure statements that the Applicant drafted (according to its timesheets) but which were never filed. This reduction is discussed on page 45–46 of the Memorandum Opinion. Second, the Court has made a percentage reduction. Specifically, the Court has disallowed 10% ($24,517.85) of the Applicant's total requested fees relating to the Plan and Disclosure Statements, as discussed on pages 43–44 of the Memorandum Opinion.

## FEE APPLICATION CATEGORY: "GENERAL/MISCELLANEOUS"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/27/2013 | DCB | Meet with Debtor representatives.(1.0) Attend Status Conference to provide litigation strategy update, and hearing on DIP lending motion(3.) | 4.0 | $275.00 | $1,100.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/12/2013 | MMH | Review and approve Notice of Hearing on Motion to Extend Deadline to Provide Proof of Filing Taxes | 0.1 | $285.00 | $28.50 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61]) a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .* *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 10/30/2013 | MSK | Reviewed and revised the Notice of Issuance of Subpoena Issued on J. Abney and R. Sonfield | 0.2 | $185.00 | $37.00 | In an order dated November 5, 2013, this Court entered an order quashing the subpoena of Robert L. Sonfield, Jr. [Doc. No. 450]. The Court took this action because the Applicant had subpoenaed Mr. Sonfield for an examination on a date that was in direct contradiction of the scheduling conference that this Court had already conducted. The Court finds that under these circumstances no fees associated with any subpoena for Mr. Sonfield should be awarded. Trying to subpoena a witness for a date in contradiction of the date determined by the Court and agreed upon by all counsel at the scheduling conference was not a "good gamble" under *Woerner*. |
| 10/30/2013 | MSK | Reviewed and revised the Subpoena to R. Sonfield | 0.1 | $185.00 | $18.50 | In an order dated November 5, 2013, this Court entered an order quashing the subpoena of Robert L. Sonfield, Jr. [Doc. No. 450]. The Court took this action because the Applicant had subpoenaed Mr. Sonfield for an examination on a date that was in direct contradiction of the scheduling conference that this Court had already conducted. The Court finds that under these circumstances no fees associated with any subpoena for Mr. Sonfield should be awarded. Trying to subpoena a witness for a date in contradiction of the date determined by the Court and agreed upon by all counsel at the scheduling conference was not a "good gamble" under *Woerner*. |
| 10/30/2013 | LKW | Draft Subpoena for Rule 2004 Examination for R. Sonfield | 0.5 | $100.00 | $50.00 | In an order dated November 5, 2013, this Court entered an order quashing the subpoena of Robert L. Sonfield, Jr. [Doc. No. 450]. The Court took this action because the Applicant had subpoenaed Mr. Sonfield for an examination on a date that was in direct contradiction of the scheduling conference that this Court had already conducted. The Court finds that under these circumstances no fees associated with any subpoena for Mr. Sonfield should be awarded. Trying to subpoena a witness for a date in contradiction of the date determined by the Court and agreed upon by all counsel at the scheduling conference was not a "good gamble" under *Woerner*. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 10/31/2013 | LKW | Revise draft Subpoena for Rule 2004 Examination for R. Sonfield | 0.2 | $100.00 | $20.00 | In an order dated November 5, 2013, this Court entered an order quashing the subpoena of Robert L. Sonfield, Jr. [Doc. No. 450] The Court took this action because the Applicant had subpoenaed Mr. Sonfield for an examination on a date that was in direct contradiction of the scheduling conference that this Court had already conducted. The Court finds that under these circumstances no fees associated with any subpoena for Mr. Sonfield should be awarded. Trying to subpoena a witness for a date in contradiction of the date determined by the Court and agreed upon by all counsel at the scheduling conference was not a "good gamble" under *Woerner*. |
| 10/31/2013 | DCB | Correspondence with Mr. Pierce regarding deposition for Mr Sonfield | 0.2 | $275.00 | $55.00 | In an order dated November 5, 2013, this Court entered an order quashing the subpoena of Robert L. Sonfield, Jr. [Doc. No. 450]. The Court took this action because the Applicant had subpoenaed Mr. Sonfield for an examination on a date that was in direct contradiction of the scheduling conference that this Court had already conducted. The Court finds that under these circumstances no fees associated with any subpoena for Mr. Sonfield should be awarded. Trying to subpoena a witness for a date in contradiction of the date determined by the Court and agreed upon by all counsel at the scheduling conference was not a "good gamble" under *Woerner*. |
| 11/4/2013 | SKR | Contact Merrill and have subpoenas served on Abney, Tessier and Sonfield | 0.2 | $110.00 | $22.00 | In an order dated November 5, 2013, this Court entered an order quashing the subpoena of Robert L. Sonfield, Jr. [Doc. No. 450]. The Court took this action because the Applicant had subpoenaed Mr. Sonfield for an examination on a date that was in direct contradiction of the scheduling conference that this Court had already conducted. The Court finds that under these circumstances no fees associated with any subpoena for Mr. Sonfield should be awarded. Trying to subpoena a witness for a date in contradiction of the date determined by the Court and agreed upon by all counsel at the scheduling conference was not a "good gamble" under *Woerner*. |

398

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 11/4/2013 | SKR | File Notice of issuance regarding the 2004 subpoenas to Tessier, Sonfield and Abney | 0.2 | $110.00 | $22.00 | In an order dated November 5, 2013, this Court entered an order quashing the subpoena of Robert L. Sonfield, Jr. [Doc. No. 450]. The Court took this action because the Applicant had subpoenaed Mr. Sonfield for an examination on a date that was in direct contradiction of the scheduling conference that this Court had already conducted. The Court finds that under these circumstances no fees associated with any subpoena for Mr. Sonfield should be awarded. Trying to subpoena a witness for a date in contradiction of the date determined by the Court and agreed upon by all counsel at the scheduling conference was not a "good gamble" under *Woerner*. |
| 11/4/2013 | DCB | Review subpoenas for Tessier, Sonfield and Abney | 0.2 | $275.00 | $55.00 | In an order dated November 5, 2013, this Court entered an order quashing the subpoena of Robert L. Sonfield, Jr. [Doc. No. 450]. The Court took this action because the Applicant had subpoenaed Mr. Sonfield for an examination on a date that was in direct contradiction of the scheduling conference that this Court had already conducted. The Court finds that under these circumstances no fees associated with any subpoena for Mr. Sonfield should be awarded. Trying to subpoena a witness for a date in contradiction of the date determined by the Court and agreed upon by all counsel at the scheduling conference was not a "good gamble" under *Woerner*. |
| 11/5/2013 | DCB | Review Court's order quashing subpoena | 0.1 | $275.00 | $27.50 | In an order dated November 5, 2013, this Court entered an order quashing the subpoena of Robert L. Sonfield, Jr. [Doc. No. 450]. The Court took this action because the Applicant had subpoenaed Mr. Sonfield for an examination on a date that was in direct contradiction of the scheduling conference that this Court had already conducted. The Court finds that under these circumstances no fees associated with any subpoena for Mr. Sonfield should be awarded. Trying to subpoena a witness for a date in contradiction of the date determined by the Court and agreed upon by all counsel at the scheduling conference was not a "good gamble" under *Woerner*. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 11/9/2013 | ELR | Draft addendum to amended settlement agreement (1.5). Draft email transmitting same to client and D. Brown for review and approval (.2) | 1.7 | $400.00 | $680.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan - and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)],]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|---|
| 11/9/2015 | ELR | Several telephone conferences with W. Christian to discussed addendum to amended settlement agreement | 0.3 | $400.00 | $120.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . . .*" *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 11/26/2013 | DCB | Meet with Mr. Power and associates, Mr. Christian, Mr. Rothberg regarding settlement hearing, financial controls, and finalizing addendum. (9:00 - 10:15) (11-1) | 3.2 | $275.00 | $880.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 11/26/2013 | ELR | Attend meeting to work on addendum to settlement agreement | 4.0 | $400.00 | $1,600.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277; and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*," *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 11/29/2013 | DCB | Revise Addendum and confer with Ms. Melchers regarding same | 0.2 | $275.00 | $55.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/7/2013 | LKW | Finalize and file Amended Notice of Addendum to Amended Settlement Agreement | 0.5 | $100.00 | $50.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan —and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 12/1/2013 | DCB | Confer with Ms. Melchers regarding addendum, modify and submit to all counsel | 0.2 | $275.00 | $55.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|---------------------------------------------------------------|
| 12/2/2013 | ELR | Exchange emails with T. Melchers regarding final version of addendum to settlement agreement. Revise and circulate same for signature | 0.3 | $400.00 | $120.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 12/7/2015 | MSK | Drafted Amended Notice of Addendum to the Amended Settlement Agreement | 0.2 | $185.00 | $37.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 12/7/2013 | MSK | Drafted Notice of Addendum to the Amended Settlement Agreement | 0.3 | $185.00 | $55.50 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/7/2013 | LKW | Finalize and file Notice of Addendum to Amended Settlement Agreement | 0.5 | $100.00 | $50.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[],' *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . . ." Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/9/2013 | MSK | Emailed J. Luce regarding the time of the receipt of the emails from J. Patterson in response to the Notice of Addendum | 0.2 | $185.00 | $37.00 | On December 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc. No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, the Court finds that the Applicant should not be compensated for services rendered related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with those services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/9/2013 | MSK | Emailed J. Luce regarding the response from J. Patterson on the Notice of Addendum | 0.2 | $185.00 | $37.00 | On *December* 11, 2013, this Court entered an order striking the addendum to the amended settlement agreement. [Doc No. 594]. The Court did so because the Court believed that the Applicant, on behalf of the Debtor, had sandbagged various parties-in-interest by filing this addendum at the 11th hour prior to the scheduled hearing on a motion of the Debtor to approve the settlement. Because the Applicant sandbagged these parties-in-interest, *the Court finds that the Applicant should not be compensated for services rendered* related to the addendum. It may well be that this settlement agreement contained terms eventually incorporated into the Joint Plan—and therefore was beneficial to the estate. However, the Court heard no testimony at the Fee Application hearing on this precise point, whereas this Court does have a record from the hearing held on December 11, 2013 showing that initially the Applicant sandbagged various parties with the last minute filing of the addendum. As a basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/9/2013 | MSK | Emailed T. Melchers, M. Segura, and A. Sprague regarding the depositions of the families in order to respond to the emergency motion to continue | 0.2 | $185.00 | $37.00 | On December 9, 2013, various parties-in-interest filed an emergency motion to continue hearing on the motion to compromise. [Doc. No. 576]. They did so because the Applicant filed an addendum to the settlement agreement at the eleventh hour, and they therefore asserted that a continuance was necessary to avoid being unduly prejudiced. The Applicant then spent time working on a response in opposition to this motion for continuance. The Court denied the emergency motion on December 11, 2013. [Doc. No. 596]. However, the Court did so not because of the response filed by the Applicant on behalf of the Debtor, but rather because, on December 11, 2013, the Court struck the addendum filed by the Debtor. [Doc. No. 594]. The Court did so because the Applicant was wholly late in filing the addendum and the Court believed that the Applicant was attempting to sandbag these parties-in-interest. If the Debtor had timely filed the addendum, the parties-in-interest would never have needed to file the motion for continuance. Thus, this Court finds that the services rendered by the Applicant to respond to the motion for continuance should not be approved. The Applicant created an unnecessary dispute by its 11th hour filing of the addendum. The Court finds that the services related to the drafting of the response opposing the emergency motion to continue were neither necessary nor beneficial to the estate. As a separate and independent basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 12/9/2013 | MSK | Drafted the Response to the Emergency Motion for Continuance of the Hearing on the Settlement | 2.1 | $185.00 | $388.50 | On December 9, 2013, various parties-in-interest filed an emergency motion to continue hearing or the motion to compromise. [Doc. No 576]. They did so because the Applicant filed an addendum to the settlement agreement at the eleventh hour, and they therefore asserted that a continuance was necessary to avoid being unduly prejudiced. The Applicant then spent time working on a response in opposition to this motion for continuance. The Court denied the emergency motion on December 11, 2013. [Doc. No. 596]. However, the Court did so not because of the response filed by the Applicant on behalf of the Debtor, but rather because, on December 11, 2013, the Court struck the addendum filed by the Debtor. [Doc. No. 594] The Court did so because the Applicant was wholly late in filing the addendum and the Court believed that the Applicant was attempting to sandbag these parties-in-interest. If the Debtor had timely filed the addendum, the parties-in-interest would never have needed to file the motion for continuance. Thus, this Court finds that the services rendered by the Applicant to respond to the motion for continuance should not be approved. The Applicant created an unnecessary dispute by its 11th hour filing of the addendum. The Court finds that the services related to the drafting of the response opposing the emergency motion to continue were neither necessary nor beneficial to the estate. As a separate and independent basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)," *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ," *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|---------------------------------------------------------------------|
| 12/9/2013 | DCB | Modify draft response to Motion to continue hearing for final form | 1.0 | $275.00 | $275.00 | On December 9, 2013, various parties-in-interest filed an emergency motion to continue hearing on the motion to compromise. [Doc. No. 576] They did so because the Applicant filed an addendum to the settlement agreement at the eleventh hour, and they therefore asserted that a continuance was necessary to avoid being unduly prejudiced. The Applicant then spent time working on a response in opposition to this motion for continuance. The Court denied the emergency motion on December 11, 2013. [Doc. No. 596]. However, the Court did so not because of the response filed by the Applicant on behalf of the Debtor, but rather because, on December 11, 2013, the Court struck the addendum filed by the Debtor. [Doc. No. 594]. The Court did so because the Applicant was wholly late in filing the addendum and the Court believed that the Applicant was attempting to sandbag these parties-in-interest. If the Debtor had timely filed the addendum, the parties-in-interest would never have needed to file the motion for continuance. Thus, this Court finds that the services rendered by the Applicant to respond to the motion for continuance should not be approved. The Applicant created an unnecessary dispute by its 11th hour filing of the addendum. The Court finds that the services related to the drafting of the response opposing the emergency motion to continue were neither necessary nor beneficial to the estate. As a separate and independent basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*.'" 11 U.S.C. § 330(a)(3)[;]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but*" [illegible] services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing |

*... expected to provided an identifiable, material benefit to the estate at the time these services were performed . . . and courts may consider all other relevant equitable factors . . . when appropriate . . . ." Id. at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these* (text fragments within findings column)

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 12/9/2013 | DCB | Review emergency motion to continue | 0.2 | $275.00 | $55.00 | On December 9, 2013, various parties-in-interest filed an emergency motion to continue hearing on the motion to compromise. [Doc. No. 576] They did so because the Applicant filed an addendum to the settlement agreement at the eleventh hour, and they therefore asserted that a continuance was necessary to avoid being unduly prejudiced. The Applicant then spent time working on a response in opposition to this motion for continuance. The Court denied the emergency motion on December 11, 2013. [Doc. No. 594]. However, the Court did so not because of the response filed by the Applicant on behalf of the Debtor, but rather because, on December 11, 2013, the Court struck the addendum filed by the Debtor. [Doc No. 594]. The Court did so because the Applicant was wholly late in filing the addendum and the Court believed that the Applicant was attempting to sandbag these parties-in-interest. If the Debtor had timely filed the addendum, the parties-in-interest would never have needed to file the the motion for continuance. Thus, this Court finds that the services rendered by the Applicant to respond to the motion for continuance should not be approved. The Applicant created an unnecessary dispute by its 11th hour filing of the addendum. The Court finds that the services related to the drafting of the response opposing the emergency motion to continue were neither necessary nor beneficial to the estate. As a separate and independent basis for disallowing these requested fees, this Court, cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*'," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/10/2013 | MSK | Drafted the Notice of Filing Corrected Exhibit B to the Response to the Emergency Motion to Continue the December 11, 2013 hearing | 0.4 | $185.00 | $74.00 | On December 9, 2013, various parties-in-interest filed an emergency motion to continue hearing on the motion to compromise. [Doc. No. 576]. They did so because the Applicant filed an addendum to the settlement agreement at the eleventh hour, and they therefore asserted that a continuance was necessary to avoid being unduly prejudiced. The Applicant then spent time working on a response in opposition to this motion for continuance. The Court denied the emergency motion on December 11, 2013. [Doc. No. 596]. However, the Court did so not because of the response filed by the Applicant on behalf of the Debtor, but rather because, on December 11, 2013, the Court struck the addendum filed by the Debtor. [Doc. No. 594]. The Court did so because the Applicant was wholly late in filing the addendum and the Court believed that the Applicant was attempting to sandbag these parties-in-interest. If the Debtor had timely filed the addendum, the parties-in-interest would never have needed to file the motion for continuance. Thus, this Court finds that the services rendered by the Applicant to respond to the motion for continuance should not be approved. The Applicant created an unnecessary dispute by its 11th hour filing of the addendum. The Court finds that the services related to the crafting of the response opposing the emergency motion to continue were neither necessary nor beneficial to the estate. As a separate and independent basis for disallowing these requested fees, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . , when appropriate . . . ." *Id.* at 278 (emphasis added). Here, sandbagging active parties-in-interest is a "relevant factor" in this Court's determination of whether to approve requested fees. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "General/Miscellaneous" category. The Court now exercises this discretion to deny these fees, as sandbagging an opposing party is unacceptable. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 1/2/2014 | MSK | Drafted Motion Opposing the Re-Opening of Discovery Concerning the Debtor's Amended Motion to Approve Compromise | 3.2 | $185.00 | $592.00 | There are time entries reflecting that the Applicant drafted a motion opposing the re-opening of discovery concerning the Debtor's amended motion to approve compromise. However, the Applicant, on behalf of the Debtor, never filed any motion opposing the re-opening of discovery. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 1/2/2014 | DCB | Confer with Ms. Krasoff regarding scope of motion opposed to reopening discovery | 0.2 | $275.00 | $55.00 | There are time entries reflecting that the Applicant drafted a motion opposing the re-opening of discovery concerning the Debtor's amended motion to approve compromise. However, the Applicant, on behalf of the Debtor, never filed any motion opposing the re-opening of discovery. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 1/3/2014 | LKW | Revised Motion to Oppose Re-Opening Evidence | 0.4 | $100.00 | $40.00 | There are time entries reflecting that the Applicant drafted a motion opposing the re-opening of discovery concerning the Debtor's amended motion to approve compromise. However, the Applicant, on behalf of the Debtor, never filed any motion opposing the re-opening of discovery. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 1/4/2014 | DCB | Revise motion to oppose reopening evidence | 1.0 | $275.00 | $275.00 | There are time entries reflecting that the Applicant drafted a motion opposing the re-opening of discovery concerning the Debtor's amended motion to approve compromise. However, the Applicant, on behalf of the Debtor, never filed any motion opposing the re-opening of discovery. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 1/3/2014 | DCB | Confer regarding strategy in filing motion to oppose reopening discovery | 0.2 | $275.00 | $55.00 | There are time entries reflecting that the Applicant drafted a motion opposing the re-opening of discovery concerning the Debtor's amended motion to approve compromise. However, the Applicant, on behalf of the Debtor, never filed any motion opposing the re-opening of discovery. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 2/13/2014 | DCB | Drafting of term sheet for appointment of independent director to discuss with client and creditors | 0.2 | $275.00 | $55.00 | On February 18, 2014, the Applicant, on behalf of the Debtor, filed a motion to approve selection process for independent directors of Debtor and/or independent directors of reorganized debtor pursuant to amended plan. [Doc. No. 749]. These particular services, which were performed prior to February 18, 2014, apparently all related to the above-referenced motion. However, on March 10, 2014, the Applicant, on behalf of the Debtor, withdrew this motion. [Doc. No. 781]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the motion was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to this motion have provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 2/14/2014 | DCB | Confer with Mr. Luce regarding independent director process | 0.1 | $275.00 | $27.50 | On February 18, 2014, the Applicant, on behalf of the Debtor, filed a motion to approve selection process for independent directors of Debtor and/or independent directors of reorganized debtor pursuant to amended plan. [Doc. No. 749]. These particular services, which were performed prior to February 18, 2014, apparently all related to the above-referenced motion. However, on March 10, 2014, the Applicant, on behalf of the Debtor, withdrew this motion. [Doc. No. 781]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the motion was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to this motion have provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 2/14/2014 | DCB | Confer with Mr. Power regarding Independent Director process | 0.2 | $275.00 | $55.00 | On February 18, 2014, the Applicant, on behalf of the Debtor, filed a motion to approve selection process for independent directors of Debtor and/or independent directors of reorganized debtor pursuant to amended plan. [Doc. No. 749]. These particular services, which were performed prior to February 18, 2014, apparently all related to the above-referenced motion. However, on March 10, 2014, the Applicant, on behalf of the Debtor, withdrew this motion. [Doc. No. 781]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the motion was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to this motion have provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 2/14/2014 | DCB | Further drafting of process to use for Independent Directors and circulate to clients | 1.0 | $275.00 | $275.00 | On February 18, 2014, the Applicant, on behalf of the Debtor, filed a motion to approve selection process for independent directors of Debtor and/or independent directors of reorganized debtor pursuant to amended plan. [Doc. No. 749]. These particular services, which were performed prior to February 18, 2014, apparently all related to the above-referenced motion. However, on March 10, 2014, the Applicant, on behalf of the Debtor, withdrew this motion. [Doc. No. 781]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the motion was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to this motion have provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 2/17/2014 | DCB | Draft Motion for Appointment of Independent Director. (2). Confer with counsel for Allowed Secured Creditors regarding same. (1) | 2.1 | $275.00 | $577.50 | On February 18, 2014, the Applicant, on behalf of the Debtor, filed a motion to approve selection process for independent directors of Debtor and/or independent directors of reorganized debtor pursuant to amended plan. [Doc. No. 749]. These particular services, which were performed prior to February 18, 2014, apparently all related to the above-referenced motion. However, on March 10, 2014, the Applicant, on behalf of the Debtor, withdrew this motion. [Doc. No. 781]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the motion was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to this motion have provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 2/18/2014 | LKW | Finalize and file Motion to Approve Procedures for Board Selection | 0.5 | $100.00 | $50.00 | On February 18, 2014, the Applicant, on behalf of the Debtor, filed a motion to approve selection process for independent directors of Debtor and/or independent directors of reorganized debtor pursuant to amended plan. [Doc. No. 749]. These particular services, which were performed just prior to the actual filing of the motion on February 18, 2014, apparently all related to the above-referenced motion. However, on March 10, 2014, the Applicant, on behalf of the Debtor, withdrew this motion. [Doc. No. 781]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the motion was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to this motion have provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| TOTAL AMOUNT DISALLOWED UNDER THE "GENERAL / MISCELLANEOUS" CATEGORY | | | 30.8 | | $8,098.50 | |

| | FEE APPLICATION CATEGORY: "SCHEDULES & STATEMENTS, 341 MEETING, MORS" | | | | | |
|---|---|---|---|---|---|---|
| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
| 6/18/2013 | MMH | Various email with client pertaining to sealing documents related to subsidiaries | 0.4 | $285.00 | $114.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .," Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/24/2013 | ELR | Review and revise motion to seal Form 26 documents | 0.2 | $400.00 | $80.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independen. basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney s fees under § 330, '*taking into account all relevant factors.*' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 6/24/2013 | MMH | Draft proposed order authorizing filing form under seal | 0.4 | $285.00 | $114.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013, [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed ... and *courts may consider all other relevant equitable factors ... when appropriate ...*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

425

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/24/2013 | MMH | Draft Motion to File Form 26 under Seal | 2.0 | $285.00 | $570.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/15/2013 | MMH | Review and approve Certificate of Service of hearing Notice of Hearing on Motion to Seal | 0.1 | $285.00 | $28.50 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*" 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate ." Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/15/2013 | KJM | Serve Notice of Hearing on Motion to Seal Form 26. Prepare and file Certificate of Service on same | 0.5 | $130.00 | $65.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Review case-law and related authority pertaining to sealing documents | 0.6 | $285.00 | $171.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|----------|
| 7/22/2013 | DCB | Prepare outlines for hearing and exhibit references and review exhibits (3.5), meet with client (1.), and attend hearings on Motion to Seal (3.0). | 7.5 | $275.00 | $2,062.50 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 136]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/23/2013 | ELR | Telephone conference with D. Brown regarding results of hearings on motion to seal and for violation of the stay. | 0.2 | $400.00 | $80.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors.*' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 7/23/2013 | DCB | Confer with Mr. Herrera regarding motion to seal | 0.2 | $275.00 | $55.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall short of satisfying the burden required by § 107(b). Stated differently, the attempt to file financial information of the Debtor's subsidiaries under seal was not a "good gamble" given the poor preparation and paucity of convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 9/6/2013 | MMH | Phone conference and email with client regarding extension for filing 2012 tax return | 0.4 | $285.00 | $114.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291.] The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/6/2013 | MMH | Phone conference and email with Ms. March regarding extension to file proof of filing 2012 tax return | 0.3 | $285.00 | $85.50 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 34; Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/9/2013 | MMH | Various email and phone conference with client regarding deadline to provide proof of filing tax return | 0.4 | $285.00 | $114.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 29]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order i.e., its order of June 27, 2013, [Doc. No. 61]—a deadline to which the Applicant had expressly assented that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17-4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|---------------------------------------------------------------------------------------|
| 9/9/2013 | MMH | Various email and phone conference with Ms. March regarding extending deadline to provide proof of filing tax return | 0.4 | $285.00 | $114.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013. [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17-4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . .*," *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|----------|
| 9/9/2013 | MMH | Draft motion to extend deadline to provide proof of filing tax return | 1.4 | $285.00 | $399.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------|
| 9/9/2013 | MMH | Draft proposed order extending deadline to provide proof of filing tax return | 0.4 | $285.00 | $114.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account 'all relevant factors,'* 11 U.S.C. § 330(a)(3)[]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|----------------------------------------------------------------------------------------|
| 9/9/2013 | LKW | File Certificate of Service regarding Debtor's Emergency Motion to Extend the Deadline to Provide Proof of Filing 2012 Federal Income Tax Return | 0.4 | $100.00 | $40.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013. [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:53 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/9/2013 | LKW | Draft Certificate of Service regarding Debtor's Emergency Motion to Extend the Deadline to Provide Proof of Filing 2012 Federal Income Tax Return | 0.5 | $100.00 | $50.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fail woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*," *id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 9/11/2013 | MMH | Various email with court case manager regarding hearing on motion to extend deadline to provide proof of filing tax return | 0.2 | $285.00 | $57.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61]—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17-4:19:33 P.M.] Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/12/2013 | LKW | Draft Notice of Hearing regarding Debtor's Emergency Motion to Extend Deadline to Provide Proof of Filing 2012 Federal Income Tax Return | 0.5 | $100.00 | $50.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 9/12/2013 | LKW | Finalize and file Notice of Hearing regarding Debtor's Emergency Motion to Extend Deadline to Provide Proof of Filing 2012 Federal Income Tax Return | 0.5 | $100.00 | $50.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e. its order of June 27, 2013. [Doc. No. 61]—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17-4:19:55 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to 'limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*.' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed … *and courts may consider all other relevant equitable factors* … when appropriate. …" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/18/2013 | MMH | Various email with client regarding attending hearing on motion to extend deadline to provide proof of filing tax return | 0.3 | $285.00 | $85.50 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17-4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate. . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 9/18/2013 | MMI | Various email with Mr. Middleton regarding attendance at hearing on motion to extend deadline to provide proof of filing 2012 tax return | 0.2 | $285.00 | $57.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013. [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*' 11 U.S.C. § 330(a)[3][.]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/18/2013 | MMH | Phone conference and email with Mr. Lopez regarding attending hearing on motion to extend deadline to provide proof of filing 2012 tax return | 0.3 | $285.00 | $85.50 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|--------------------------------------------------------------------------------------------|
| 9/19/2013 | ELR | Review response to motion for extension of deadline to file returns. Draft email to M. Haselden regarding same | 0.2 | $400.00 | $80.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to, show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion . to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *court may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 9/19/2013 | MMH | Attend hearing on motion to extend deadline to provide proof of filing 2012 tax return | 4.0 | $285.00 | $1,140.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61]—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/19/2013 | MMH | Meet with client prior to hearing to prepare for hearing on motion to extend deadline to file tax return | 1.0 | $285.00 | $285.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61]—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|----------------------------------------------------------------------------------------|
| 9/19/2013 | MMII | Meet with Mr. Estrada, Mr. Lopez and Mr. Middleton to discuss tax returns and continue hearing preparation | 1.0 | $285.00 | $285.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to pro-vide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17-4:19:33 P.M.]. Stand differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)[3][.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate. . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 9/19/2013 | MMH | Review objection filed by Rhodes to motion to extend deadline to provide proof of filing 2012 tax return | 0.5 | $285.00 | $142.50 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17-4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*," *id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/19/2013 | MMH | Prepare for hearing on motion to extend deadline to provide proof of filing 2012 tax return | 1.0 | $285.00 | $285.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)[3][J]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . .* when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORs" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/19/2013 | KJM | Prepare for September 19th hearing on motion to extend time to file tax return and auditors | 0.5 | $130.00 | $65.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:35 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Schedules & Statements, 341 Meeting, MORS" category. The Court now exercises this discretion to deny these fees. |
| | | TOTAL AMOUNT DISALLOWED UNDER THE "SCHEDULES & STATEMENTS, 341 MEETING, MORS" CATEGORY | 26.5 | | $7,038.00 | |

## FEE APPLICATION CATEGORY: "PROFESSIONALS"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------|
| 6/17/2013 | ELR | Draft email to Mr. Lopez regarding employment as accountant to perform audits and related accounting services. | 0.2 | $400.00 | $80.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013 [Doc No 296] The Court denied the request because neither Mr. Lopez nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . . " Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/24/2013 | ELR | Review and respond to email from proposed special SEC counsel regarding status retention | 0.2 | $400.00 | $80.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/26/2013 | LKW | Prepare attorney binder for hearings on June 27, 2013 | 1.0 | $100.00 | $100.00 | It is not clear to this Court why the Applicant put this particular entry (which concerns a hearing on post-petition financing) into the category of "Professionals." It should be in the category of "DIP Financing." Nevertheless, the result is still the same. The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/26/2013 | LKW | Prepare six Exhibit and Witness List notebooks for DIP hearing on June 27, 2013 | 0.7 | $100.00 | $70.00 | It is not clear to this Court why the Applicant put this particular entry (which concerns a hearing on post-petition financing) into the category of "Professionals." It should be in the category of "DIP Financing." Nevertheless, the result is still the same. The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/26/2013 | LKW | Finalize and file Exhibit and Witness List for DIP hearing on June 27, 2013 | 0.4 | $100.00 | $40.00 | It is not clear to this Court why the Applicant put this particular entry (which concerns a hearing on post-petition financing) into the category of "Professional's." It should be in the category of "DIP Financing." Nevertheless, the result is still the same. The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/26/2013 | LKW | Draft Exhibit and Witness List for DIP hearing on June 27, 2013 | 0.5 | $100.00 | $50.00 | It is not clear to this Court why the Applicant put this particular entry (which concerns a hearing on post-petition financing) into the category of "Professionals." It should be in the category of "DIP Financing." Nevertheless, the result is still the same. The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to crafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*," *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/2/2013 | MMII | Begin drafting affidavit in support of application to employ Carlos Lopez | 0.6 | $285.00 | $171.00 | The Court denied the request to approve employment of public accountant (i.e. Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/2/2013 | MMH | Begin drafting proposed order authorizing employment of Carlos Lopez | 0.4 | $285.00 | $114.00 | The Court denied the request to approve employment of public accountant (i.e. Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors.*" 11 U.S.C. § 330(a)(3),]," *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/22/2013 | MMH | Begin drafting application to employ Carlos Lopez as auditor | 0.7 | $285.00 | $199.50 | The Court denied the request to approve employment of public accountant (i.e. Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

462

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/5/2013 | MMH | Complete draft affidavit in support of application to employ accountant for auditing | 0.5 | $285.00 | $142.50 | The Court denied the request to approve employment of public accountant (i.e, Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330. *'taking into account all relevant factors'.* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . .*and courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 7/5/2013 | MMH | Draft email to Mr. Lopez regarding application to employ accountant for auditing | 0.3 | $285.00 | $85.50 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court, without bringing a witness to testify, in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)[3][,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

464

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/5/2013 | MMH | Complete drafting application to employ accountant for auditing | 1.3 | $285.00 | $370.50 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval of this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 7/5/2013 | MMH | Draft proposed order authorizing employment of accountant for auditing | 0.4 | $285.00 | $114.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd. LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*.' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/9/2013 | MMH | Various follow-up email with Mr. Lopez regarding finalizing application to employ LBB | 0.4 | $285.00 | $114.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 30, 2013 [Doc No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[.]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/12/2013 | VMH | Draft email to Mr. Lopez regarding information for application to employ accountant for audit | 0.1 | $285.00 | $28.50 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm LBB & Associates Ltd., LLP) in its order of September 20, 2013. [Dkt. No. 296] The Court denied the request because neither Mr. Lopez nor any other witness came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/16/2013 | MMH | Various email with Mr. Lopez regarding application to employ LBB | 0.5 | $285.00 | $142.50 | The Court denied the request to approve employment of public accountant (i.e. Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/17/2013 | MM11 | Review proposed revisions to application to employ from Carlos Lopez | 0.4 | $285.00 | $114.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013 [Doc No. 296]. The Court denied the request because neither Mr. Lopez nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*.' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/17/2013 | MMH | Various email with Mr. Lopez regarding application to employ LBB Associates | 0.6 | $285.00 | $171.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd. LLP) in its order of September 20, 2013, [Doc. No. 296]. The Court denied the request because neither Mr. Lopez nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 29, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate. . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Revise application to employ Carlos Lopez of LBB as auditor | 0.5 | $285.00 | $142.50 | The Court denied the request to approve employment of public accountant (i.e. Carlos Lopez and his firm, LBB & Associates Ltd. LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time these services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|------|------|------|------|------|------|
| 7/18/2013 | MMH | Finalize and electronically file affidavit in support of application to employ Carlos Lopez | 0.4 | $285.00 | $114.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in i.s order of September 20, 2013. [Doc. No. 296] The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330. '*taking into account all relevant factors*'. 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time these services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Revise, finalize and electronically file proposed order authorizing employment of Carlos Lopez | 0.3 | $285.00 | $85.50 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd. LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and courts may consider all other relevant equitable factors . . . when appropriate . . ," Id. at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | KJM | Finalize, file and serve the Application to Employ LBB auditor | 0.6 | $130.00 | $78.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ," *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/9/2013 | ELR | Telephone conference with proposed securities/corporate counsel to discuss engagement | 0.3 | $400.00 | $120.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 8/12/2013 | ELR | Review engagement letter for SEC counsel. Forward same to client with comments | 0.2 | $400.00 | $80.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/13/2013 | ELR | Review email from Mr. Head and revised engagement letter for special counsel. Draft email reply with comments | 0.4 | $400.00 | $160.00 | There are two time entries relating to an individual named Mr. Head. However, the Applicant never filed any application for the Debtor to retain Mr. Head. Nor has the Applicant provided any testimony, or introduced any exhibits, explaining how any communications with Mr. Head benefited the estate or were necessary for the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Head were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 8/13/2013 | MMH | Review information pertaining to proposed engagement of corporate and securities counsel | 0.4 | $285.00 | $114.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/13/2013 | DCB | Correspondence from Mr. Head regarding potential employment as SEC counsel | 0.2 | $275.00 | $55.00 | There are two time entries relating to an individual named Mr. Head. However, the Applicant never filed any application for the Debtor to retain Mr. Head. Nor has the Applicant provided any testimony, or introduced any exhibits, explaining how any communications with Mr. Head benefited the estate or were necessary for the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Head were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 8/28/2013 | MMH | Draft affidavit in support of application to employ David Loev | 0.8 | $285.00 | $228.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 8/28/2013 | MMH | Review information pertaining to David Loev and Loev law firm | 0.5 | $285.00 | $142.50 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 8/28/2013 | MMH | Draft application to employ David Loev as special SEC counsel | 1.3 | $285.00 | $370.50 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev, Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

479

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 8/28/2013 | MMH | Various phone conferences and email with Mr. Loev pertaining to employment | 0.4 | $285.00 | $114.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 8/28/2013 | MMH | Draft proposed order authorizing employment of David Loev | 0.4 | $285.00 | $114.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/28/2013 | LKW | Finalize and file Application to Approve Employment of Special Corporate and Securities Counsel | 0.7 | $100.00 | $70.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30. 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 8/29/2013 | DCB | Correspondence with client regarding Mr. Loev and prior representation in deals with parties adverse debtor to providing copies of letters with SEC | 0.5 | $275.00 | $137.50 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/30/2013 | MMII | Various email with Ms. Brown pertaining to application to employ Mr. Loev | 0.4 | $285.00 | $114.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 8/30/2013 | LKW | Finalize and file Notice of Withdrawal of Application to Approve Employment of Special Corporate and Securities Counsel | 0.5 | $100.00 | $50.00 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/30/2013 | DCB | Telephone conference with Mr. Smith regarding Mr. Loev. Additional searches on Mr. Loev for potential issues. Confer with Mr. Rothberg | 0.5 | $275.00 | $137.50 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 9/1/2013 | DCB | Telephone conversation with Mr. Loev explaining concerns to Application to Employ. Correspondence to client memorializing call. | 0.3 | $275.00 | $82.50 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/1/2013 | DCB | Prepare notice withdrawing application to employ Mr. Loev | 0.3 | $275.00 | $82.50 | There are numerous time entries relating to engaging a securities/corporate counsel whose name is David Loev. Indeed, on August 30, 2013, the Applicant, on behalf of the Debtor, filed an application to approve employment of Mr. Loev as special corporate and securities counsel. [Doc. No. 254]. However, on August 30, 2013, the Debtor withdrew this application. [Doc. No. 260]. The Applicant has provided no testimony, or introduced any exhibits, explaining why the application was withdrawn or how these services benefited the estate or were necessary to the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Loev were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |
| 9/17/2013 | ELR | Conference with R. Remy regarding potential retention as corporate/securities counsel | 1.0 | $400.00 | $400.00 | There are certain time entries relating to an individual named Mr. Remy. However, the Applicant never filed any application for the Debtor to retain Mr. Remy. Nor has the Applicant provided any testimony, or introduced any exhibits, explaining how any communications with Mr. Remy benefited the estate or were necessary for the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Remy were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/17/2013 | DCB | Meeting with Mr. Rothberg and Mr. Remy regarding potential employment as SEC attorney and receive his feedback on transaction | 2.0 | $275.00 | $550.00 | There are certain time entries relating to an individual named Mr. Remy. However, the Applicant never filed any application for the Debtor to retain Mr. Remy. Nor has the Applicant provided any testimony, or introduced any exhibits, explaining how any communications with Mr. Remy benefited the estate or were necessary for the administration of the case. Therefore, the Court finds that: (1) none of the services related to Mr. Remy were necessary or provided any benefit to the estate; and (2) no fees related to these services should be awarded. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 9/18/2013 | MMH | Review and approve for filing Notice of rescheduled hearing on Application to Employ LBB & Associates | 0.1 | $285.00 | $28.50 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 9/18/2013 | MMH | Phone conference with Ms. Attaway regarding rescheduled hearing on Application to Employ LBB & Associates | 0.2 | $285.00 | $57.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm LBB & Associates Ltd. LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*.' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*' *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/18/2013 | MMH | Review information from Mr. Herrera regarding fee application | 0.2 | $285.00 | $57.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

488

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/18/2013 | LKW | Finalize and file Notice of Hearing on Application to Employ LBB | 0.4 | $100.00 | $40.00 | The Court denied the request to approve employment of public accountant (i.e. Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this applicat[i]on under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330. *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at *277* (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . .* when appropriate . . ." *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/18/2013 | LKW | Draft Notice of Hearing on Application to Employ LBB | 0.5 | $100.00 | $50.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 9/19/2013 | LKW | Finalize and file exhibit and witness list for hearing on September 19, 2013 | 0.4 | $100.00 | $40.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:53 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors.*' 11 U.S.C. § 330[a](3)[.]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/19/2013 | LKW | Draft exhibit and witness list for hearing on September 19, 2013 | 0.5 | $100.00 | $50.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291]. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17-4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . . .*" *id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is *not likely to have benefited the Estate* |
|------|--------------|----------|-------|-------------|--------|---------------------------------------------------------------------------------------------|
| 9/19/2013 | LKW | Prepared binders for hearing on September 19, 2013 | 0.7 | $100.00 | $70.00 | In its order of September 19, 2013, the Court denied the request to extend the deadline to provide proof of filing 2012 federal income tax return. [Doc. No. 291] The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the Motion to Extend Deadline to Provide Proof of Filing Taxes because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the Debtor's burden to show that cause existed to extend the deadline that this Court had already set in a prior order (i.e., its order of June 27, 2013, [Doc. No. 61])—a deadline to which the Applicant had expressly stated that there was no objection. [Representation of Ed Rothberg, June 27, 2013, 4:19:17–4:19:33 P.M.]. Stated differently, the attempt to obtain this extension was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony to establish cause. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed … and *courts may consider all other relevant equitable factors* … when appropriate … ," *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 9/20/2013 | MMH | Revise affidavit in support of application to employ and transmit the same to Mr. Lopez and Mr. Lovett for review | 0.7 | $285.00 | $199.50 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm. LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*.' 11 U.S.C. § 330(a)(3),]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/20/2013 | MMH | Attend hearing on application to employ LBB & Associates | 1.0 | $285.00 | $285.00 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval of this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors.*' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/20/2013 | MMH | Various phone conference with Mr. Lovett regarding Lopez affidavit and hearing on approval of employment | 0.5 | $285.00 | $142.50 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*," *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 9/20/2013 | MMH | Various phone conference and email with Mr. Lopez regarding hearing on application to employ LBB & Associates | 0.5 | $285.00 | $142.50 | The Court denied the request to approve employment of public accountant (i.e., Carlos Lopez and his firm, LBB & Associates Ltd, LLP) in its order of September 20, 2013. [Doc. No. 296]. The Court denied the request because neither Mr. Lopez, nor any other witness, came to the hearing to give testimony in support of the application. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this application because the Applicant should have known that testimony at the hearing held on September 20, 2013 would be required to obtain approval of this application under § 327. The Applicant should have known that coming to court without bringing a witness to testify in support of the application would preclude the granting of the application due to the inability of the Debtor to meet its burden of proof thereon. Stated differently, the attempt to obtain approval to employ this accounting firm was not a "good gamble" given the poor preparation and complete absence of any testimony in support of the application. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*" 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "Professionals" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/27/2013 | MMH | Phone conference with Mr. Herrera regarding fee application | 0.4 | $285.00 | $114.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had an one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277-78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/27/2013 | KJM | Email to Mr. Herrera regarding preparation of his first interim fee application | 0.3 | $130.00 | $39.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 9/27/2013 | KJM | Email to Mr. Herrera regarding the Notice of Distribution of Retainer form | 0.2 | $130.00 | $26.00 | The Court denies any fees requested by the Applicant for assisting Herrera with the collection of his fees, including drawing down on his retainer. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate or with assisting that professional in collecting his fee. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to advise and assist him in collecting any portion of his fees, including assisting him with filing any Notice of Distribution of Retainer under Local Bankruptcy Rule 2016(b). [*See* Doc. No. 666]. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of assisting or giving advice to Herrera regarding the Notice of Distribution of Retainer—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/5/2013 | KJM | Review draft of first interim fee application of investment banker | 0.5 | $130.00 | $65.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/19/2013 | KJM | Telephone discussion with Mr. Herrera regarding fee application | 0.3 | $130.00 | $39.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/27/2013 | MMH | Review and comment on fee application of Gilbert Herrera | 0.5 | $285.00 | $142.50 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 12/27/2013 | MMH | Various email with Mr. Herrera regarding fee application | 0.4 | $285.00 | $114.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least nor where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/27/2013 | KJM | Review Mr. Herrera's revised fee application (0.5). Email to Mr. Herrera regarding same (0.3) | 0.8 | $130.00 | $104.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera: namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 12/31/2013 | MMH | Begin revising fee application of Gilbert Herrera to incorporate discussed revisions | 0.8 | $285.00 | $228.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 12/31/2013 | MMH | Phone conference with Mr. Herrera regarding revisions to fee application | 0.5 | $285.00 | $142.50 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera: namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 1/7/2014 | VMH | Review and revise interim fee application of Herrera Investments | 0.8 | $285.00 | $228.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277-78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 1/8/2014 | MMH | Revise fee application of Herrera Investment Partners | 0.7 | $285.00 | $199.50 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 1/8/2014 | MMH | Phone conference and email with Mr. Herrera regarding revisions to fee application | 0.3 | $285.00 | $85.50 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 1/3/2014 | MMH | Review and approve Amended Notice of Fee application of Herrera Investments | 0.4 | $285.00 | $114.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 1/13/2014 | MMI | Review and approve for filing further revised fee application of Herrera Investment Partners | 0.4 | $285.00 | $114.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 1/13/2014 | MMH | Phone call and email with Mr. Herrera regarding finalizing fee application | 0.4 | $285.00 | $114.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 521 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|---------------------------------------------------------------------------|
| 1/13/2014 | KJM | Work on First Interim Fee Application of Debtor's Investment Banker, finalizing same, with the notice of proposed order (2 0). Finalize, file and serve same (0.5) Email to case manager regarding the filing and status of delivery of same to Judge Bohm's chambers (0.2) | 2.7 | $130.00 | $351.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera—and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 2/19/2014 | KJM | Email to Ms. Attaway regarding the status of the fee application of Mr. Herrera | 0.2 | $130.00 | $26.00 | The Court denies any fees requested by the Applicant for assisting Herrera with his fee application. The Court does so for three separate and independent reasons. First, Herrera, who served as the investment banker for the Debtor, provided no services that benefited the estate as this Court has already held in an opinion published on January 12, 2015. *In re Digerati Technologies, Inc.*, 524 B.R. 666 (Bankr. S.D. Tex. 2015); [Doc. No. 1056]. There is no question that the Applicant recommended Herrera to the Debtor for retention—indeed, the Applicant has a long standing relationship with Herrera- and therefore the Applicant should not receive any fees for services associated with retaining a professional who provided no benefit to the estate. Second, the Applicant failed to make complete disclosure about its relationship with Herrera; namely, the Applicant failed to disclose that it had at one time represented Herrera. Third, even if Herrera had provided beneficial services to the estate, and even if the Applicant had made complete disclosure about its past representation of Herrera, Herrera should have retained his own counsel to represent him in any fee application he filed in this case. The Applicant's client is the Debtor, not Herrera. The estate should not have to bear the financial burden of preparing or prosecuting Herrera's fee application—at least not where Herrera's performance on behalf of the estate was woeful. *See Woerner*, 783 F.3d at 277–78 (holding that the bankruptcy court may consider all other relevant factors when determining whether to award fees). |
| **TOTAL AMOUNT DISALLOWED UNDER THE "PROFESSIONALS" CATEGORY** | | | **38.4** | | **$9,137.00** | |

## FEE APPLICATION CATEGORY: "ASSET DISPOSITION"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/10/2013 | ELR | Prepare non-disclosure agreement | 0.5 | $400.00 | $200.00 | There are time entries reflecting that the Applicant prepared a non-disclosure agreement. However, the Applicant, on behalf of the Debtor, never filed a non-disclosure agreement. Moreover, the Applicant provided no testimony, nor introduced any exhibits, to meet its burden of establishing that this agreement was necessary to the administration of the case or beneficial to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 7/9/2013 | ELR | Review and respond to email from C. Power regarding non-disclosure agreements | 0.1 | $400.00 | $40.00 | There are time entries reflecting that the Applicant prepared a non-disclosure agreement. However, the Applicant, on behalf of the Debtor, never filed a non-disclosure agreement. Moreover, the Applicant provided no testimony, nor introduced any exhibits, to meet its burden of establishing that this agreement was necessary to the administration of the case or beneficial to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 8/12/2013 | DCB | Correspondence to Mr. Weeks with signed Non-disclosure Agreement | 0.1 | $275.00 | $27.50 | There are time entries reflecting that the Applicant prepared a non-disclosure agreement. However, the Applicant, on behalf of the Debtor, never filed a non-disclosure agreement. Moreover, the Applicant provided no testimony, nor introduced any exhibits, to meet its burden of establishing that this agreement was necessary to the administration of the case or beneficial to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/12/2013 | DCB | Confer with Mr. Smith on Non-Disclosure Agreement for MCI to release documents | 0.1 | $275.00 | $27.50 | There are time entries reflecting that the Applicant prepared a non-disclosure agreement. However, the Applicant, on behalf of the Debtor, never filed a non-disclosure agreement. Moreover, the Applicant provided no testimony, nor introduced any exhibits, to meet its burden of establishing that this agreement was necessary to the administration of the case or beneficial to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 11/23/2013 | ELR | Review email from client and attached edits to non-disclosure agreement. Revise and transmit same to client | 0.5 | $400.00 | $200.00 | There are time entries reflecting that the Applicant prepared a non-disclosure agreement. However, the Applicant, on behalf of the Debtor, never filed a non-disclosure agreement. Moreover, the Applicant provided no testimony, nor introduced any exhibits, to meet its burden of establishing that this agreement was necessary to the administration of the case or beneficial to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 11/27/2013 | ELR | Telephone conference with G. Herrera regarding requested edits to the non-disclosures agreement | 0.3 | $400.00 | $120.00 | There are time entries reflecting that the Applicant prepared a non-disclosure agreement. However, the Applicant, on behalf of the Debtor, never filed a non-disclosure agreement. Moreover, the Applicant provided no testimony, nor introduced any exhibits, to meet its burden of establishing that this agreement was necessary to the administration of the case or beneficial to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 12/19/2013 | ELR | Review and comment on several non-disclosure agreements | 0.3 | $400.00 | $120.00 | There are time entries reflecting that the Applicant prepared a non-disclosure agreement. However, the Applicant, on behalf of the Debtor, never filed a non-disclosure agreement. Moreover, the Applicant provided no testimony, nor introduced any exhibits, to meet its burden of establishing that this agreement was necessary to the administration of the case or beneficial to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/4/2014 | ELR | Review email from G. Herrera and attached non-disclosure agreement from Omni | 0.2 | $400.00 | $80.00 | There are time entries reflecting that the Applicant prepared a non-disclosure agreement. However, the Applicant, on behalf of the Debtor, never filed a non-disclosure agreement. Moreover, the Applicant provided no testimony, nor introduced any exhibits, to meet its burden of establishing that this agreement was necessary to the administration of the case or beneficial to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/4/2014 | DCB | Correspondence with Mr. Herrera following up on Nondisclosure Agreement for Omni | 0.1 | $275.00 | $27.50 | There are time entries reflecting that the Applicant prepared a non-disclosure agreement. However, the Applicant, on behalf of the Debtor, never filed a non-disclosure agreement. Moreover, the Applicant provided no testimony, nor introduced any exhibits, to meet its burden of establishing that this agreement was necessary to the administration of the case or beneficial to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| TOTAL AMOUNT DISALLOWED UNDER THE "ASSET DISPOSITION" CATEGORY | | | 2.2 | | $842.50 | |

518

| FEE APPLICATION CATEGORY: "CLAIMS" | | | | | | |
|---|---|---|---|---|---|---|
| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
| 1/20/2014 | SKR | Review and revise the Objection to the Scheduled Amount of Venturebanc. Affidavit of Arthur Smith and the proposed order regarding the same | 0.5 | $110.00 | $55.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc. Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc. Inc. Indeed. no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 1/20/2014 | MSK | Drafted the Affidavit in Support of the Objection to the Scheduled Claim of Venturebanc | 0.4 | $185.00 | $74.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc. Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 1/20/2014 | MSK | Drafted the Objection to the Scheduled Amount of The Venturebanc, Inc. | 3.2 | $185.00 | $592.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 1/20/2014 | MSK | Reviewed and analyzed the scheduled claim of The Venturebanc, Inc. and the related consulting agreement and spreadsheet with the Debtor for purposes of objecting to the claim | 1.2 | $185.00 | $222.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 1/21/2014 | MSK | Reviewed and revised the Objection to the Venturebanc Proof of Claim | 0.6 | $185.00 | $111.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc. Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 1/21/2014 | MSK | Drafted the Objection to the Roqueni Proof of Claim | 2.6 | $185.00 | $481.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by Alfonso T. Roqueni. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of Alfonso T. Roqueni. Nor did the Applicant adduce any testimony or introduce any exhibits explaining how these services were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 1/21/2014 | MSK | Reviewed the Proof of Claim and the client documentation regarding the Roqueni Proof of Claim for purposes of objecting | 1.2 | $185.00 | $222.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by Alfonso T. Roqueni. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of Alfonso T. Roqueni. Nor did the Applicant adduce any testimony or introduce any exhibits explaining how these services were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 2/20/2014 | MMH | Draft email to counsel for Harris County regarding Proof of Claim issues | 0.3 | $285.00 | $85.50 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by Harris County. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of Harris County. Indeed, no proof of claim has ever been filed by Harris County. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 2/20/2014 | MMH | Review Proof of Claim filed by Harris County | 0.4 | $285.00 | $114.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by Harris County. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of Harris County. Indeed, no proof of claim has ever been filed by Harris County. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 2/20/2014 | MSK | Prepared the Notice of Withdrawal of A. Smith's Proof of Claim | 0.3 | $185.00 | $55.50 | Smith never withdrew his proof of claim. Therefore, any services rendered drafting a notice of withdrawal of this proof of claim provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of this proof of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 2/20/2014 | MSK | Prepared the Notice of Withdrawal of A. Estrada's Proof of Claim | 0.3 | $185.00 | $55.50 | Estrada never withdrew his proof of claim. Therefore, any services rendered drafting a notice of withdrawal of this proof of claim provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of this proof of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 2/28/2014 | MSK | Emailed A. Smith and A. Estrada regarding their Proofs of Claims and withdrawing the claims | 0.2 | $185.00 | $37.00 | Smith and Estrada never withdrew their respective proofs of claim. Therefore, any services rendered regarding withdrawal of their claims provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of these proofs of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 2/28/2014 | DCB | Confer with Mr. Rotiberg and Ms. Krasoff regarding A. Smith and A. Estrada withdrawing their Proof of Claims | 0.1 | $275.00 | $27.50 | Smith and Estrada never withdrew their respective proofs of claim. Therefore, any services rendered regarding withdrawal of their claims provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of these proofs of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 3/3/2014 | MSK | Reviewed the Joint Plan and the Bankruptcy Settlement Agreement in order to respond to email from A. Smith regarding the deadline to withdraw the Proofs of Claim of A. Smith and A. Estrada | 0.2 | $185.00 | $37.00 | Smith and Estrada never withdrew their respective proofs of claim. Therefore, any services rendered regarding withdrawal of their claims provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of these proofs of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/3/2014 | MSK | Received, reviewed, and responded to email from A. Smith regarding the timing of withdrawing the claims | 0.2 | $185.00 | $37.00 | Smith and Estrada never withdrew their respective proofs of claim. Therefore, any services rendered regarding withdrawal of their claims provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of these proofs of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/3/2014 | MSK | Emailed A. Smith and A. Estrada to follow up regarding withdrawal of their Proofs of Claim | 0.2 | $185.00 | $37.00 | Smith and Estrada never withdrew their respective proofs of claim. Therefore, any services rendered regarding withdrawal of their claims provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of these proofs of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 3/11/2014 | MSK | Emailed A. Smith and A. Estrada to follow up regarding the withdrawal of Proofs of Claim | 0.2 | $185.00 | $37.00 | Smith and Estrada never withdrew their respective proofs of claim. Therefore, any services rendered regarding withdrawal of their claims provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of these proofs of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/24/2014 | MSK | Followed up via email with A. Smith and A. Estrada regarding withdrawing their Proofs of Claim | 0.2 | $185.00 | $37.00 | Smith and Estrada never withdrew their respective proofs of claim. Therefore, any services rendered regarding withdrawal of their claims provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of these proofs of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/24/2014 | DCB | Correspondence with Ms. Krasoff regarding any status update on the withdrawal of claims by Mr. Smith and Mr. Estrada | 0.1 | $275.00 | $27.50 | Smith and Estrada never withdrew their respective proofs of claim. Therefore, any services rendered regarding withdrawal of their claims provided no benefit to the estate. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services relating to the non-occurring withdrawal of these proofs of claim was necessary to the administration of the case or provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------|
| 3/25/2014 | SKR | Review and revise the affidavit of Art Smith as to the Objection to Claim of Roqueni | 0.3 | $110.00 | $33.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by Alfonso T. Roqueni. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of Alfonso T. Roqueni. Nor did the Applicant adduce any testimony or introduce any exhibits explaining how these services were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/25/2014 | SKR | Review, revise and compile exhibits to the Objection to Claim of Roqueni and proposed order regarding same | 0.5 | $110.00 | $55.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by Alfonso T. Roqueni. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of Alfonso T. Roqueni. Nor did the Applicant adduce any testimony or introduce any exhibits explaining how these services were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|------------|--------|------------------------------------------------------------------------------------------|
| 3/25/2014 | SKR | Review and revise affidavit of Art Smith as to the Objection to the Scheduled Amount of Venturbanc, Inc. | 0.3 | $110.00 | $33.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/25/2014 | SKR | Review, revise and compile exhibits to the Objection to Scheduled Amount of Venturbanc, Inc. and proposed order to the same | 0.5 | $110.00 | $55.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 3/25/2014 | MSK | Drafted the Proposed Order to the Objection to Proof of Claim No. 3 filed by Roqueni | 0.3 | $185.00 | $55.50 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by Alfonso T. Roqueni. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of Alfonso T. Roqueni. Nor did the Applicant adduce any testimony or introduce any exhibits explaining how these services were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/25/2014 | MSK | Drafted the Affidavit in Support of the Objection to Proof of Claim No. 3 filed by Roqueni | 0.3 | $185.00 | $55.50 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by Alfonso T. Roqueni. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of Alfonso T. Roqueni. Nor did the Applicant adduce any testimony or introduce any exhibits explaining how these services were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 3/25/2014 | MSK | Drafted the Objection to Proof of Claim No. 3 filed by Roqueni | 0.8 | $185.00 | $148.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by Alfonso T. Roqueni. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of Alfonso T. Roqueni. Nor did the Applicant adduce any testimony or introduce any exhibits explaining how these services were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/25/2014 | MSK | Reviewed and revised the Proposed Order to the Objection to the scheduled claim of Venturebane | 0.2 | $285.00 | $57.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebane, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebane, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebane, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 3/25/2014 | MSK | Reviewed and revised Affidavit to the Objection to the scheduled claim of Venturebanc | 0.2 | $185.00 | $37.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/25/2014 | MSK | Reviewed and revised the Objection to the scheduled claim of Venturebanc | 1.2 | $185.00 | $222.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 3/31/2014 | ELR | Review and approve objection to Venturebanc claim | 0.1 | $400.00 | $40.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existen. proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 3/31/2014 | MSK | Emailed the Objection to the Venturebanc claim to A. Smith | 0.2 | $185.00 | $37.00 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc. Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |

532

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------|
| 3/31/2014 | DCB | Review and analyze draft objection to Venturebanc claim and confer with Mr. Rothberg and Ms. Krasoff with concerns related to objection after review of docket and schedules | 0.5 | $275.00 | $137.50 | There are time entries reflecting that the Applicant drafted an objection to the proof of claim filed by the Venturebanc, Inc. However, the Applicant, on behalf of the Debtor, never filed any objection to the proof of claim of the Venturebanc, Inc. Indeed, no proof of claim has ever been filed by an entity known as the Venturebanc, Inc. The Applicant did not adduce any testimony or introduce any exhibits explaining how its services regarding this non-existent proof of claim were necessary to the administration of the case or how they provided a benefit to the estate. Thus, the Court finds that these services were neither necessary nor beneficial to the estate. Accordingly, the Court finds that no compensation should be awarded for these services. |
| 4/1/2014 | DCB | Confer with Ms. Krasoff on Notice of Withdrawal of Claims for Mr. Smith and Mr. Estrada | 0.1 | $275.00 | $27.50 | Mr. Smith and Mr. Estrada never withdrew their proofs of claim. Therefore, any services rendered drafting a notice of withdrawal of these proofs of claim provided no benefit to the estate. |
| **TOTAL AMOUNT DISALLOWED UNDER THE "CLAIMS" CATEGORY** | | | 17.9 | | $3,337.50 | |

## FEE APPLICATION CATEGORY: "DIP FINANCING"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 5/30/2013 | ELR | Lengthy conference calls with client and potential DIP Lenders to discuss terms of DIP financing | 1.5 | $400.00 | $600.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 631. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 5/30/2013 | MMH | Begin drafting Motion to Approve DIP Financing | 0.7 | $285.00 | $199.50 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the merger effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 5/31/2013 | FLR | Review and comment on background section for DIP motion | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ". *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 5/31/2013 | ELR | Review and comment DIP Loan agreement | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*." *Id.* at 278 (emphasis added): Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 5/31/2013 | MMH | Various email and phone conference with client pertaining to DIP motion | 0.5 | $285.00 | $142.50 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 65] This order describes the merger effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 361. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provide an identifiable, practical benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

538

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 5/31/2013 | MMH | Continue drafting Motion to Approve DIP Financing | 1.0 | $285.00 | $285.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 5/31/2013 | MMH | Draft secured DIP Promissory Note for Hurley Fairview loan | 1.0 | $285.00 | $285.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*.'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed ... and *courts may consider all other relevant equitable factors* ... when appropriate ... ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 5/31/2013 | MMH | Draft secured DIP Promissory Note for Riverstone Capital loan | 1.0 | $285.00 | $285.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors.' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required* to award fees under section 330 that could reasonably be expected to provided an identifiable material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . ." Id at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/3/2013 | LLR | Telephone conference with client to discuss status of DIP loan negotiations | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking *into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/3/2013 | ELR | Conference call with clients and litigation counsel to discuss removal issues, asset sale issues, and DIP Loan issues | 1.3 | $400.00 | $520.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/4/2013 | ELR | Telephone conference with potential DIP Lender counsel to discuss DIP Loan terms | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/4/2013 | ELR | Conference call with client and D. Head to discuss DIP loan terms | 0.3 | $400.00 | $120.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/4/2013 | ELR | Conference call with counsel for DIP Lenders to discuss DIP terms | 0.4 | $400.00 | $160.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/5/2013 | ELR | Review series of emails regarding DIP Loan terms | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-position financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/5/2013 | MMH | Review various loan document for information relative to drafting DIP motion | 1.0 | $285.00 | $285.00 | The Court denied the request for post-petition financing in its order of June 28, 2013 [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/5/2013 | MVMH | Continue drafting DIP motion | 0.4 | $285.00 | $114.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/6/2013 | ELR | Review and respond to email from Mr. Christian regarding approval of DIP budget | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provide[] an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|---------------------------------------------------------------------------------------------|
| 6/6/2013 | ELR | Review and respond to email from Mr. Flack regarding DIP budget | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing, because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/6/2013 | MMH | Revise DIP motion | 1.3 | $285.00 | $370.50 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the merger effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors.*' 11 U.S.C. § 330(a)(3)],]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . .". *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/6/2013 | MMH | Various email and phone conference with client pertaining to DIP loan issues | 1.0 | $285.00 | $285.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/6/2013 | MMII | Revise proposed order approving DIP motion | 0.5 | $285.00 | $142.50 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/10/2013 | FI.R | Telephone conference with C. power regarding status of DIP Loan | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 6/10/2013 | ELR | Telephone conference with client to discuss status of DIP loan negotiations | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/10/2013 | ELR | Telephone conference with Craig Power, attorney for DIP Lenders to discuss status of case. Draft email forwarding DIP budget | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63] This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*," *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/12/2013 | ELR | Review and revise DIP Pleadings. Draft email transmitting same to Mr. Powers | 0.5 | $400.00 | $200.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/17/2013 | ELR | Revise DIP Loan documents in accordance with email comments from Mr. Power. Draft email transmitting redlined version to Mr. Power | 0.5 | $400.00 | $200.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted. *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/17/2013 | LLR | Review and respond to email from Mr. Power regarding changes to DIP Loan motion and notes | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/17/2013 | ELR | Telephone conference with attorney for DIP lender regarding changes to DIP loan documents | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factor*" . . . when appropriate . . ." *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/17/2013 | ELR | Review and respond to email from counsel for Hurleys and Dishon regarding status of DIP Loan | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1). Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/18/2013 | MMH | Various email and phone conference with client pertaining to DIP loans | 0.5 | $285.00 | $142.50 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/18/2013 | ELR | Conference call with secured creditors to discuss DIP Loan | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors,'" 11 U.S.C. § 330(a)(3)],'" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed … and *courts may consider all other relevant equitable factors … when appropriate … .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/18/2013 | ELR | Review DIP Loan documents. Draft email transmitting same to Mr. Power | 0.5 | $400.00 | $200.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------|
| 6/18/2013 | ELR | Review and respond to email from Mr. Power regarding final changes to DIP loan documents | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that *no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate.* The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . .". *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/19/2013 | ELR | Telephone conference with C. Power regarding status of decision on DIP Loan. Draft email to client regarding same | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "'is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[.]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/19/2013 | ELR | Review and respond to several emails from C. Power regarding decision on DIP Loan | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that *no fees should be awarded* for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given *the poor preparation and* paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/20/2013 | DCB | Discuss potential strategy and issues related to DIP Financing with Mr. Rothberg | 0.2 | $275.00 | $55.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fail woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/20/2013 | ELR | Telephone conference with C. Power to discuss conditions for DIP Loan | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors,'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|------|------|------|------|------|------|
| 6/20/2013 | ELR | Review and respond to email from C. Power regarding conditions on DIP Loan | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 6/21/2013 | DCB | Correspondence with Mr. Power regarding DIP negotiations and confer with Mr. Rothberg | 1.0 | $275.00 | $275.00 | The Court denied the request for post-petition financing in its order of June 28, 2012. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fail woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/21/2013 | ELR | Revise DIP Loan documents and pleadings. Draft email forwarding same to Mr. Power | 0.5 | $400.00 | $200.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed ... and *courts may consider all other relevant equitable factors* ... when appropriate ...." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 6/24/2013 | ELR | Revise DIP loan pleadings | 1.0 | $400.00 | $400.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 6/24/2013 | ELR | Further telephone discussions with counsel for DIP Lender regarding form of motion and order | 0.2 | $400.00 | $80.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors.*' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed ... and *courts may consider all other relevant equitable factors* ... when appropriate ...." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/24/2013 | ELR | Draft email to C. Power requesting approval on changes to DIP Loan | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|---------------------------------------------------------------|
| 6/24/2013 | KJM | Email to the case manager requesting a hearing on the Motion to obtain DIP financing | 0.2 | $130.00 | $26.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/24/2013 | KJM | Review and finalize the Motion to Incur DIP Financing and the DIP notes; file and serve same | 1.0 | $130.00 | $130.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/25/2013 | ELR | Draft email to CFO regarding preparation for DIP Loan hearing | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 6/25/2013 | MMH | Review and revise a Notice of hearing on DIP motion | 0.2 | $285.00 | $57.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/25/2013 | LKW | Finalize, file and serve Notice of Hearing regarding Emergency Motion for Authority to Incur Debt | 0.7 | $100.00 | $70.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*.' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/25/2013 | I.KW | Draft Notice of Hearing regarding Emergency Motion for Authority to Incur Debt | 0.5 | $100.00 | $50.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 6/26/2013 | ELR | Brief meeting with client to discuss preparation for DIP Hearing | 0.1 | $400.00 | $40.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors.*' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/27/2013 | DCB | Review objection to DIP Motion.(.1) Assemble rebuttal documents.(.3) Confer with Mr. Rothberg.(.1) | 0.5 | $275.00 | $137.50 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/27/2013 | ELR | Review objection to DIP loan filed by Rhodes (.3). Prepare for and attend interim DIP Loan hearing.(4.7) | 5.0 | $400.00 | $2,000.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 6/28/2013 | DCB | Review Court's Order on DIP motion (.1). Discuss Court's ruling and strategy with Mr. Rothberg (.2) | 0.3 | $275.00 | $82.50 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate. . .*," *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/28/2013 | MMH | Review order denying request for DIP Financing | 0.4 | $285.00 | $114.00 | The Court denied the request for post-petition financing in its order of June 28, 2013. [Doc. No. 63]. This order describes the meager effort that the Debtor made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court gave the Debtor the emergency hearing that it sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this motion because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fail woefully short of satisfying the elements required by § 364. Stated differently, the attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant and convincing testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*, 11 U.S.C. § 330(n)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/29/2013 | ELR | Draft email to client with names of potential DIP Lenders | 0.3 | $400.00 | $120.00 | the Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the *poor preparation and paucity of relevant testimony*. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate* . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 6/29/2013 | ELR | Draft email to counsel for DIP Lenders regarding alternatives | 0.3 | $400.00 | $120.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364: indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 6/29/2013 | ELR | Conference call with clients to discuss denial of DIP loan and how to proceed forward | 0.5 | $400.00 | $200.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*" 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate. . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the *time billed is not likely to have benefited the Estate* |
|---|---|---|---|---|---|---|
| 7/1/2013 | ELR | Telephone conference with client regarding status of DIP Loan negotiations | 0.2 | $400.00 | $80.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013, [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364, indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better 'job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/1/2013 | ELR | Draft email to Mr. Power regarding DIP loan | 0.1 | $400.00 | $40.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No 65) set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under" § 330, "*taking into account all relevant factors,*" 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|------|------|------|------|------|------|
| 7/2/2013 | ELR | Telephone conference with client to discuss confidentiality agreement for DIP lender. Draft email transmitting same | 0.2 | $400.00 | $80.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors.'* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . .." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/2/2015 | ELR | Draft memorandum regarding DIP loan alternatives | 0.5 | $400.00 | $200.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63) set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at the hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/2/2013 | ELR | Telephone conference with C. Power regarding status of DIP Loan and amounts currently needed to move forward | 0.3 | $400.00 | $120.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/2/2013 | EI.R | Draft email to counsel for DIP Lender requesting status on revised DIP Loan | 0.1 | $400.00 | $40.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed. . . and courts *may consider all other relevant equitable factors . . . when appropriate . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/3/2013 | ELR | Assign M. Haselden to revise DIP motion | 0.2 | $400.00 | $80.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and courts may consider *all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added) Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/3/2013 | ELR | Telephone conference with C. Power regarding revised DIP terms. Telephone conference with client regarding same | 0.3 | $400.00 | $120.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* set rg forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate* . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/3/2013 | ELR | Draft email to Mr. Power regarding alternative to DIP Loan | 0.1 | $400.00 | $40.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*.' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/3/2013 | ELR | Review and revise DIP motion and order. Draft email transmitting same to Mr. Power for review and approval | 0.6 | $400.00 | $240.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable material benefit to the estate at the time those services were performed. . . *and courts may consider all other relevant equitable factors* when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/3/2013 | MMH | Review relevant information to draft DIP motion to obtain unsecured financing | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court notes: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/3/2013 | MMH | Conference call with Mr. Rothberg and Art Smith regarding DIP financing | 0.4 | $285.00 | $114.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc No 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 361 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364, indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion it *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/3/2013 | MMH | Draft DIP motion to obtain unsecured financing | 2.0 | $285.00 | $570.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did no, do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors.* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/3/2013 | MMH | Revise DIP promissory notes | 0.7 | $285.00 | $199.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed. *. . . and courts may consider all other relevant equitable factors . . . when appropriate . . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/3/2013 | MMH | Revise proposed order approving DIP financing | 0.4 | $285.00 | $114.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013, [Doc No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court *is* permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed. . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/3/2013 | MMH | Revise and finalize DIP motion and related documents and electronically file the same | 0.7 | $285.00 | $199.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc No. 156] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 60), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*.' 11 U.S.C. § 330(a)[3][,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added) Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/3/2013 | MMH | Various email with client regarding DIP motion. | 0.7 | $285.00 | $199.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking unto account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/3/2013 | MMH | Various email with Mr. Power regarding DIP motion | 0.4 | $285.00 | $114.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364, indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*, 111 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .' Id.* at 278 (emphasis added) Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/11/2013 | ELR | Draft email to client, M. Haselden and D. Brown transmitting draft DIP budget and discussing preparation for hearing on DIP Loan | 0.3 | $400.00 | $120.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364: indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)(J)," *Woerner*, 783 F.3d at 277 (emphasis added): and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . . ." Id. at 278* (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/11/2013 | ELR | Revise DIP budget. Draft email transmitting same to counsel for Rhodes | 0.2 | $400.00 | $80.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No 156] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 530, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted...*but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed...and *courts may consider all other relevant equitable factors*...when appropriate..." *Id.* at 278 (emphasis added). Here, even if it it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/11/2013 | ELR | Draft email to counsel for Rhodes Holding to ask what is necessary to obtain an agreement on the DIP Loan | 0.1 | $400.00 | $40.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc No 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc No 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 361; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . where appropriate . . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly, cited above, provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------|
| 7/16/2013 | MMH | Various phone conferences with client regarding DIP budget and motion | 0.4 | $285.00 | $114.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc No 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 65], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court *is* permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed. . . . and *courts may consider all other relevant equitable factors* . . . when appropriate. . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/16/2013 | MMH | Various email with Mr. Soloman regarding DIP Motion | 0.4 | $285.00 | $114.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364: indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|---------|
| 7/16/2013 | MMH | Review revised DIP budgets | 0.6 | $285.00 | $171.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. That order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing, the Applicant should have done, but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C § 336(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed. . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 7/16/2013 | MMH | Various email with client regarding DIP budget and related issues | 1.0 | $285.00 | $285.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed, . . . and *covers may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/17/2013 | MMH | Begin review and analysis of Objection to DIP Motion and Cross Motion filed by Rhodes | 1.4 | $285.00 | $399.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013, [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services reduced to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------|
| 7/17/2013 | MMH | Review various revisions to proposed DIP budget | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)[3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time these services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .* " *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 7/17/2013 | MMH | Various phone conference with client regarding DIP budget. | 1.0 | $285.00 | $285.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*' 11 U.S.C § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services combined within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/17/2013 | MMH | Various email with client regarding DIP Motion | 1.0 | $285.00 | $285.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney s fees under § 330, *'taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------|
| 7/17/2013 | MMH | Various email with counsel for Rhodes regarding DIP Motion | 0.8 | $285.00 | $228.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion 'to award or curtail attorney's fees under § 330, *taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judge Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|------|------|------|------|------|------|
| 7/18/2013 | ELR | Review and comment on exhibit list and reply to Rhodes objection | 0.3 | $400.00 | $120.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No 156] This order describes the word effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that the Court, in its order of June 28, 2013 (Doc. No 65), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites, (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time these services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | ELR | Conference call with counsel for DIP Lender and Herrera to discuss preparation for DIP hearing | 0.7 | $400.00 | $280.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable material benefit to the estate at the time those services were performed. . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | ELR | Review and comment on objection to DIP Motion | 0.5 | $400.00 | $200.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was no, a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 f.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id* at 278 (emphasis added) Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Begin drafting sur reply to Rhodes objection/Cross Motion. | 2.0 | $285.00 | $570.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)(1)," *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/18/2013 | MMII | Continue review of objection to DIP Motion/Cross Motion filed by Rhodes | 1.0 | $285.00 | $285.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. (Doc. No 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fail woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, 11 U S.C § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed, . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Review and approve Notice of Hearing on DIP Motion | 0.1 | $285.00 | $28.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fail woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done –but did not do—a better job of adducing testimony in satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate. . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Various email with court case manager regarding hearing on DIP Motion and Motion to Seal | 0.4 | $285.00 | $114.00 | The Court denied the Debtor's request for post-petition financing in its order of July 20, 2013 [Doc No. 156]. This order describes the woeful effort that the Applicant on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364, indeed because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought. the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*. 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed, . . . *and courts may consider all other relevant equitable factors . . . when appropriate. . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Various phone conferences and email with Mr. Estrada regarding DIP financing issues | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 23, 2013 (Doc. No. 63) set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . when appropriate . . . ." *Id.* at 278 (emphasis added) Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------|
| 7/18/2013 | MMH | Conference call with Mr. Power's office and Mr. Rothberg regarding DIP financing issues | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing and had no testimony to support a request for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate. . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Office conference with Ms. Brown regarding exhibits for hearing on DIP Motion and Motion to Seal | 0.3 | $285.00 | $85.50 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors.*' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Various phone conference with client regarding exhibits for hearing on DIP Motion and Motion to Seal | 0.5 | $285.00 | $142.50 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . .* when appropriate . . ." *Id.* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|------------|--------|------------------------------------------------------------------------------------------|
| 7/18/2013 | MMH | Various email with client regarding exhibits for hearing on DIP motion and Motion to Seal | 0.5 | $285.00 | $142.50 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . .* when appropriate . . ." *Id.* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | MMH | Begin drafting exhibit and witness list regarding DIP hearing and Motion to Seal | 1.0 | $285.00 | $285.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted. *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .'' Id.* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 7/18/2013 | KJM | Prepare, file and serve Notice of Hearing on Motion to Incur Debt and Motion to Seal Form 26 | 0.5 | $130.00 | $65.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . ." Id* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/18/2013 | DCB | E-mail notice for case administrator regarding hearing on motion for 364 authority | .1 | $275.00 | $27.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was woefully inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,'" 11 U.S.C § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time these services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing, because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | ELR | Review job detail for Estrada | 0.1 | $400.00 | $40.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No 156] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364, indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites, (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[;] *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and courts may consider *all other relevant equitable factors* . . . when appropriate . . . ." *Id* at 278 (emphasis added). Here even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | ELR | Review draft exhibit and witness list. | 0.2 | $400.00 | $80.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364: indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done - but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | MMI1 | Draft revisions to exhibit and witness list for hearing on DIP motion and Motion to seal | 0.6 | $285.00 | $171.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors,'* 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . ." Id.* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/19/2013 | MMH | Review various documents for inclusion as exhibit for hearing on DIP motion and Motion to Seal | 1.5 | $285.00 | $427.50 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | MMH | Various email with Mr. Estrada pertaining to preparation for hearings on various motions | 1.0 | $285.00 | $285.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 196] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364: indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed ... *and courts may consider all other relevant equitable factors* ... when appropriate ..." *Id*. at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 7/19/2013 | MM11 | Review and comment on job description from Mr. Estrada | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013, [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364, indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought. The Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*" 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed. . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | MMH | Review and comment on job description from Mr. Smith | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing, the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)(E)," *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's, concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | MMH | Continue drafting sur reply/objection to Rhodes motion | 2.0 | $285.00 | $570.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall "woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to be provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------|
| 7/19/2013 | MMH | Review exhibits from counsel for Rhodes | 0.6 | $285.00 | $171.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. *The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364*, indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,*'' Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed ... *and courts may consider all other relevant equitable factors ... when appropriate ...* Id. at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | MMTI | Various email with Mr. Smith pertaining to issues related to DIP hearing | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*.'" 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "*a court is permitted, but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time these services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | MMH | Various phone conferences with Mr. Estrada pertaining to issues related to DIP hearing | 1.0 | $285.00 | $285.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors.'" 111 U.S.C. § 330(a)(3).]." *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, but not required, to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed . . . and courts may consider all other relevant equitable factors . . . when appropriate. . . ." *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------|
| 7/19/2013 | MMH | Various phone conferences with Mr. Smith pertaining to issues related to DIP hearing | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors.* 11 U.S.C. § 330(a)(3)[.]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | KJM | Prepare, revise, and file Exhibit List and Witness List for July 22nd hearing on motion to incur debt and Form 26 to be filed under seal (1.5). Assemble exhibits and serve opposing counsel with same (3.5) | 5.0 | $130.00 | $650.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed ... and *courts may consider all other relevant equitable factors ... when appropriate ..." Id.* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/19/2013 | KJM | Prepare for July 22 hearing on motion to incur DIP financing and to seal Form 26 | 1.5 | $130.00 | $195.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,*' Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . .* when appropriate . . ." *Id.* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/20/2013 | ELR | Draft email to Mr. Smith requesting results of efforts to obtain DIP loan from third parties | 0.1 | $400.00 | $40.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing, the Applicant had sought, the Applicant should have done—but did not do —a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . " *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judge Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/20/2015 | MMH | Review various case-law and statutory authority regarding issues relevant to Rhodes Objection | 2.5 | $285.00 | $712.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors . . . when appropriate. . . ." Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/21/2013 | ELR | Prepare for DIP hearing | 3.0 | $400.00 | $1,200.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites (1) Judge Prado's opinion in *Woerner*, setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, '*taking into account all relevant factors*,' 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed. . . and *courts may consider all other relevant equitable factors . . when appropriate . . .*" *Id*. at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|------|------|------|------|------|------|
| 7/21/2013 | MMH | Continue drafting sur reply to DIP Motion/response to Cross Motion filed by Rhodes | 4.0 | $285.00 | $1,140.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail *attorney's fees under § 330, 'taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably, *ex ante*, be expected to provide[] an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate* . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/21/2013 | DCB | Review Rhodes Exhibits and provide notes for Mr. Rothberg to use in preparing witnesses for DIP Hearing | 2.3 | $275.00 | $632.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done— but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3),1" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed. . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/22/2013 | ELR | Prepare for and attend hearing on second DIP motion | 9.0 | $400.00 | $3,600.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services relate, to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*." 11 U.S.C. § 330(a)(3)(A).*F. Woerner, 783 F.3d* at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-------|
| 7/22/2013 | MMH | Draft email to counsel for Rhodes regarding amended exhibit | 0.2 | $285.00 | $57.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 149]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing, because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done – but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provide an 'identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . .." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judge Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/22/2013 | MMH | Review and comment on witness outlines in connection with hearing | 0.4 | $285.00 | $114.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors,' 11 U.S.C. § 330(a)(3)[.]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added.) Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/22/2013 | MMH | Review and approve amended exhibit and witness list | 0.3 | $285.00 | $85.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 361 of the Code The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)],*" Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time these services were performed. . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/22/2013 | MMH | Revise proposed DIP order | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing, that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . . ," *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|---|
| 7/22/2013 | MMI | Revise DIP Promissory Note with Riverfront | 0.5 | $285.00 | $142.50 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No 186] This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *'taking into account all relevant factors*,'" 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/22/2013 | KJM | Email to Ms. Siennis transmitting Debtor's Reply to Objection to Debtor's Motion to Incur Debt | 0.2 | $130.00 | $26.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364: indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3),]," *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time these services were performed . . . and courts may consider *all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/22/2013 | KJM | Email to Ms. Stemnis transmitting courtesy copy of the redlined Amended Exhibit List and Witness List | 0.2 | $130.00 | $26.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 65), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed. . . and *courts may consider all other relevant equitable factors* . . . when appropriate. . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|----------------------------------------------------------------------------|
| 7/22/2013 | KJM | Amended and filed Exhibit List and Witness List on Motion to Incur Debt (1.0) Final preparation for July 22 hearing on motion to incur debt, motion to seal Form 26, and the contempt motions (2.0) | 3.0 | $130.00 | $390.00 | The Court denied the request for leave to file official form 26 under seal in its order of July 23, 2013. [Doc. No. 130]. This order describes the inadequate effort that the Debtor made in attempting to meet its burden to obtain the relief sought. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting the motion for leave to file official form 26 under seal because the testimony adduced at this hearing was wholly inadequate. As a basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]," *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . ." *Id.* at 278 (emphasis added). |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/23/2013 | ELR | Telephone conference with C. Power to find out if his clients will attend continued DIP hearing. | 0.1 | $400.00 | $40.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing, that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* set.ng forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330[a][3][,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable material benefit to the estate at the time those services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . . ." *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly, cited above, provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 7/24/2013 | ELR | Telephone conference with A Smith to discuss status of DIP Loan hearing | 0.2 | $400.00 | $80.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 (Doc. No. 63), set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites: (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*," 11 U.S.C. § 330(a)(3)[,]" *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors . . . when appropriate . . .*" *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

665

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/26/2013 | DCB | Confer with Mr. Estrada regarding hearing on DIP cancelled | 0.2 | $275.00 | $55.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013 [Doc. No. 156]. This order describes the woeful effort that the Applicant on behalf of the Debtor once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc No. 65], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing that the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court enters (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors*, 11 U.S.C. § 330(a)(3)," *Woerner*, 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required*, to award fees under section 330 that could reasonably be expected to provided an identifiable, material benefit to the estate at the time these services were performed . . . and *courts may consider all other relevant equitable factors* . . . when appropriate . . .", *Id.* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 7/30/2013 | MMH | Review order denying DIP motion | 0.2 | $285.00 | $57.00 | The Court denied the Debtor's request for post-petition financing in its order of July 30, 2013. [Doc. No. 156]. This order describes the woeful effort that the Applicant, on behalf of the Debtor, once again made in attempting to meet its burden to obtain post-petition financing. The effort was particularly poor given that this Court, in its order of June 28, 2013 [Doc. No. 63], set forth in detail why it had denied the Debtor's initial request for post-petition financing, including the need to adduce sufficient testimony to meet the requisite burden imposed by § 364 of the Code. The Court finds that no fees should be awarded for services related to drafting, preparing for, and prosecuting this second motion for post-petition financing because the testimony adduced at this hearing was wholly inadequate. The Applicant should have known that the testimony would fall woefully short of satisfying the elements required by § 364; indeed, because this Court had previously denied a request by the Debtor for post-petition financing than the Applicant had sought, the Applicant should have done—but did not do—a better job of adducing testimony to satisfy the requisite burden. Stated differently, this attempt to obtain financing was not a "good gamble" given the poor preparation and paucity of relevant testimony. As a separate and independent basis for disallowing the fees associated with this entry, this Court cites. (1) Judge Prado's opinion in *Woerner* setting forth that the Fifth Circuit's ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, *taking into account all relevant factors,*' 11 U.S.C. § 330(a)(3)[,]" *Woerner,* 783 F.3d at 277 (emphasis added); and (2) Judge Jolly's concurring opinion in *Woerner* setting forth that "a court is permitted, *but not required,* to award fees under section 330 than could reasonably be expected to provided an identifiable, material benefit to the estate at the time those services were performed . . . *and courts may consider all other relevant equitable factors* . . . when appropriate . " *Id* at 278 (emphasis added). Here, even if it was a "good gamble" going into the hearing, it became a "bad gamble" during the hearing because of the Applicant's poor courtroom performance. The language used by Judges Prado and Jolly cited above provide this Court with the discretion to deny all fees associated with these services contained within the "DIP Financing" category. The Court now exercises this discretion to deny these fees. |
| TOTAL AMOUNT DISALLOWED UNDER THE "DIP FINANCING" CATEGORY | | | 97.5 | | $29,585.50 | |

## FEE APPLICATION CATEGORY: "DIGERATI v. SONFIELD LITIGATION"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|-----------------------------------------------------------------------------------------|
| 8/9/2013 | DCB | Confer with Mr. Rothberg regarding Order on Remand and filing a Motion to Amend | 0.1 | $275.00 | $27.50 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03118, Adv. Doc. No. 43]. This was a 15-page order explaining the Court's decision in detail. On August 16, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 48]. The Court reviewed this motion to clarify; and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 49]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------|
| 8/14/2013 | MSK | Researched and analyzed Rule 59 case law for purposes of amending the Remand Order | 1.8 | $185.00 | $333.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03118. Adv. Doc. No. 43]. This was a 15-page order explaining the Court's decision in detail. On August 16, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 48]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 49]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/14/2013 | MSK | Drafted the Motion to Amend the Remand Order | 2.0 | $185.00 | $370.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03118, Adv. Doc. No. 43]. This was a 15-page order explaining the Court's decision in detail. On August 16, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 48]. The Court reviewed this motion to clarify; and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 49]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 8/15/2013 | MSK | Reviewed and revised the Motion to Amend the Remand Order | 0.8 | $185.00 | $148.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03118, Adv. Doc. No. 43]. This was a 15-page order explaining the Court's decision in detail. On August 16, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 48]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 49]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/16/2013 | SKR | Review and revise the Motion to Clarify the Court's Order Granting Defendant's Motion to Remand Adversary | 0.3 | $110.00 | $33.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 15-03118. Adv. Doc. No. 43]. This was a 15-page order explaining the Court's decision in detail. On August 16, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 48]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 49]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/16/2013 | MSK | Reviewed and revised the Motion to Amend the Remand Order to comply – with the Court's rules ordered August 16, 2013 | 0.4 | $185.00 | $74.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03118, Adv. Doc. No. 43]. This was a 15-page order explaining the Court's decision in detail. On August 16, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 48]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 49]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/16/2013 | MSK | Researched and analyzed case law regarding jurisdictional authority of a bankruptcy judge to review orders | 2.1 | $185.00 | $388.50 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03118, Adv. Doc. No. 43]. This was a 15-page order explaining the Court's decision in detail. On August 16, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 48]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that it's order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 49]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |
| | | **TOTAL AMOUNT DISALLOWED UNDER THE "DIGERATI V. SONFIELD LITIGATION" CATEGORY** | 7.5 | | $1,374.00 | |
| | | | | | | |

## FEE APPLICATION CATEGORY: "SONFIELD V. ALBECK LITIGATION"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 8/19/2013 | MSK | Drafted the Motion to Amend the Remand Order | 0.6 | $185.00 | $111.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03119, Adv. Doc. No. 29]. This was a 15-page order explaining the Court's decision in detail. On August 20, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 34]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 35]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 8/19/2013 | MSK | Reviewed and analyzed the Order Granting Remand | 0.6 | $185.00 | $111.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03119, Adv. Doc. No. 29]. This was a 15-page order explaining the Court's decision in detail. On August 20, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 34]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 35]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|-------------|----------|-------|-------------|--------|------------------------------------------------------------------------------------------|
| 8/19/2013 | MSK | Reviewed and revised the Motion to Amend the Remand Order | 0.2 | $185.00 | $37.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03119, Adv. Doc. No. 29]. This was a 15-page order explaining the Court's decision in detail. On August 20, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 34]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 35]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

677

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/19/2013 | DCB | Modify to Motion to Amend to seek strike of language in Paragraph 8 or alternative relief to modify paragraph and modify order regarding same | 0.5 | $275.00 | $137.50 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03119, Adv. Doc. No. 29]. This was a 15-page order explaining the Court's decision in detail. On August 20, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 34]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 35]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|------|--------------|----------|-------|-------------|--------|-------------------------------------------------------------------------------------------|
| 8/19/2013 | DCB | Confer with Ms. Krasoff regarding Motion to Modify Remand Order, and review draft Motion to Modify and send to client for comments | 0.3 | $275.00 | $82.50 | On August 9, 2013, this Court entered an order granting Robert L. Soufield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03119, Adv. Doc. No. 29]. This was a 15-page order explaining the Court's decision in detail. On August 20, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 34]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 35]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/20/2013 | LKW | Finalize and file Debtor's Motion to Clarify the Court's Order Granting Plaintiff Robert L. Sonfield, Jr. P.C.'s Motion to Remand Adversary Proceeding | 0.5 | $100.00 | $50.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03119, Adv. Doc. No. 29]. This was a 15-page order explaining the Court's decision in detail. On August 20, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 34]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 35]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | The Court's Findings as to why the time billed is not likely to have benefited the Estate |
|---|---|---|---|---|---|---|
| 8/20/2013 | LKW | Email A. Smith and A. Estrada regarding Debtor's Motion to Clarify the Court's Order Granting Plaintiff Robert L. Sonfield, Jr. P.C.'s Motion to Remand Adversary Proceeding | 0.2 | $100.00 | $20.00 | On August 9, 2013, this Court entered an order granting Robert L. Sonfield's motion to remand adversary proceeding. [Adv. Pro. No. 13-03119, Adv. Doc. No. 29]. This was a 15-page order explaining the Court's decision in detail. On August 20, 2013, the Applicant, on behalf of the Debtor, filed a motion to clarify the Court's order. [Adv. Doc. No. 34]. The Court reviewed this motion to clarify, and on August 26, 2013, the Court entered an order denying this motion on the grounds that its order of August 9, 2013 is "unambiguous and needs no clarification." [Adv. Doc. No. 35]. Thus, the Court finds that any services related to the motion to clarify were neither necessary to the administration of the case nor did they provide a benefit to the estate. Accordingly, the Court finds that the fees related to these services are disallowed. |
| **TOTAL AMOUNT DISALLOWED UNDER THE "SONFIELD V. ALBECK LITIGATION" CATEGORY** | | | 2.9 | | $549.00 | |

EXHIBIT E (Time Entries Relating to the Motion for Procedures)

| Date | Professional | Activity | Hours | Hourly Rate | Amount |
|------|--------------|----------|-------|-------------|--------|
| 07/08/13 | MMH | Draft proposed order establishing interim fee procedures | 0.40 | $285.00 | $114.00 |
| 07/08/13 | MMH | Draft motion to establish interim fee procedures | 1.00 | $285.00 | $285.00 |
| 07/08/13 | LKW | Finalize and file Motion for Order Establishing Procedure for Interim Compensation of Professionals | 0.60 | $100.00 | $60.00 |
| 07/29/13 | MMH | Review objection to interim fee procedures motion filed by Rhodes | 0.40 | $285.00 | $114.00 |
| 08/05/13 | MMH | Review and approve Certificate of Service of hearing notice | 0.10 | $285.00 | $28.50 |
| 08/05/13 | KJM | Prepare Certificate of Service on Notice of Hearing on interim compensation motion | 0.30 | $130.00 | $39.00 |
| 09/09/13 | ELR | Telephone conference with J. Patterson to discuss resolution of interim compensation motion | 0.10 | $400.00 | $40.00 |
| 09/12/13 | ELR | Draft email transmitting interim fee procedures order to Mr. Patterson | 0.10 | $400.00 | $40.00 |
| 09/12/13 | ELR | Draft interim fee procedures order | 0.30 | $400.00 | $120.00 |
| 09/12/13 | ELR | Attend hearing on interim fee procedures motion | 1.50 | $400.00 | $600.00 |
| 09/13/13 | LKW | Finalize and file Proposed Order Granting in Part and Denying in Part Motion for Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of Professionals | 0.50 | $100.00 | $50.00 |
| 09/16/13 | ELR | Research standard for award of interim fees | 0.40 | $400.00 | $160.00 |
| TOTAL | | | 5.70 | | $1,650.50 |

**TOTAL AMOUNT DISALLOWED: $1,650.50 x 50% = $825.25**

EXHIBIT F (Time Entries Relating to
the First Interim Fee Application)

| Date | Professional | Activity | Hours | Hourly Rate | Amount |
|------|-------------|----------|-------|-------------|--------|
| 09/17/13 | KJM | Begin working on First Interim Fee Application of Debtor's Counsel | 3.00 | $130.00 | $390.00 |
| 09/18/13 | ELR | Review and revise first interim fee application | 1.00 | $400.00 | $400.00 |
| 09/18/13 | KJM | Continue working on First Interim Fee Application | 3.00 | $130.00 | $390.00 |
| 09/18/13 | KJM | Continue working on First Interim Fee Application | 6.00 | $130.00 | $780.00 |
| 09/19/13 | KJM | Continue working on First Interim Fee Application of Debtor's Counsel[1] | 3.80 | $130.00 | $494.00 |
| 09/20/13 | KJM | Continue working on First Interim Fee Application of Debtor's Counsel | 4.00 | $130.00 | $520.00 |
| 09/20/13 | KJM | Draft proposed Order of First Interim Fee Application of Debtor's Counsel | 0.50 | $130.00 | $65.00 |
| 09/20/13 | KJM | Draft Notice of First Interim Fee Application | 0.50 | $130.00 | $65.00 |
| 09/23/13 | KJM | Finalize, file and serve the First Interim Fee Application of Debtor's Counsel | 1.00 | $130.00 | $130.00 |
| 09/23/13 | KJM | Revised the First Interim Fee Application of Debtor's Counsel | 2.50 | $130.00 | $325.00 |
| 09/24/13 | KJM | Assemble notebook of fee application and transmit same to Ms. Stennis, case manager for Judge Bohm | 0.50 | $130.00 | $65.00 |
| 09/27/13 | KJM | Prepare, file upon attorney approval, and serve Notice of Hearing on First Interim Fee Application of Debtor's Counsel | 0.50 | $130.00 | $65.00 |
| 09/27/13 | KJM | Telephone discussion with Ms. Attaway regarding the hearing on the First Interim Fee Application of Debtor's Counsel | 0.20 | $130.00 | $26.00 |

---

[1] The Court notes that this particular entry was listed under the "Schedules & Statement, 341 Meeting, MORS" category. [Doc. No. 831-3, p. 26]. However, the other entries in this chart were listed under the "Professionals" category.

| 09/29/13 | KJM | Draft Motion to Reschedule Hearing on First Interim Fee Application (1.0). Draft proposed order to same (0.3) | 1.30 | $130.00 | $169.00 |
|----------|-----|-------------|------|---------|---------|
| 09/30/13 | KJM | Email to Ms. Attaway transmitting the courtesy copy of the Expedited Motion | 0.20 | $130.00 | $26.00 |
| 09/30/13 | KJM | Finalized, filed and served the Expedited Motion to Reschedule Hearing on First Interim Fee Application | 0.50 | $130.00 | $65.00 |
| 10/03/13 | KJM | Prepare, file upon attorney approval, and serve Notice of Reset Hearing on Debtor's First Interim Fee Application | 0.50 | $130.00 | $65.00 |
| 10/14/13 | MMH | Begin drafting exhibit and witness list for hearing on interim fee application of Debtor's counsel | 1.00 | $285.00 | $285.00 |
| 10/14/13 | MMH | Review documents for inclusion as exhibits for hearing on interim fee application of Debtor's counsel | 0.50 | $285.00 | $142.50 |
| 10/14/13 | KJM | Work on assembling of exhibits for hearing on fee application | 0.50 | $130.00 | $65.00 |
| 10/15/13 | KJM | Finalize and file Exhibit and Witness List for hearing on first interim fee application of Debtor's counsel | 0.30 | $130.00 | $39.00 |
| 10/16/13 | KJM | Coordinate the preparation of the exhibit notebooks for the hearing on the first interim fee application of Debtor's counsel | 0.50 | $130.00 | $65.00 |
| 10/16/13 | LKW | Prepare attorney notebook for hearing on October 18, 2013 | 0.70 | $100.00 | $70.00 |
| 10/18/13 | ELR | Prepare for and attend first interim fee application hearing | 1.00 | $400.00 | $400.00 |
| 10/18/13 | DCB | Prepare for fee app hearing. (1.5). Attend fee app hearing. (.5) | 2.00 | $275.00 | $550.00 |
| 10/23/13 | MMH | Various email with client regarding entry of order approving fees of Hoover Slovacek | 0.20 | $285.00 | $57.00 |
| **TOTAL** | | | 35.70 | | $5,713.50 |

**TOTAL AMOUNT DISALLOWED: $5,713.50 x 11.3% = $645.63**

EXHIBIT G (Time Entries Relating to the Applicant's Unfiled Third Amended Plan and Second Amended Disclosure Statement)

| Date | Professional | Activity | Hours | Hourly Rate | Amount |
|---|---|---|---|---|---|
| 02/13/2014 | ELR | Draft third amended plan. | 4.0 | $400.00 | $1,600.00 |
| 02/14/2014 | ELR | Telephone conference with client to discuss changes to third amended plan. | 0.3 | $400.00 | $120.00 |
| 02/14/2014 | ELR | Draft second amended disclosure statement. | 2.0 | $400.00 | $800.00 |
| 02/14/2014 | ELR | Further revisions to third amended plan. | 2.5 | $400.00 | $1,000.00 |
| 02/14/2014 | MSK | Reviewed and analyzed the Bylaws and Restated Articles of Incorporation for purposes of the Third Amended Plan and Disclosure Statement. | 3.2 | $185.00 | $592.00 |
| 02/14/2014 | DCB | Detailed correspondence with list of issues for consideration in Third Amended Plan and related Disclosure Statement. | 0.5 | $275.00 | $137.50 |
| 02/15/2014 | MSK | Drafted the summary of issues with the Amended Bylaws and Amended Articles of Incorporation for purposes of the Third Amended Plan and Second Amended Disclosure Statement. | 0.4 | $185.00 | $74.00 |
| 02/16/2014 | ELR | Revise and transmit redline of third amended plan. | 2.0 | $400.00 | $800.00 |
| 02/16/2014 | DCB | Confer with Mr. Rothberg on draft Third Amended Plan and strategy (.3).[1] | 0.3 | $275.00 | $82.50 |
| 02/16/2014 | DCB | Confer with Mr. Rothberg and Mr. Smith regarding additional issues to consider for Amended Plan and Disclosure Statement. | 0.5 | $275.00 | $137.50 |
| TOTAL AMOUNT DISALLOWED | | | 15.7 | | $5,343.50 |

[1] This particular time entry in **Exhibit G** sets forth only the actions related to the Third Amended Plan and the Second Amended Disclosure Statement. The Applicant's original time entry as set forth in its invoice is as follows: "Drafting of supplemental memorandum in opposition to motions set for February 18. (6). Confer with Mr. Rothberg on draft Third Amended Plan and strategy. (.3). Confer with Mr. Smith regarding budgeting for ID in Plan. (.2). Confer with opposing counsel requesting withdrawal of 663. (.2). Follow up with Mr. Patterson regarding failure to provide list required under paragraph 38. (.1). Correspondence with Mr. Power regarding questions related to WEM, Recap and Rainmaker. (.2)."

EXHIBIT H (Time Entries Containing
Time Billed that is Excessive)

| | | FEE APPLICATION CATEGORY: "GENERAL/MISCELLANEOUS" | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
| 06/07/2013 | LKW | Review rule regarding emergency hearing and exhibits for hearing on June 11, 2013 | 1.0 | $100.00 | $100.00 | 0.7[1] | $70.00 | The relevant rule related to emergency hearings and exhibits is Local Rule 9013-2(a)-(n) (Local Rule 9013-2(h) specifically relates to "Emergency Hearings") which comprises approximately 2.5 pages. It is patently excessive to bill 1 hour to look up/review these local rules regarding emergency hearings and/or exhibits. |

[1] All of the attorneys and paralegals employed by the Applicant bill in increments of 1/10th of an hour. Thus, the smallest increment that could be billed is 0.1 hours—which means that the smallest increment of time is 6 minutes. This billing approach complies with the guidelines of the United States Trustee and is entirely acceptable to this Court. What is unacceptable to this Court is excessive billing. For example, in this first entry, LKW, a legal assistant, has billed 1 hour for a task which this Court finds LKW should only have billed at most 0.3 hours (i.e., 18 minutes)—which is why this Court is disapproving $70.00 (0.7 hours) of the requested $100.00 fee for this entry. Throughout this exhibit, whenever the 7th column reflects a reduction of some, but not all, of the hours billed by the Applicant (as set forth in the 4th column), then the Court is necessarily making a finding that the remainder is an acceptable amount of time to bill for the task and that the value of the time associated therewith is approved by the Court.

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/17/2013 | LKW | Finalize and file Supplemental Certificate of Service *(Doc. No. 40;[2] 1 page;[3] 2 pages filed[4]) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading, This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. This 1-page document contains two paragraphs that list pleadings that have been previously filed. It is excessive to bill 30 minutes to finalize and file this 2-page supplemental certificate. It is acceptable to bill 6 minutes to finalize the pleading and another 6 minutes to file the 2-page document.[5] |

[2] For easy reference, the asterisk symbol (*) is this Court's notation of the specific document/pleading to which the Applicant's "Activity" description relates.

[3] The reference to the number of pages (and the subsequent references to the page numbers) set forth herein denotes the number of pages that contain substantive language; it does not include the signature block, certificate of service, or exhibits.

[4] The reference to the "filed" pages (and the subsequent references to the "filed" pages) set forth herein denotes the total number of pages that were actually filed by the Applicant, which may include the signature block, certificate of service, attachments, and exhibits.

[5] The Court notes that the entry of "Finalize and file Supplemental Certificate of Service" is in fact lumping, as there are two separate and distinct tasks at play (i.e., to finalize the certificate of service and then to file the certificate of service). However, U.S. Trustee Guidelines allow lumping where the total time allocated is 0.5 or less. Thus, the Court is not reducing the fee requests associated with this entry due to lumping, but rather due to what this Court believes is an excessive total time allocated (i.e., 0.5 hours). There are other entries in this Exhibit H that are "lumped," but because each of these entries involves total time of 0.5 or less, the Court is not reducing them due to lumping; rather, any reduction is due to this Court's finding that the total time billed is simply excessive for the tasks that were undertaken.

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/01/2013 | LKW | Finalize and file Notice of Sworn Return of Service of Subpoena on Xcentric Ventures, LLC *(Adv. Pro. No. 13:03121, Adv. Doc. No. 75; 1 page; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. It appears very minimal time and effort went into the drafting of this notice, as this document contains only one sentence that refers to an attachment of a return of service of subpoena. It is excessive to bill 30 minutes to finalize this 1-sentence document; finalizing this Notice does not require more than 6 minutes. Moreover, the actual filing of this Notice does not require more than 6 minutes. |
| 07/02/2013 | LKW | Update notice for Rule 2004 Examination for Rhodes Holdings, LLC *(Doc. No. 71; 1 page; 17 pages filed) | 0.3 | $100.00 | $30.00 | 0.2 | $20.00 | This 1-page document contains only one sentence. It is excessive to bill 18 minutes to update this Notice. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/03/2013 | LKW | Finalize and file Notice of Issuance of Subpoena for Rule 2004 Examination to Rhodes Holdings, LLC and Robert C. Rhodes *(Doc. No. 71; 1 page; 17 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Therefore, it is excessive to bill 30 minutes to "finalize and · file" a 1-sentence document. Finalizing and filing this Notice does not require more than 12 minutes. |
| 07/03/2013 | LKW | Update Notice of Issuance of Subpoena for Rule 2004 Examination to Rhodes Holdings, LLC and Robert C. Rhodes *(Doc. No. 71; 1 page; 17 pages filed) | 0.3 | $100.00 | $30.00 | 0.3 | $30.00 | This activity was previously billed on 07/02/2013 in the "General" section where LKW entered the following action: "Update notice for Rule 2004 Examination for Rhodes Holdings, LLC." LKW has already received credit for updating this Notice. Thus, this entry will be disallowed in its entirety as it is a duplicate time entry. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/08/2013 | LKW | Draft and file Notice of Issuance of Subpoena Duces Tecum for Rule 2004 Examination to Xcentric Ventures, LLC *(Doc. No. 78; 1 page; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | Drafting this 1-page, 1-sentence Notice for the first time in this case may require a few more minutes than the drafting of subsequent similar notices and, therefore, billing 12 minutes on this specific Notice is acceptable. As filing this document does not require more than 6 minutes, billing 30 minutes to draft and file this Notice is excessive. |
| 07/09/2013 | LKW | Draft and file Notice of Hearing regarding Emergency Motion to Compel Turnover of Documents from Debtor's Attorney Robert L. Sonfield, Jr. of Robert L. Sonfield, Jr. PC dba Sonfield and Sonfield, Relating to Property of the Estate *(Doc. No. 82; 1 page; 14 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This document contains only one sentence that sets forth, in a straightforward manner, the time, date, and location for the hearing. It is excessive to bill 30 minutes to draft and file this Notice. The Court will allow 6 minutes to draft this Notice and 6 minutes to file the same. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 08/01/2013 | LKW | Draft Notice of Sworn Return of Service of Subpoena on Jennifer Abney *(Doc. No. 167; 1 page; 5 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | It appears very minimal time and effort went into the drafting of this Notice, as this document contains only one sentence which refers to a return of service of subpoena. Further, LKW had already drafted and filed another notice of sworn return (e.g., 07/01/2013 – "Finalize and file Notice of Sworn Return of Service of Subpoena on Xcentric Ventures, LLC") and, therefore, should have been able to use the prior draft as a basic template (thereby eliminating the need to reconstruct the entire document a second time). Thus, it is excessive to bill 30 minutes to draft this 1-sentence document. |
| 08/01/2013 | LKW | File Notice of Sworn Return of Service of Subpoena on Jennifer Abney *(Doc. No. 167; 1 page; 5 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | It is excessive to bill 24 minutes to file this document. It should take no more than 6 minutes to file this Notice. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 08/02/2013 | LKW | Draft Notice of Sworn Return of Service of Subpoena on Robert L. Sonfield, Jr. *(Doc. No. 176; 1 page; 5 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | It appears very minimal time and effort went into the drafting of this Notice, as this document contains only one sentence which refers to a return of service of subpoena. Further, LKW had already drafted another notice of sworn return (e.g., 08/01/2013 – "Draft Notice of Sworn Return of Service of Subpoena on Jennifer Abney") and, therefore, should have been able to use the prior draft as a basic template (thereby eliminating the need to reconstruct the entire document a second time). It is excessive to bill 30 minutes to draft a 1-sentence document. |
| 08/02/2013 | LKW | File Notice of Sworn Return of Service of Subpoena on Robert L. Sonfield, Jr. *(Doc. No. 176; 1 page; 5 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | It is excessive to bill 24 minutes to file this document. It should take no more than 6 minutes to file this Notice. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|-----------------|---------------------------------------------------------------|
| 08/06/2013 | DCB | Attend hearings on Motions set for August 6, 2013 | 10.0 | $275.00 | $2,750.00 | 2.60 | $715.00 | There is no justifiable reason to bill for more time than the time that was actually spent at the hearing. The hearing lasted for approximately 7.4 hours (12:11:02 P.M. – 7:48:22 P.M.) and there is no reason to find that an additional 2.6 hours were required as part of attending such hearing. If DCB had in fact spent 2.6 hours to "prepare" for such hearings, this may have been acceptable as a separate time entry. However, because no such entry was made with regard to any "preparation" for the hearing, the additional 2.6 hours must be excluded as part of "attend[ing]" the hearings. The Court also notes that the Applicant adduced no testimony explaining why these additional 2.6 hours were billed. The Court therefore finds that it is excessive to bill 10 hours for attending these hearings when no testimony and/or explanation was provided by the Applicant. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 08/16/2013 | LKW | Draft Supplemental Certificate regarding Digerati's Motion to Reopen Evidence relating to Motion to Transfer Venue *(Doc. No. 216; 1 page; 6 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This 1-page document contains one lengthy sentence and no attachments or exhibits. It is excessive to bill 30 minutes to draft this supplemental certificate. |
| 08/16/2013 | LKW | File Supplemental Certificate regarding Digerati's Motion to Reopen Evidence relating to Motion to Transfer Venue *(Doc. No. 216; 1 page; 6 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | This certificate contains a separate "ECF Notification" that appears to be automatically generated. It is excessive to bill 24 minutes to file this 6-page document. |
| 09/20/2013 | LKW | Draft Notice of Hearing regarding Motion to Settle *(Doc. No. 299; 1 page; 13 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This is a 1-page, 2-sentence Notice that includes a basic recitation of the date and location of an upcoming hearing. It is excessive to bill 30 minutes to draft this Notice. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 09/23/2013 | LKW | Draft Subpoena for Rule 2004 Examination of W. McIlwain *(Doc. No. 305; 5 pages; 13 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | When comparing this specific subpoena with a prior subpoena filed in the case, it appears that a significant portion of this specific subpoena is based on a template generated from that prior subpoena (e.g., 07/02/2013 - "Draft Subpoena for Rule 2004 Examination for Robert C. Rhodes"). LKW has already received full credit (0.5) for the drafting of the prior subpoena. As it appears that LKW had already drafted a very similar subpoena, LKW should have been able to use the prior draft as a basic template (thereby eliminating the need to reconstruct the entire document a second or third time). It is excessive to bill 30 minutes to draft this subpoena. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|-----------------|-----------------------------------------------------------|
| 09/23/2013 | LKW | Draft Subpoena for Rule 2004 Examination of S. Hepford *(Doc. No. 306; 7 pages; 16 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | When comparing this specific subpoena with a prior subpoena filed in the case, it appears that a significant portion of this specific subpoena is based on a template generated from that prior subpoena (e.g., 07/02/2013 "Draft Subpoena for Rule 2004 Examination for Robert C. Rhodes"). LKW has already received full credit (0.5) for the drafting of the prior subpoena. As it appears that LKW had already drafted a very similar subpoena, LKW should have been able to use the prior draft as a basic template (thereby eliminating the need to reconstruct the entire document a second or third time). It is excessive to bill 30 minutes to draft this subpoena. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 09/23/2013 | LKW | Finalize and file Notice of Hearing regarding Motion to Settle *(Doc. No. 299; 1 page; 13 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. It is excessive to bill 30 minutes to "finalize and file" a 2-sentence document. And, filing this Notice with a 13-page attachment does not require more than 6 minutes. |
| 09/25/2013 | LKW | File Notice of Issuance of Subpoena Duces Tecum for Rule 2004 Examination to William McIlwain *(Doc. No. 305; 1 page; 13 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | Filing a 1-page pleading, plus the attachments of the "ECF Notification" and the "Subpoena for Rule 2004 Examination," which follow the Notice of Issuance, does not require more than 6 minutes to file. It is excessive to bill 24 minutes to file this Notice. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Finding as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|------------------|------------------------------------------------------------|
| 09/25/2013 | LKW | File Notice of Issuance of Subpoena Duces Tecum for Rule 2004 Examination to Scott Hepford *(Doc. No. 306; 1 page; 16 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | Filing a 1-page pleading, plus the attachments of the the "ECF Notification" and the "Subpoena for Rule 2004 Examination," which follow the Notice of Issuance, does not require more than 6 minutes to file. It is excessive to bill 24 minutes to file this Notice. |
| 09/26/2013 | LKW | File and serve Notice of Issuance of Amended Subpoena for Rule 2004 Examination for W. McIlwain *(Doc. No. 310; 1 page; 13 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It is excessive to bill 30 minutes to file and serve this Notice of Issuance. Refiling the same notice with an amended attachment should not take more than 6 minutes. Pursuant to the Certificate of Service attached to the notice, service was made on several parties via ECF notification, not actual mailing of the notice. It does not require more than 6 minutes to forward the Notice to parties given this ECF notification method. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 09/26/2013 | LKW | File and serve Notice of Issuance of Amended Subpoena for Rule 2004 Examination for S. Hepford *(Doc. No. 311; 1 page; 23 pages filed). | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It does not take 30 minutes to file a notice of issuance. Refiling the same notice with an amended attachment should not take more than 6 minutes. Pursuant to the Certificate of Service attached to the notice, service was made on several parties via ECF notification, not actual mailing of the notice. It does not require more than 6 minutes to forward the notice to parties given this ECF notification method. |
| 09/26/2013 | LKW | Draft Amended Subpoena for Rule 2004 Examination for S. Hepford *(Doc. No. 311; 1 page; 23 pages filed). | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | Aside from additional sentences in the actual Notice, the substance in the amended subpoena remains unchanged. It is excessive to bill 30 minutes to "draft" an amended subpoena to include such minor changes. |
| 09/27/2013 | LKW | Draft Summons for P. Johnston for service for Canadian address *(Adv. Pro. No. 13-03121, Adv. Doc. No. 129; 2 pages; 2 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 2-page document appears to be a general template wherein LKW simply inputs information in the appropriate blanks. As most of the information on the document was part of the template, it is excessive to bill 30 minutes to input the necessary information. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/21/2013 | LKW | Draft Notice of Hearing regarding Status Conference on October 22, 2013 *(Doc. No. 393; 1 page; 9 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This 1-page pleading contains only one lengthy sentence that simply sets forth the time and place of an upcoming hearing. Billing 30 minutes to draft this notice is excessive. |
| 10/21/2013 | LKW | Prepare and file Amended Certificate of Service regarding Notice of Hearing for October 22, 2013 *(Doc. No. 394; 1 page; 5 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 1-page pleading contains only one sentence that informs all parties that a notice of hearing had been filed, and the service list attached to this 1-page document appears to have been automatically generated. Therefore, it is excessive to bill 30 minutes to "prepare and file" this amended Certificate of Service. It should not take more than 6 minutes to prepare this document, and it should not take more than another 6 minutes to file this document. |
| 10/22/2013 | MMH | Draft order scheduling hearing on approval of compromise and establishing various deadlines *(Doc. No. 388-1; 1 page; 13 pages filed including main document— "Request for Hearing") | 0.8 | $285.00 | $228.00 | 0.6 | $171.00 | This 1-page order consists of 2 paragraphs that set forth straightforward information regarding previously-filed pleadings and contains standard provisions such an order. It is excessive to bill 48 minutes to draft this 1-page order. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/29/2013 | MMH | Draft proposed order denying motion to determine that order denying transfer of venue is final *(Doc. No. 435-1; 1 page; 27 pages filed including main document—"Response to Amended Emergency Motion") | 0.4 | $285.00 | $114.00 | 0.2 | $57.00 | This 1-page proposed order consists of only two paragraphs which contain what appear to be standard provisions and a recitation of previously filed pleadings. It is excessive to bill 24 minutes to draft this short proposed order. |
| 10/29/2013 | LKW | File Stipulation to Document Production *(Doc. No. 433; 2 pages; 3 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This is a 3-page stipulation with no attachments and/or exhibits. It is excessive to bill 30 minutes to file this 3-page stipulation. |
| 10/30/2013 | LKW | Draft Subpoena for Rule 2004 Examination for J. Abney *(Doc. No. 447; 2 pages; 15 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | The subpoena drafted for J. Abney is based on a general template derived from a prior subpoena (e.g., 07/02/2013-"Draft Subpoena for Rule 2004 Examination for Robert C. Rhodes"), LKW received full credit for the drafting of the initial subpoena. As LKW had already drafted a similar subpoena, LKW should have been able to use the prior draft as a basic template (thereby eliminating the need to reconstruct the entire document a second or third time). It is excessive to bill 30 minutes to draft this subpoena. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/31/2013 | LKW | Revise draft Notice of Issuance of Subpoena for Rule 2004 Examination for R. Sonfield and J. Abney to include M. Tessier *(Doc. No. 447; 1 page; 15 pages filed) | 0.2 | $100.00 | $20.00 | 0.1 | $10.00 | The Notice of Issuance contains only one sentence that refers to attached subpoenas. It is excessive to bill 12 minutes to "revise" a 1-page, 1-sentence Notice. |
| 10/31/2013 | LKW | Revise draft Subpoena for Rule 2004 Examination for M. Tessier *(Doc. No. 447; 2 pages; 15 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The subpoena drafted for M. Tessier is based on a general template derived from a prior subpoena (e.g., 07/02/2013- "Draft Subpoena for Rule 2004 Examination for Robert C. Rhodes"). LKW received full credit for the drafting of the initial subpoena. As it appears LKW had already drafted a very similar subpoena, LKW should have been able to use the prior draft as a basic template (thereby eliminating the need to reconstruct the entire document a second or third time). It does not take 30 minutes to "revise" or change a witness name on a general template. Therefore, it is excessive to bill 30 minutes to draft this subpoena. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/31/2013 | LKW | Revise draft Subpoena for Rule 2004 Examination for J. Abney *(Doc. No. 447; 2 pages; 15 pages filed) | 0.2 | $100.00 | $20.00 | 0.1 | $10.00 | LKW had already entered billing for similar activity: 10/30/2013 - "Draft Subpoena for Rule 2004 Examination for J. Abney." This subpoena consists of only 2 pages. It is excessive to bill 12 minutes to "revise" this template-form document. |
| 11/07/2013 | KJM | File Affidavit of Service on the hearing on the motion to compromise and the order extending exclusivity as served by Epiq *(Doc. No. 466; 2 pages; 41 pages filed) | 0.3 | $130.00 | $39.00 | 0.1 | $13.00 | The affidavit itself consists of only two pages. It is acceptable to bill, at most, 12 minutes to file the entire affidavit with exhibits. |
| 11/10/2013 | MSK | Drafted the designation of the experts for the Amended Motion to Compromise of Controversy *(Doc. No. 477; 4 pages; 10 pages filed) | 2 | $185.00 | $370.00 | 1.5 | $277.50 | This is a 4-page double-spaced pleading. The majority of the substance set forth in the pleading appears to be generic provisions that do not require independent creation. It is excessive to bill 2 hours for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 11/11/2013 | SKR | Review and revise debtor's Designation of Expert Witnesses *(Doc. No. 477; 4 pages; 10 pages filed) | 0.2 | $110.00 | $22.00 | 0.2 | $22.00 | This appears to be duplication of work activity (see time entry immediately above). Just because multiple individuals (MSK & SKR) "review and revise" the same document, does not mean that duplicate activity should be billed. Further, it is not necessary to expend an additional 12 minutes to "review and revise" this pleading. There has been no testimony as to why this task merits approval. Thus, it is excessive to bill 12 minutes for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 11/11/2013 | MSK | Final review and revisions to the Designation of Experts *(Doc. No. 477; 4 pages; 10 pages filed) | 0.6 | $185.00 | $111.00 | 0.6 | $111.00 | This appears to be duplication of work activity (*see* time entry immediately above). It is excessive to bill 36 minutes to conduct "final review and revisions" to this pleading. Just because multiple individuals (MSK & SKR) "review and revise" the same document, does not mean that duplicate activity (from different individuals) should be billed. Thus, it is excessive to bill 36 minutes without any testimony explaining why such additional billing is appropriate. |
| 11/11/2013 | LKW | File Debtor's Designation of Expert Witnesses *(Doc. No. 477; 4 pages; 10 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | It does not take 30 minutes to file this pleading and, therefore, it is excessive to bill 30 minutes for this task. The "ECF Notification" section following the notice of designation appears to be automatically generated. There are no additional exhibits and/or attachments that would require more than 6 minutes. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 11/13/2013 | SKR | Draft notice of issuance of trial subpoenas to R. Rhodes, H. Carr, W. McIlwain, J. Abney, S. Hepford, and M. Tessier *(Doc. No. 486; 1 page; 21 pages filed) | 0.5 | $110.00 | $55.00 | 0.4 | $44.00 | This notice contains one sentence referring the Court to the attached trial subpoenas. The subpoenas were simply attached to the notice, but the drafting of the notice itself—containing only one sentence—does not justify 30 minutes of billing. It is excessive to bill such an amount of time for this task. |
| 11/13/2013 | SKR | Draft trial subpoena for M. Tessier to appear and testify at the December 11, 12, and 13 hearing on the Motion to Approve Compromise *(Doc. No. 486; 2 pages; 21 pages filed) | 0.5 | $110.00 | $55.00 | 0.3 | $33.00 | The trial subpoena consists of 2 pages. The subpoena was drafted on a generic subpoena template wherein SKR simply had to input information in the appropriate blanks. For the initial draft of the trial subpoena, inputting such information does not take more than 12 minutes and, therefore, it is excessive to bill 30 minutes for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 11/13/2013 | SKR | Draft trial subpoena for S. Hepford to appear and testify at the December 11, 12, and 13 hearing on the Motion to Approve Compromise *(Doc. No. 486; 2 pages; 21 pages filed) | 0.5 | $110.00 | $55.00 | 0.4 | $44.00 | The trial subpoena consists of 2 pages. The subpoena was drafted on a generic subpoena template wherein SKR simply had to input information in the appropriate blanks. Inputting such information does not take more than 6 minutes, especially when prior subpoenas for other potential witnesses, which contained substantially the same information, had already been drafted. Subsequent subpoenas were essentially a "copy-and-paste" document with the only change being the recipient's name. Therefore, it is excessive to bill 30 minutes for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|------------------------------------------------------------|
| 11/13/2013 | SKR | Draft trial subpoena for J. Abney to appear and testify at the December 11, 12, and 13 hearing on the Motion to Approve Compromise *(Doc. No. 486; 2 pages; 21 pages filed) | 0.5 | $110.00 | $55.00 | 0.4 | $44.00 | The trial subpoena consists of 2 pages. The subpoena was drafted on a generic subpoena template wherein SKR simply had to input information in the appropriate blanks. Inputting such information does not take more than 6 minutes, especially when prior subpoenas for other potential witnesses, which contained substantially the same information, had already been drafted. Subsequent subpoenas were essentially a "copy-and-paste" document with the only change being the recipient's name. Therefore, it is excessive to bill 30 minutes for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|-------------------------------------------------------------|
| 11/13/2013 | SKR | Draft trial subpoena for W. McIlwain to appear and testify at the December 11, 12, and 13 hearing on the Motion to Approve Compromise *(Doc. No. 486; 2 pages; 21 pages filed) | 0.5 | $110.00 | $55.00 | 0.4 | $44.00 | The trial subpoena consists of 2 pages. The subpoena was drafted on a generic subpoena template wherein SKR simply had to input information in the appropriate blanks. Inputting such information does not take more than 6 minutes, especially when prior subpoenas for other potential witnesses, which contained substantially the same information, had already been drafted. Subsequent subpoenas were essentially a "copy-and-paste" document with the only change being the recipient's name. Therefore, it is excessive to bill 30 minutes for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 11/13/2013 | SKR | Draft trial subpoena for H. Carr to appear and testify at the December 11, 12, and 13 hearing on the Motion to Approve Compromise *(Doc. No. 486; 2 pages; 21 pages filed) | 0.5 | $110.00 | $55.00 | 0.4 | $44.00 | The trial subpoena consists of 2 pages. The subpoena was drafted on a generic subpoena template wherein SKR simply had to input information in the appropriate blanks. Inputting such information does not take more than 6 minutes, especially when prior subpoenas for other potential witnesses, which contained substantially the same information, had already been drafted. Subsequent subpoenas were essentially a "copy-and-paste" document with the only change being the recipient's name. Therefore, it is excessive to bill 30 minutes for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|-------------------------------------------------------------|
| 11/13/2013 | SKR | Draft trial subpoena for R. Rhodes to appear and testify at the December 11, 12, and 13 hearing on the Motion to Approve Compromise *(Doc. No. 486; 2 pages; 21 pages filed) | 0.5 | $110.00 | $55.00 | 0.4 | $44.00 | The trial subpoena consists of 2 pages. The subpoena was drafted on a generic subpoena template wherein SKR simply had to input information in the appropriate blanks. Inputting such information does not take more than 6 minutes, especially when prior subpoenas for other potential witnesses, which contained substantially the same information, had already been drafted. Subsequent subpoenas were essentially a "copy-and-paste" document with the only change being the recipient's name. Therefore, it is excessive to bill 30 minutes for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 11/22/2013 | LKW | Finalize and file Re-notice of Hearing relating to Proof of Claim Objection hearing to be heard on December 5, 2013 *(Doc. No. 508; 1 page; 10 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. This 1-page notice merely listed pleadings that were previously filed and simply sets forth the time, date, and place for the hearing. It should not take more than 6 minutes to finalize (or draft) the notice, and it should not take more than 6 minutes to file this 10-page pleading. Thus, it is excessive to bill 30 minutes for these tasks. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/06/2013 | SKR | Finalize and file brief on three day rule *(Doc. No. 560; 4 pages; 8 pages filed) | 0.5 | $110.00 | $55.00 | 0.3 | $33.00 | *Drafting* this 4-page brief may have taken 30 minutes to prepare. However, "drafting" the brief was not described as the activity conducted. It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to SKR spending very minimal time to complete a brief read-through of the document. Therefore, billing 30 minutes to "finalize and file" a previously-drafted document is excessive as it only takes, at most, 12 minutes to complete both tasks. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/06/2013 | LKW | Finalize and file Notice of Issuance of Trial Subpoena for Michelle Barnes *(Doc. No. 562; 1 page; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Thus, it does not take more than 6 minutes to finalize a 1-sentence pleading. Filing a document with an 11-page attachment does not require more than 6 minutes. Billing 30 minutes to complete both tasks is excessive. |
| 12/06/2013 | LKW | Draft Notice of Issuance of Trial Subpoena for Michelle Barnes *(Doc. No. 562; 1 page; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | It is excessive to bill 30 minutes for this task. This notice contains only one sentence referring the Court to the attached trial subpoena. The subpoena was simply attached to the notice, but the drafting of the notice itself—containing only one sentence—does not justify 30 minutes of billing. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/06/2013 | LKW | Draft trial subpoena for Michelle Barnes *(Doc. No. 562; 2 pages; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The trial subpoena consists of 2 pages. The subpoena was drafted on a generic subpoena template wherein LKW simply had to input information in the appropriate blanks. Inputting such information does not take more than 6 minutes, especially when prior subpoenas for other potential witnesses, which contained substantially the same information, had already been drafted. Subsequent subpoenas were essentially a "copy-and-paste" document with the change of the recipient's name. Therefore, it is excessive to bill 30 minutes for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/07/2013 | LKW | Finalize and file Standing Brief *(Doc. No. 567; 13 pages; 17 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | *Drafting* this 13-page brief may have taken 30 minutes, but "drafting" was not included in the activity description. It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Thus, it is acceptable to bill, at most, 12 minutes. |
| 12/07/2013 | MSK | Reviewed and revised the Motion to Strike the McIlwain, American Equity Fund LLC and Recap Marketing & Consulting LLP's responses and objections *(Doc. No. 564; 3 pages; 13 pages filed) | 0.2 | $185.00 | $37.00 | 0.2 | $37.00 | MSK received full credit for the "draft[ing]" of the Motion to Strike (i.e., 12/07/2013 – "Drafted the Motion to Strike the McIlwain, American Equity Fund LLC and Recap Marketing & Consulting LLP's responses and objections" entered by MSK). Here, the "review and revise" description appears to be a duplication of the "drafting" entry entered by MSK on 12/07/2013. The Applicant provided no testimony that would support approval of duplicative work or these time entries. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/07/2013 | LKW | Finalize and file debtor's Emergency Motion to Strike McIlwain, American Equity Fund LLC and Recap Marketing & Consulting LLP's from the Amended Response in Opposition to Debtor's Motion to Compromise Controversy Filed at Docket No. 531 as Untimely *(Doc. No. 564; 3 pages; 13 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | MSK already received full credit for the drafting of the Motion to Strike (i.e., 12/07/2013 – "Drafted the Motion to Strike the McIlwain, American Equity Fund LLC and Recap Marketing & Consulting LLP's responses and objections (entered by MSK)." It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Thus, it is excessive to bill 30 minutes to complete these tasks. Specifically, it does not take more than 6 minutes to finalize a 3-page motion, and it does not take more than 6 minutes to file a motion with a proposed order. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/09/2013 | SKR | Finalize and file Notice of Hearing on Debtor's Emergency Motion to Strike McIlwain, American Equity Fund, and Recap Marketing & Consulting LLP's from the Amended Response in Opposition to Debtor's Motion to Compromise Controversy *(Doc. No. 572; 1 page; 9 pages filed) | 0.5 | $110.00 | $55.00 | 0.3 | $33.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to SKR spending very minimal time to complete a brief read-through of the document. This 1-page pleading contains only one lengthy sentence that sets forth the time, place, and location of a hearing. Therefore, it is acceptable to bill, at most, 12 minutes to "finalize and file" this notice. |
| 12/10/2013 | SKR | Revise, finalize and file Notice of Sworn Return of Service of Subpoena to J. Abney and Attempted Service on Carr, Rhodes, Tessier, Hepford and McIlwain *(Doc. No. 581; 1 page; 31 pages filed) | 0.5 | $110.00 | $55.00 | 0.3 | $33.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to SKR spending very minimal time to complete a brief read-through of the document. The 1-page notice contains two sentences that refer to attached documents. It is acceptable to bill, at most, 6 minutes to revise and finalize and 6 minutes to file this 31-page pleading. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/12/2013 | LKW | Finalize and file Notice of Attempted Service on Hunter Carr and William McIlwain *(Doc. No. 604; 1 page; 13 pages filed) | 0.4 | $100.00 | $40.00 | 0.2 | $20.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. This 1-page notice contains only one sentence that refers to attached affidavits. It does not take more than 6 minutes to finalize one sentence, and it does not take more than 6 minutes to file a 13-page pleading. Therefore, it is excessive to bill 24 minutes for these tasks. |
| 12/12/2013 | LKW | Draft Notice of Attempted Service on Hunter Carr and William McIlwain *(Doc. No. 604; 1 page; 13 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This notice contains 1-sentence referring the Court to the attached affidavits of attempted service of trial subpoenas. The affidavit was simply attached to the notice, but the drafting of the notice itself—containing only one sentence—did not require 30 minutes of billing. Billing 30 minutes to draft this 1-sentence pleading is excessive. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 01/02/2014 | LKW | Draft Notice of Hearing for continued hearings on Motion to Compromise *(Doc. No. 650; 1 page; 10 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This 1-page pleading consists of only one sentence that sets forth the date, time, and location of a continued hearing. Such information is straightforward and the only attachment is the ECF notification list, which is not considered as part of the "draft." It does not take 30 minutes to draft this notice of continued hearing that contains the most basic information and, therefore, it is excessive to bill 30 minutes for this activity. |
| 01/11/2014 | MSK | Drafted the Notice of Filing of the Deposition Transcripts of Rhodes and Hepford | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | This notice should not take more than 6 minutes to draft. |
| 01/15/2014 | MSK | Drafted the Notice of Approved Settlement *(Doc. No. 674; 1 page; 50 pages filed) | 1.2 | $185.00 | $222.00 | 1.1 | $203.50 | This is a 1-page notice that contains two paragraphs informing all parties of the entry of an order approving the settlement. The language set forth in the notice contains standard deadline provisions. It is excessive to bill 1.2 hours to draft this two-paragraph document. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 01/16/2014 | LKW | Finalize and file supplemental certificate of service for Notice of Order Approving Compromise and Settlement *(Doc. No. 679; 1 page; 10 pages filed) | 0.4 | $100.00 | $40.00 | 0.2 | $20.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. The actual notice is only 1 page, and the remaining 9 pages consist of the ECF notification list. Thus, it is excessive to bill 24 minutes to complete these tasks. Rather, finalizing a 1-sentence pleading does not take more than 6 minutes. And, filing a 10-page document does not take more than 6 minutes. |
| 01/16/2014 | LKW | Draft supplemental certificate of service for Notice of Order Approving Compromise and Settlement *(Doc. No. 679; 1 page; 10 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 1-page supplemental certificate of service contains one sentence and a list of contact information for 2 specific parties. It does not appear that any additional research or information from an outside party was required to draft such notice. It does not take 30 minutes to list contact information for two parties. It is acceptable to bill, at most, 12 minutes. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|------------------------------------------------------------|
| 01/20/2014 | LKW | Finalize and file supplemental certificate of service *(Doc. No. 683; 1 page; 9 pages filed) | 0.4 | $100.00 | $40.00 | 0.2 | $20.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Further, based on the activity description, it is unclear which document this "supplemental certificate of service" refers to. However, it appears the only certificate of service filed on 01/20/2014 relates to docket number 683. Based on this 1-page supplemental certificate of service, it does not take more than 6 minutes to finalize a 1-sentence document, and it does not take more than 6 minutes to file a 9-page pleading. Thus, it is excessive to bill 24 minutes to complete these tasks. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 01/20/2014 | LKW | Draft supplemental certificate of service for The Venturebanc, Inc. and OCE Imaginistics, Inc. *(Doc. No. 683; 1 page; 9 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 1-page supplemental certificate of service contains one sentence and a list of contact information for 2 parties. It does not take 30 minutes to list contact information for two parties. Rather, it is acceptable to bill, at most, 12 minutes to draft this pleading. |
| 01/21/2014 | LKW | Draft Supplemental Certificate of Service for Notice of Entry of Order Approving Compromise and Settlement *(Doc. No. 688; 1 page; 10 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This supplemental certificate of service consists of only one page and one sentence. The certificate does not contain any substantive issues or arguments; rather, this document merely lists the parties that were served. It is excessive to bill 30 minutes to draft this pleading. |
| 04/04/2014 | LKW | Finalize and file Agreed Motion to Dismiss Appeal Pursuant to Court Approved Bankruptcy Settlement Agreement *(Civil Action #4:13-cv-03221, Doc. No. 4; 1 page; 5 pages filed) | 0.3 | $100.00 | $30.00 | 0.1 | $10.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Therefore, it is acceptable to bill, at most, 6 minutes to finalize pleading and 6 minutes to file this pleading. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|------------------------------------------------------------|
| 09/26/2013 | LKW | Draft Amended Subpoena for 2004 Examination for W. McIlwain *(Doc. No. 310; 5 pages; 13 pages filed). | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | As the amended subpoena is substantively the same as the original subpoena, with the exception of a different response deadline and the addition of a new address, there is no reason why this amended subpoena should take any more than 6 minutes to draft. It is excessive to bill 30 minutes to draft this amended subpoena. |

### FEE APPLICATION CATEGORY—"SCHEDULES & STATEMENT, 341 MEETING, MORS"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|------------------------------------------------------------|
| 06/05/2013 | LKW | File Certificate of Service related to Debtor's Emergency Motion to Extend Deadlines (Docket #8) and Debtor's Emergency Motion Seeking Authority to Implement Certain Notice Procedures (Docket #9) *(Doc. No. 10; 1 page; 5 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | This 1-page pleading consists of a recitation of documents and/or pleadings that were previously served to parties on the service list. This certificate contains a 4-page service list. Billing 24 minutes to file a five-page document is excessive. Six minutes is the most time such a filing should take. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/05/2013 | LKW | Draft Certificate of Service related to Debtor's Emergency Motion to Extend Deadlines (Docket #8) and Debtor's Emergency Motion Seeking Authority to Implement Certain Notice Procedures (Docket #9)<br>*(Doc. No. 10; 1 page; 5 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 1-page pleading consists of a recitation of documents and/or pleadings that were previously served to parties on the service list. As this pleading includes only one sentence, billing 30 minutes to draft this pleading is excessive. |
| 06/20/2013 | LKW | Finalize and file Certificate of Service regarding Order Establishing Notice Procedures *(Doc. No. 45; 5 pages; 14 pages filed) | 0.4 | $100.00 | $40.00 | 0.2 | $20.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. This certificate of service contains essentially one sentence with a list of ECF notifications sent to specific parties. Thus, it is acceptable to bill, at most, 12 minutes to finalize and file such a basic pleading. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|-----------------|-----------------------------------------------------------|
| 06/20/2013 | LKW | Draft Certificate of Service regarding Order Establishing Notice Procedures *(Doc. No. 45; 5 pages; 14 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | Pages 1-5 consists of ECF addresses of parties to which the order was served. However, it appears LKW simply "copied-and-pasted" the ECF addresses generated by the Court's ECF notification system. The service list is also court-generated. It is excessive to bill 30 minutes to copy and paste the information from a different source. |
| 07/23/2013 | MMH | Draft disclaimer for Supplemental list of equity holders *(Doc. No. 153; 2 pages; 4 pages filed) | 0.6 | $285.00 | $171.00 | 0.4 | $114.00 | This disclaimer is substantially similar to the disclaimer in another pleading (Doc. No. 831-3, p. 15) and, therefore, no new substantive provisions were added that were not previously drafted. To draft this particular disclaimer for this supplemental list of equity holders by using a past disclaimer that is almost identical does not require more than 12 minutes. It is excessive to bill 36 minutes to complete this activity. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/30/2013 | KJM | Finalize and file Supplement to List of Equity Holders *(Doc. No. 153; 2 pages; 4 pages filed) | 0.4 | $130.00 | $52.00 | 0.2 | $26.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to KJM spending very minimal time to complete a brief read-through of the document. This 2-page pleading consists of 1 main sentence, a penalty of perjury paragraph, and a disclaimer paragraph—all of which appear to be standard provisions. It is acceptable to bill, at most, 6 minutes to finalize this short document and 6 minutes to file this 4-page pleading. |
| 08/12/2013 | ELR | Assign M. Haselden to draft motion to set bar date for filing of proofs of interest | 0.2 | $400.00 | $80.00 | 0.2 | $80.00 | The mere task of assigning a project to an associate should not be billed to the Debtor, at least not without providing more detail such as: Did ELR actually have a face-to-face conference with M. Haselden to discuss what substance this motion should include? Or did he send her an email reviewing this substance? Or did he simply say: "Draft a motion to set the bar date"? |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 08/12/2013 | ELR | Assign D. Brown to amend list of equity holders to show who is disputed | 0.2 | $400.00 | $80.00 | 0.2 | $80.00 | The mere task of assigning a project to an associate should not be billed to the Debtor, at least not without providing more detail such as: Did ELR actually have a face-to-face conference with D. Brown to discuss what substance this motion should include? Or did he send her an email reviewing this substance? Or did he simply say: "Draft an amended list of equity holders"? |
| 08/16/2013 | KJM | Draft Notice of Deadline to File Proof of Interest *(Doc. No. 233-4, 4 pages) | 1.0 | $130.00 | $130.00 | 0.7 | $91.00 | This 4-page document, of which the majority of text is general, boilerplate provisions, should not take more than 18 minutes to draft. It is excessive to bill 1 hour to draft this notice. |
| 08/16/2013 | KJM | Draft Proof of Interest form *(Doc. No. 233-5; 1 page; 68 pages filed which include main document—"Motion to Set Last Day to File Proofs of Claim") | 0.7 | $130.00 | $91.00 | 0.6 | $78.00 | This 1-page document appears to be a generic template. There are only two boxes that were filled out with information ("Name of Debtor" and "Case Number"). Therefore, it is excessive to bill 42 minutes to draft this document when it should only take, at most, 6 minutes to draft this form. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|-------------------------------------------------------------|
| 08/20/2013 | MMH | Draft proposed order establishing bar date for filing of interest *(Doc. No. 233-6; 2 pages; 68 pages filed which include main document—"Motion to Set Last Day to File Proofs of Claim") | 0.8 | $285.00 | $228.00 | 0.6 | $171.00 | This 2-page proposed order does not contain any unique provisions, but rather, contains very basic and standard provisions for proposed orders. Such a 2-page order does not require 48 minutes to draft and, therefore, it is excessive to bill 48 minutes for this task. |
| 08/22/2013 | LKW | Finalize and file Amended Supplement to List of Equity Security Holders *(Doc. No. 229; 1 page; 5 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Changes made to the Supplement to List of Equity Security Holders are not substantial and, in fact, very minor changes were made to the first sentence of the pleading. To finalize such minor changes does not require more than 6 minutes, and to file a 5-page pleading does not take more than 6 minutes. Thus, it is excessive to bill 30 minutes to complete these two tasks. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 09/05/2013 | LKW | Finalize and file Certificate of Service regarding Notice of Bar Date *(Doc. No. 268; 1 page; 8 pages filed) | 0.4 | $100.00 | $40.00 | 0.2 | $20.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. This 1-page pleading consists of a list of parties that were served with the Notice of Bar Date. As there was no other substantive information set forth in the certificate of service, it is acceptable to bill, at most, 6 minutes to finalize such a pleading and 6 minutes to file the same. |
| 09/05/2013 | LKW | Draft Certificate of Service regarding Notice of Bar Date *(Doc. No. 268; 1 page; 8 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 1-page pleading consists of a list of parties that were served with the Notice of Bar Date. No other substantive information was set forth in the Certificate of Service. Billing 30 minutes to draft this certificate is excessive. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 09/05/2013 | LKW | File Notice of Bar Date Requiring Filing of All Proof of Disputed Equity Interest on or Before October 16, 2013, with Affidavit of Service *(Doc. No. 267; 5 pages; 53 pages filed) | 0.6 | $100.00 | $60.00 | 0.4 | $40.00 | The notice of bar date and the attached affidavit totals 53 pages. Although there are several pages to file with the court, billing 36 minutes to file these pages is excessive. It should take no more than 12 minutes to file this Notice. |
| 10/11/2013 | KJM | Finalize and file the Notice of Filing of 2012 Tax Return *(Doc. No. 348; 1 page; 9 pages filed) | 0.3 | $130.00 | $39.00 | 0.1 | $13.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to KJM spending very minimal time to complete a brief read-through of the document. This 1-page, 1-paragraph pleading is not lengthy and consists of only three sentences. To "finalize and file" this pleading should take no longer than 12 minutes and, therefore, it is excessive to bill 18 minutes. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/11/2013 | KJM | Prepare Notice of Filing of 2012 Tax Return *(Doc. No. 348; 1 page; 9 pages filed) | 0.3 | $130.00 | $39.00 | 0.1 | $13.00 | This 1-page pleading contains one paragraph wherein KJM provides the Court with an update of information regarding the 2012 tax return. The paragraph is not lengthy and, therefore, it is acceptable to bill, at most, 12 minutes to prepare this notice. |
| 05/31/2013 | MSK | Reviewed and revised the Motion to Extend the deadline for schedules and statements to include needing additional time for the list of equity holders *(Doc. No. 8; 7 pages; 9 pages filed) | 0.6 | $185.00 | $111.00 | 0.6 | $111.00 | MSK already received credit for the drafting of the Motion to Extend Deadline as the Court approved of the full 1.1 hour that was billed by MSK on 05/31/2013 stating, "Drafted the Motion to Extend the Deadline to File Schedules and Statement of Financial Affairs, and proposed order." It is excessive to bill an additional 36 minutes to "review[] and revise[] a 7-page pleading. Further, the Applicant has not provided any testimony or explanation that would merit billing an additional 36 minutes. Therefore, this time entry is disallowed in its entirety. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|-----------------|-------------------------------------------------------------|
| 06/03/2013 | MMH | Continue drafting and revisions to Motion to Extend Deadline to File Schedules *(Doc. No. 8; 7 pages; 9 pages filed) | 1.0 | $285.00 | $285.00 | 1.0 | $285.00 | MSK already received credit for the drafting of the Motion to Extend Deadline as the Court approved of the full 1.1 hour that was billed by MSK on 05/31/2013 stating, "Drafted the Motion to Extend the Deadline to File Schedules and Statement of Financial Affairs, and proposed order." Other attorneys (i.e., MMH) should not be able to recover on duplicate work done by different individuals. The Applicant has not provided any testimony or explanation that would merit approval of duplicative work. Therefore, this time entry is disallowed in its entirety. |
| 06/04/2013 | MMH | Revise proposed order extending deadline to file schedules and creditor matrix *(Doc. No. 8-1; 1 page; 1 page filed) | 0.4 | $285.00 | $114.00 | 0.3 | $85.50 | It is unclear what was actually revised in the proposed order and it is unclear the reason for revisions. In any case, the proposed order is a 1-page document with standard provisions and, therefore, it is acceptable to bill, at most, 6 minutes to "revise" a previously-drafted proposed order. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/04/2013 | MMH | Revise and finalize Motion to Extend Deadline to File Schedules and Creditor Matrix *(Doc. No. 8; 7 pages; 8 pages filed) | 1.0 | $285.00 | $285.00 | 1.0 | $285.00 | MSK already received credit for the drafting of the Motion to Extend Deadline as the Court approved of the full 1.1 hour that was billed by MSK on 05/31/2013 stating, "Drafted the Motion to Extend the Deadline to File Schedules and Statement of Financial Affairs, and proposed order." Other attorneys (i.e., MMH) should not be able to recover on duplicate work done by different individuals. The Applicant has not provided any testimony or explanation that would merit approval of duplicative work. Therefore, this time entry is disallowed in its entirety. |

## FEE APPLICATION CATEGORY: "PROFESSIONALS"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|-----------------|-------------------------------------------------------------|
| 06/04/2013 | SKR | Finalize and file the Application to Employ Hoover Slovacek LLP as counsel for the Debtor *(Doc. No. 6; 5 pages; 11 pages filed) | 0.4 | $110.00 | $44.00 | 0.1 | $11.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to SKR spending very minimal time to complete a brief read-through of the document. This is a 5-page pleading with an attached affidavit and proposed order. As the activity description does not provide for the "drafting" of the application, it is acceptable for SKR to bill, at most, 12 minutes to finalize this pleading (including the affidavit and the proposed order) and an additional 6 minutes to file a 11-page document. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/06/2013 | MMH | Finalize and electronically file application to employ Epiq as noticing agent *(Doc. No. 12; 8 pages; 26 pages filed) | 0.4 | $285.00 | $114.00 | 0.1 | $28.50 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to MMH spending very minimal time to complete a brief read-through of the document. This is an 8-page pleading with a proposed order. As the activity description does not provide for the "drafting" of the application, it is acceptable for MMH to bill, at most, 12 minutes to finalize this pleading (including the proposed order) and an additional 6 minutes to file a 26-page document. |
| 06/06/2013 | LKW | File Certificate of Service for Application to Retain Epiq Bankruptcy Solutions, LLC *(Doc. No. 14; 1 page; 5 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | The certificate of service contains only 1 page of actual information and another 4 pages of the service list. Filing a 5-page document does not take 24 minutes to complete, but rather, only 6 minutes. Thus, it is excessive to bill 24 minutes to file this document. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/06/2013 | LKW | Draft Certificate of Service for Application to Retain Epiq Bankruptcy Solutions, LLC *(Doc. No. 14; 1 page; 5 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This 1-page document contains only one sentence informing the Court that the Application to Retain was served on the parties. The information set forth in this pleading does not contain any substantive issues or questions and certainly does not require 30 minutes of time to draft. Thus, it is excessive to bill 30 minutes to draft this pleading. |
| 06/07/2013 | KJM | Finalize and file 20 largest unsecured creditors list *(Doc. No. 18; 4 pages; 4 pages filed) | 0.5 | $130.00 | $65.00 | 0.2 | $26.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to KJM spending very minimal time to complete a brief read-through of the document. The substance of this list of creditors requires only a "copy-and-paste" action. Although it may take KJM some time to input the amount of claim for every creditor line, it does not require 30 minutes. It is acceptable to bill, at most, 18 minutes. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/19/2013 | LKW | Finalize, file and serve Notice of Hearing on Application to Employ Counsel for Debtor-In-Possession *(Doc. No. 43; 1 page; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Therefore, finalizing a 1-page, 1-sentence notice does not require more than 6 minutes when the document had already been previously drafted. Filing an 11-page pleading does not take more than 6 minutes. Pursuant to the Certificate of Service attached to the notice, service was made on several parties via ECF notification, not actual mailing of the notice. Therefore, it does not require more than 6 minutes to forward the notice to parties via ECF notification. It is excessive to bill 30 minutes to complete these tasks. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|-------------------------------------------------------------|
| 06/19/2013 | LKW | Draft Notice of Hearing on Application to Employ Counsel for Debtor-In-Possession *(Doc. No. 43; 1 page; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This 1-page notice of hearing contains one sentence that informs the parties of the place, time, and location of a hearing. The other attachments include what appear to be an automatically generated ECF notification list and a service list, which are not considered as part of the Notice. It is excessive to bill 30 minutes to draft this skeletal document. |
| 06/20/2013 | DCB | Finalize and file Amended Affidavit of Proposed Attorney and Disclosure of Compensation *(Doc. No. 44; 4 pages; 10 pages filed) | 0.5 | $275.00 | $137.50 | 0.3 | $82.50 | This is a 4-page affidavit. It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to DCB spending very minimal time to complete a brief read-through of the document. Further, the activity description does not include "drafting" of this amended affidavit. As this amended affidavit was previously drafted, it is excessive to bill 30 minutes to finalize and file this affidavit. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/01/2013 | LKW | Finalize and file Stipulation Regarding Notice of Distribution of Retainer *(Doc. No. 67; 2 pages; 2 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Further, the activity description does not include "drafting" of this stipulation. It is acceptable to bill, at most, 12 minutes to finalize and file a previously-drafted stipulation. |
| 07/08/2013 | LKW | Finalize and file Notice of Second Distribution of Retainer *(Doc. No. 77; 3 pages; 53 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. Further, the activity description does not include "drafting" of this notice. As this notice was previously drafted, it is acceptable to bill, at most, 18 minutes to finalize and file this pleading. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 01/02/2014 | LKW | Finalize and file Debtor's Expedited Motion to Strike Amended Objection to Interim Fee Application(s) by Counsel for the Debtor *(Doc. No. 648; 6 pages; 16 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | It is not entirely clear what actions are considered as part of "finaliz[ing]" this pleading. This Court construes that "finalizing" a document equates to LKW spending very minimal time to complete a brief read-through of the document. This is a 6-page pleading that consists of background information and arguments. Because the activity description does not include "drafting" of the 6-page document (with proposed order), finalizing a previously-drafted document of this kind should take no more than 12 minutes. Filing a 16-page pleading does not take more than 6 minutes. Thus, it is excessive to bill 30 minutes to finalize and file this pleading. |

| | | FEE APPLICATION CATEGORY: "PLAN AND DISCLOSURE STATEMENTS" | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
| 10/18/2013 | MMH | Finalize and electronically file request for emergency hearing on approval of disclosure statement, confirmation of plan and approval of compromise *(Doc. No. 388: 2 pages; 13 pages filed) | 0.4 | $285.00 | $114.00 | 0.2 | $20.00 | The activity description does not include "drafting" of this request for emergency hearing. As this pleading was previously drafted, finalizing the document does not require more than 6 minutes to complete a brief read-through of 2 pages of the actual request for emergency hearing. It is acceptable to bill, at most, 6 minutes to finalize this document and 6 minutes to file the same. |
| 10/18/2013 | MMH | Draft proposed order setting emergency hearing on approval of disclosure statement, confirmation of plan and approval of compromise *(Doc. No. 388-1; 1 page; 2 pages filed) | 0.4 | $285.00 | $114.00 | 0.3 | $85.50 | This 1-page proposed order contains standard and generic provisions for proposed orders. The proposed order contains two paragraphs, and neither paragraph raises any substantive issues. It is excessive to bill 2- minutes to draft a 2-paragraph proposed order. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/18/2013 | MMH | Draft request for emergency hearing on approval of disclosure statement, confirmation of plan and approval of compromise *(Doc. No. 388; 2 pages; 11 pages filed) | 0.8 | $285.00 | $228.00 | 0.7 | $199.50 | This request for emergency hearing contains 2 pages. The information set forth in the request is straightforward and does not require significant time or analysis. Drafting this 2-page pleading requires no more than 6 minutes. Therefore, it is excessive to bill 48 minutes to draft these two pages. |
| 10/18/2013 | KJM | Draft Emergency Motion to Set Hearing on Disclosure Statement | 0.7 | $130.00 | $91.00 | 0.7 | $91.00 | From what the Court can decipher, this emergency motion is the same request for emergency hearing that was previously billed on the same day by MMH. There is nothing to support the contrary and, therefore, the Court will disallow the duplicative work of KJM as the Applicant has not provided any testimony or explanation that merits approval of such duplicative work. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|-----------------|-----------------------------------------------------------|
| 10/25/2013 | KJM | Draft Notice of Filing of Supplemental Exhibits to Disclosure Statement *(Doc. No. 428; 1 page; 40 pages filed) | 0.5 | $130.00 | $65.00 | 0.4 | $52.00 | Although this Notice had several attached exhibits, the actual 1-page notice contains one sentence informing the parties of the supplemental exhibits to Debtor's proposed disclosure statement. This Notice also includes a very brief bullet point list of the two exhibits being added. It is excessive to bill 30 minutes to draft this document. |
| 10/25/2013 | KJM | Draft Notice of Filing of Supplemental Exhibit to Chapter 11 Plan *(Doc. No. 427; 1 page; 38 pages filed) | 0.5 | $130.00 | $65.00 | 0.4 | $52.00 | Although this Notice had attached exhibits, the actual 1-page Notice contains only one sentence informing the parties of the supplemental exhibits to the Debtor's Chapter 11 Plan. It is excessive to bill 30 minutes to draft this document. |
| 10/25/2013 | LKW | File Supplemental Exhibit 2 to Debtors Chapter 11 Plan of Reorganization *(Doc. No. 427; 1 page; 38 pages filed) | 0.6 | $100.00 | $60.00 | 0.5 | $50.00 | A total of 38 pages was filed. Although there were 38 pages, there is no justifiable reason for the filing of such pleading to take more than 6 minutes. It is excessive to bill 36 minutes to file this pleading. |

744

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/25/2013 | LKW | File Supplement to Proposed Disclosure Statement and Bankruptcy Rule 3016 in Support of Plan *(Doc. No. 428; 1 page; 40 pages filed) | 0.6 | $100.00 | $60.00 | 0.5 | $50.00 | A total of 40 pages was filed. Although there were 40 pages, there was no reason for the filing of such pleading to take more than 6 minutes. It is excessive to bill 36 minutes to file this pleading. |
| 12/26/2013 | MMH | Draft proposed order scheduling hearing on approval of disclosure statement *(Doc. No. 631-2; 1 page; 1 page filed) | 0.4 | $285.00 | $114.00 | 0.3 | $85.50 | This 1-page proposed order contains two paragraphs, one of which merely recites the original pleading filed. It is excessive to bill 24 minutes to draft this order. |
| 12/26/2013 | MMH | Draft proposed order extending exclusivity deadline *(Doc. No. 631-1; 1 page; 1 page filed) | 0.4 | $285.00 | $114.00 | 0.3 | $85.50 | This 1-page proposed order contains two paragraphs, one of which merely recites the original pleading filed. It is excessive to bill 24 minutes to draft this order. |
| 01/21/2014 | KJM | Prepare Certificate of Service for mailing of plan package *(Doc. No. 689; 1 page; 20 pages filed) | 0.5 | $130.00 | $65.00 | 0.4 | $52.00 | The 1-page certificate of service contains two paragraphs with a bullet-point list of the attachments related to the amended plan. This information is straightforward and, therefore, it is excessive to bill 30 minutes to prepare this document. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 01/27/2014 | LKW | Finalize and file Supplemental Certificate of Service for Plan package *(Doc. Nos. 692 & 693; 3 pages; 4 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | These two supplemental certificates of service each contain a 1-page pleading that sets forth straightforward information. It is excessive to bill 30 minutes to "finalize and file" these certificates. |
| 01/27/2014 | LKW | Draft Supplemental Certificate of Service for Plan package *(Doc. Nos. 692 & 693; 3 pages; 4 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | There are two supplemental certificates of service filed. Each certificate is a 1-page pleading that lists different parties in the "supplemental service list." Neither certificate contains any new substantive issues or arguments; rather, these pleadings recite previous pleadings that have been served on various parties and add to the service list. It is excessive to bill 30 minutes to draft these documents. |
| 01/29/2014 | MMH | Draft proposed order approving plan modifications *(Doc. No. 701-1; 1 page; 52 pages filed) | 0.5 | $285.00 | $142.50 | 0.4 | $114.00 | This 1-page proposed order contains rather generic provisions typically included in proposed orders of this kind. The proposed order is not lengthy, and it is excessive to bill 30 minutes for drafting this 1-page order. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 01/30/2014 | LKW | Finalize and file Debtor's Response to Motion to Reconsider Order Extending Exclusivity Period *(Doc. No. 703; 5 pages; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This activity description does not include the "drafting" of such response. Therefore, it is excessive to bill 30 minutes to "finalize and file" this pleading. |
| 02/04/2014 | MSK | Drafted the Notice of Continued Hearings on Confirmation and the Disclosure Statement *(Doc. No. 718; 1 page; 11 pages filed) | 0.4 | $185.00 | $74.00 | 0.3 | $55.50 | This 1-page pleading consists of only one sentence that sets forth the date, time, and location of a continued hearing. Such information is straightforward. Thus, it is excessive to bill 24 minutes to draft this document. |
| 02/04/2014 | LKW | Finalize and file Amended Rebuttal/Supplemental Exhibit List *(Doc. No. 720; 2 pages; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This is a 2-page document that does not require much analysis or information. Thus, it is acceptable to bill, at most, 6 minutes to finalize this document and 6 minutes to file the same. |
| 02/04/2014 | LKW | Draft Amended Rebuttal/Supplemental Exhibit List *(Doc. No. 720; 2 pages; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | This 2-page document provides a list of potential exhibits and witnesses. The listing of such items is quite simple. It does not require 30 minutes to prepare. It is acceptable to bill, at most, 18 minutes to draft this pleading. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 02/05/2014 | LKW | Finalize and file Notice of Redlined Debtor's Second Amended and Restated Chapter 11 Plan *(Doc. No. 727; 1 page; 131 pages filed) | 0.5 | $100.00 | $50.00 | 0.1 | $10.00 | This document is a 1-page, 1-sentence pleading. It is acceptable to bill, at most, 6 minutes to finalize such document. As there are over 100 pages of attachments to file with the notice, it is acceptable for this legal assistant to bill 18 minutes to file the entire Notice. |
| 02/06/2014 | LKW | File Notice of Filing Redlined Debtor's Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including All Modifications and Corrections to Typographical Errors Dated February 6, 2014 *(Doc. No. 732; 1 page; 131 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | The entire Notice contains 131 pages, one of which is the actual page giving the relevant notice. As there are over one hundred pages to file, it is acceptable for LKW to use a little extra time to file such a pleading with several pages of attachments. However, billing 30 minutes to file this document is excessive. |
| 02/06/2014 | LKW | Draft Notice of Filing Redlined Debtor's Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including All Modifications and Corrections to Typographical Errors Dated February 6, 2014 *(Doc. No. 732; 1 page; 131 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This 1-page pleading consists of only one paragraph that refers to an exhibit with over 100 pages. This Notice is rather brief, and it is excessive to bill 30 minutes to draft this document. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 02/06/2014 | LKW | File Debtor's Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including All Modifications and Corrections to Typographical Errors Dated February 6, 2014 *(Doc. No. 731; 40 pages; 117 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | This entire pleading contains 117 pages. All pages are related to the Debtor's Second Amended plan. As there are over one hundred pages to file, it is acceptable for LKW to use a little extra time to file such a pleading with several pages of attachments. However, billing 30 minutes to file a document is excessive. |
| 02/06/2014 | LKW | Finalize and file Debtor's Third Amended Rebuttal/Supplemental Exhibit List *(Doc. No. 733; 3 pages; 12 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | Comparing this third amended exhibit list with the second amended exhibit list shows that the Debtor added 3 new exhibits. Otherwise, there are no other substantial changes. It is excessive to bill 30 minutes to finalize and file this pleading. Specifically, finalizing a previously-drafted list by adding three exhibits requires no more than 6 minutes and filing a 12-page document does not require more than 6 minutes. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 02/07/2014 | LKW | Draft Certificate of Service for Debtor's Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including All Modifications and Corrections to Typographical Errors Dated February 6, 2014 and Notice of Filing Redlined Debtor's Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including All Modifications and Corrections to Typographical Errors Dated February 6, 2014. *(Doc. No. 735; 1 page; 17 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 1-page pleading consists of two paragraphs of LKW certifying service to certain parties. No other substantive information was set forth in the Certificate of Service. Billing 30 minutes to draft this certificate is excessive. |
| 02/07/2014 | LKW | File Certificate of Service for Debtor's Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including All Modifications and Corrections to Typographical Errors Dated February 6, 2014 and Notice of Filing Redlined Debtor's Second Amended & Restated Chapter 11 Plan of Reorganization Dated January 21, 2014, Including All Modifications and Corrections to Typographical Errors Dated February 6, 2014. *(Doc. No. 735; 1 page; 17 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | Although there were 17 pages filed, there is no reason for the filing of such a certificate of service (with 16 pages of service list and ECF notification) to take more than 6 minutes. It is excessive to bill more than this time. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 02/14/2014 | LKW | Finalize and file exhibit and witness list for hearing on February 18, 2014 *(Doc. No. 743; 3 pages; 12 pages filed) | 0.4 | $100.00 | $40.00 | 0.2 | $20.00 | The activity description does not mention "drafting." To finalize a previously-drafted document does not take more than 6 minutes. To file a 12-page pleading does not take more than 6 minutes. Thus, it is excessive to bill 24 minutes. |
| 02/17/2014 | MSK | Drafted the Notice of Filing the Hurley Enterprises Audit *(Doc. No. 789; 1 page; 29 pages filed) | 0.2 | $185.00 | $37.00 | 0.1 | $18.50 | This 1-page, 2-sentence Notice does not set forth any substantive information, but rather, attaches an exhibit. It does not take more than 6 minutes to draft two sentences in the Notice and, therefore, it is excessive to bill 12 minutes. |
| 03/06/2014 | KJM | Draft Certificate of Service regarding ECF service of Plan package | 0.4 | $130.00 | $52.00 | 0.4 | $52.00 | On 03/11/2014, LKW billed 24 minutes for the following action: "Draft Certificate of Service related to Plan Packet." KJM's time entry of 24 minutes appears to relate to the same action. There is no reason why there should be double billing for the same action. The Applicant has provided no testimony that merits approval of duplicative time entries or actions. Thus, this time entry is disallowed in its entirety. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 03/11/2014 | LKW | Draft Certificate of Service related to Plan Packet *(Doc. No. 782; 2 pages; 12 pages filed) | 0.4 | $100.00 | $40.00 | 0.2 | $20.00 | This is a 2-page pleading that includes a list of documents that were served on the parties. This document does not appear to contain any background or arguments, but rather, just a list of items that were mailed to the parties. Billing 24 minutes to draft this pleading is excessive. |
| 03/11/2014 | LKW | File Certificate of Service related to Plan Packet *(Doc. No. 782; 2 pages; 12 pages filed) | 0.3 | $100.00 | $30.00 | 0.2 | $20.00 | This document has a total of 12 pages, of which the majority are pages listing the ECF notification addresses. Filing this 12-page pleading does not take more than 6 minutes. Thus, it is excessive to bill 18 minutes to file this document. |

## FEE APPLICATION CATEGORY: "LIFT STAYS"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|------------------------------------------------------------|
| 07/31/2013 | LKW | File Digerati's Amended Objection to Rhodes Holdings, LLC and Robert C. Rhodes Motion (1) for Determination that Automatic Stay Does Not Apply to Appellate Proceedings Pending Before the 14th Court of Appeals of Texas, or Alternatively (II) For Relief from the Automatic Stay to Continue Appellate Proceedings and as Amended *(Doc. No. 166: 19 pages: 82 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | The Amended Objection consists of a total of 82 pages which include the amended objection and three exhibits. As there are several pages, it is acceptable for LKW to use a little extra time to file such a pleading with several pages of exhibits. It is acceptable to bill 18 minutes to file a 82-page pleading. However, billing 30 minutes to file a document is excessive. |
| 07/31/2013 | LKW | File Supplemental Certificate of Service relating to Debtor, Digerati Technologies, Inc.'s Objection to Rhodes Holdings, LLC and Robert C. Rhodes Motion (1) For Determination that Automatic Stay Does Not Apply to Appellate Proceedings Pending Before the 14th Court of Appeals of Texas, or Alternatively (II) For Relief from the Automatic Stay to Continue Appellate Proceedings *(Doc. No. 160; 1 page; 7 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | This document consists of only 7 pages. It is excessive to bill 24 minutes to file this supplemental certificate of service. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/31/2013 | LKW | Draft Supplemental Certificate of Service relating to Debtor, Digerati Technologies, Inc.'s Objection to Rhodes Holdings, LLC and Robert C. Rhodes Motion (1) For Determination that Automatic Stay Does Not Apply to Appellate Proceedings Pending Before the 14th Court of Appeals of Texas, or Alternatively(II) For Relief from the Automatic Stay to Continue Appellate Proceedings *(Doc. No. 160; 1 page; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 1-page certificate contains one rather lengthy sentence. Although the entire document consists of seven pages, only one page sets forth the actual. certification showing that all necessary parties were served. It is excessive to bill 30 minutes to draft this one sentence. |
| 08/02/2013 | LKW | File exhibit and witness list for Motion to Lift Stay *(Doc. No. 171; 5 pages; 7 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | It does not take 24 minutes to file a 7-page document with no attachments or exhibits. Any time billed over 6 minutes is excessive. |
| 08/05/2013 | LKW | File Amended Exhibit and Witness List on Motion to Lift Stay *(Doc. No. 185; 5 pages; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | It does not take 30 minutes to file an amended witness and exhibit list totaling 7 pages. Any time billed over 6 minutes is excessive. |
| 09/06/2013 | LKW | Finalize and file exhibit and witness list for hearing on September 10, 2013 *(Doc. No. 272; 3 pages; 10 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | The activity description does not mention "drafting" of this witness and exhibit list. It is excessive to bill 30 minutes to complete these two tasks. Specifically, to finalize this particular previously-drafted document does not take more than 6 minutes. To file a 10-page pleading does not require more than 6 minutes. |

| | | FEE APPLICATION CATEGORY: "ASSET DISPOSITION" | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
| 07/26/2013 | LKW | Draft subpoena for Rule 2004 Examination on Steven Bonebreak *(Doc. No. 157: 4 pages; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | The subpoena consists of 2 pages with 2 additional pages of "definitions" and "documents requested." The subpoena was drafted on a generic subpoena template wherein LKW simply had to input information in the appropriate blanks. Inputting such information does not take more than 6 minutes, especially when prior subpoenas for other potential witnesses, which contained substantially the same information had already been drafted. The attached "documents requested" and "definitions" also appear to be generic templates that do not require more than 12 minutes to put together. Thus, it is excessive to bill 30 minutes to draft this document. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/26/2013 | LKW | Draft subpoena for Rule 2004 Examination on Watts Capital Partners, LLC *(Doc. No. 157; 4 pages; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The subpoena consists of 2 pages with 2 additional pages of "definitions" and "documents requested." Inputting such information does not take more than 6 minutes, especially when prior similar subpoenas for other potential witnesses (e.g., 07/26/2013 – " Draft subpoena for Rule 2004 Examination on Steven Bonebreak") had already been drafted. As there is no need to reconstruct a completely new document, it is excessive to bill more than 6 minutes on an essentially duplicate document. |
| 07/30/2013 | LKW | File Notice of Issuance of Subpoena Duces Tecum for Rule 2004 Examination on Watts Capital Partners, LLC and S. Bonebreak *(Doc. No. 157; 1 page; 11 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This notice consists of 11 pages. It is excessive to bill 30 minutes to file a document with only 11 pages. It is acceptable to bill, at most, 6 minutes. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/30/2013 | LKW | Research information regarding Watts Capital Partners, LLC and Thomas W. Watts for subpoena | 1.0 | $100.00 | $100.00 | 1.0 | $100.00 | DCB had already billed 1.5 hours for "Draft Exhibit A to subpoena to Watts Capital, Secretary of State research related to Watts Capital, review address, and review subpoena and instructions for service." [See Fee App., Doc. No. 831-4, p.16]. Thus, LKW billed time for rendering services that DCB had already provided (i.e., "Secretary of State research related to Watts Capital"). Applicant provided no testimony as to why LKW's duplicative services merit approval. Thus, all of LKW's time here will be disallowed. |

## FEE APPLICATION CATEGORY: "CLAIMS"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/23/2013 | LKW | File and serve Amended Notice of Hearing on objections to Proof of Claims *(Doc. No. 407; 1 page; 10 pages filed) | 0.5 | $100.00 | $50.00 | 0.1 | $10.00 | It is excessive to bill 30 minutes to file and serve this document. It is acceptable to bill, at most, 6 minutes to file the 10 pages. Pursuant to the Certificate of Service attached to the amended notice, LKW served seven parties via First Class Mail and several other parties via ECF notification. Thus, it is acceptable for LKW to bill 18 minutes to serve the seven parties via First Class Mail. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/23/2013 | LKW | Draft Amended Notice of Hearing on objections to Proof of Claims *(Doc. No. 407; 1 page; 10 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 1-page pleading consists of only one, lengthy sentence that sets forth the date, time, and location of a continued hearing. Such information is straightforward and the only attachment is the ECF notification list, which is not part of the document that LKW drafted; LKW drafted only the 1-page document referred to as the "Amended Notice of Hearing." It is excessive to bill 30 minutes to draft this amended notice of continued hearing that contains the most basic information. |
| 10/24/2013 | LKW | File objection to Oleum Capital proof of interest *(Doc. No. 422; 5 pages; 16 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The task of filing this 16-page pleading (which includes the exhibits) does not require 30 minutes of time. It is acceptable to bill, at most, 6 minutes. |
| 10/24/2013 | LKW | File objection to Recap Marketing proof of interest *(Doc. No. 425; 5 pages; 18 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The task of filing this 18-page pleading (which includes the exhibits) does not require 30 minutes of time. It is acceptable to bill, at most, 6 minutes. |
| 10/24/2013 | LKW | File objection to Rhodes Holdings, LLC proof of interest *(Doc. No. 424; 5 pages; 18 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The task of filing this 18-page pleading (which includes the exhibits) does not require 30 minutes of time. It is acceptable to bill, at most, 6 minutes. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/24/2013 | LKW | File objection to WEM Equity proof of interest *(Doc. No. 423; 5 pages; 16 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The task of filing this 16-page pleading (which includes the exhibits) does not require 30 minutes of time. It is acceptable to bill, at most, 6 minutes. |
| 12/03/2013 | SKR | Finalize and file exhibit and witness list and index for hearing on objection to Proofs of Interest *(Doc. No. 540; 2 pages; 13 pages filed) | 0.5 | $110.00 | $55.00 | 0.3 | $33.00 | The activity description does not mention "drafting" of this witness and exhibit list. To finalize a previously-drafted document does not take more than 6 minutes. To file a 13-page pleading does not require more than 6 minutes. It is therefore acceptable to bill, at most, 12 minutes. |
| 12/03/2013 | SKR | Finalize and file exhibit and witness list and index for hearing on objection to Proofs of Claim *(Doc. No. 539; 4 pages; 13 pages filed) | 0.5 | $110.00 | $55.00 | 0.3 | $33.00 | The activity description does not mention "drafting" of this witness and exhibit list. To finalize a previously-drafted document does not take more than 6 minutes. To file a 13-page pleading does not require more than 6 minutes. It is therefore acceptable to bill, at most, 12 minutes for these tasks. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|-----------------------------------------------------------|
| 12/03/2013 | MSK | Drafted the Amended Notice of Hearing on Proofs of Interest set for December 5, 2013 *(Doc. No. 541; 1 page; 11 pages filed) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The only difference between the Amended Notice and the Original Notice of Hearing was an additional footnote. [*Compare* Doc. No. 541 *with* Doc. No. 535]. It is excessive to bill 18 minutes to "draft" an amended notice, which is substantially the same notice as the one previously filed. It is acceptable to bill, at most, 6 minutes. |
| 12/07/2013 | LKW | Finalize and file Debtor's Objection to American Equity Fund and Robert Rhodes Motion for Leave to Amend Proof of Claim *(Doc. No. 565; 8 pages; 14 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | The activity description does not mention "drafting" of this objection. The objection contains 8 pages of background and arguments. However, to finalize a previously-drafted 8-page document does not take more than 6 minutes. To file a 14-page pleading does not require more than 6 minutes. It is excessive to bill more than 12 minutes for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/06/2013 | SKR | Review and finalize the Objection to Motion to Leave to Amend Proofs of Claims *(Doc. No. 565; 8 pages; 14 pages filed) | 0.8 | $110.00 | $88.00 | 0.8 | $110.00 | MSK already received full credit of 3.1 hours for the drafting of the objection. (MSK entered 3.1 hours on 12/5/2013 for the following action: "Drafted response and objections to Rhodes and AEF's Motions for Leave to Amend Proofs of Claim.") SKR should not be able to recover on duplicate work done by different personnel (i.e., MSK). Applicant provided no testimony as to why SKR's duplicative services merit approval. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|-----------------|---------------------------------------------------------------|
| 12/06/2013 | MSK | Reviewed and revised the Response to the Motion for Leave to Amend | 1.1 | $185.00 | $203.50 | 1.1 | $203.50 | The pleading that was actually filed with this Court reflects that an "Objection" was filed, not a "Response." As the Court cannot find a "response" filed with regard to the Motion for Leave to Amend, it can only surmise that the Response and Objection are the same document. MSK already received full credit of 3.1 hours for the drafting of the Objection. (MSK entered 3.1 hours on 12/05/2013 for the following action: "Drafted response and objections to Rhodes and AEF's Motions for Leave to Amend Proofs of Claim."). This Response was only 8 pages and does not contain any unique language that would justify billing an additional 1.1 hours. Therefore, it is excessive to bill an additional 1.1 hours. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/04/2013 | SKR | Review, revise and finalize proposed orders denying Proofs of Claim numbers 34, 37, 38, 39, 40, 41, 42, 43, and Proofs of Interest numbers 368, 378, 395, 376, 377, 369, 370, 372, 373, and 374<br><br>*(Doc. Nos. 397-1; 398-1; 399-1; 400-1; 401-1; 402-1; 403-1)<br>*(Doc. Nos. 416-6; 423-2; 424-5; 422-4; 426-4) | 0.5 | $110.00 | $55.00 | 0.5 | $110.00 | MSK already received credit for the drafting of the proposed orders denying proofs of claim (see described entries below). SKR should not be able to recover on duplicate work already done by an attorney (i.e., MSK). These orders are each 1 page and straightforward. It is excessive for a legal assistant to bill 30 minutes to "review, revise, and finalize" these orders. |
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Claim 34<br>*(Doc. No. 397-1; 1 page; 30 pages filed including main document—Objection to Claim Number 34) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of claim. This appears to be a form template where MSK may use this same template for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Claim 37 and 38 *(Doc. No. 398-1; 1 page; 22 pages filed including main document—Objection to Claim Numbers 37 & 38) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic language disallowing the proof of claim. This appears to be a form template where MSK may use this same template for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Claim 39 *(Doc. No. 399-1; 1 page; 18 pages filed including main document—Objection to Claim Number 39) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of claim. This appears to be a form template where MSK may use this same template for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|-----------------|-------------------------------------------------------------|
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Claim 40 *(Doc. No. 400-1; 1 page; 18 pages filed including main document— Objection to Claim Number 40) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of claim. This appears to be a form template that may be used for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Claim 41 *(Doc. No. 401-1; 1 page; 19 pages filed including main document— Objection to Claim Number 41). | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of claim. This appears to be a form template that may be used for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Claim 42 *(Doc. No. 402-1; 1 page; 23 pages filed including main document— Objection to Claim Number 42) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of claim. This appears to be a form template that may be used for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Claim 43 *(Doc. No. 403-1; 1 page; 18 pages filed including main document— Objection to Claim Number 43) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of claim. This appears to be a form template that may be used for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Interest 368 *(Doc. No. 416-3; 1 page; 16 pages including main document— Objection to Proof of Interest) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of interest. This appears to be a form template that may be used for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Interest 378 *(Doc. No. 423-2; 1 page; 16 pages filed with main document— Objection to Proof of Interest) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of interest. This appears to be a form template that may be used for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|------------------------------------------------------------|
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Interest 375, 376, 377 *(Doc. No. 424-5; 1 page; 18 pages including main document—Objection to Proof of Interest) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of interest. This appears to be a form template that may be used for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Interest 369 and 370 *(Doc. No. 422-4; 1 page; 16 pages filed including main document—Objection to Proof of Interest) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of interest. This appears to be a form template that may be used for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |
| 12/04/2013 | MSK | Drafted Proposed Order Denying Proofs of Interest 372, 373, and 374 *(Doc. No. 426-4; 1 page; 18 pages filed including main document—Objection to Proof of Interest) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions disallowing the proof of interest. This appears to be a form template that may be used for every proposed order disallowing a proof of claim. It is acceptable to bill, at most, 6 minutes for this service. |

**FEE APPLICATION CATEGORY: "DIGERATI v. SONFIELD LITIGATION"**

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/12/2013 | LKW | Draft Notice of Issuance of Trial Subpoena for Robert L. Sonfield, Jr. *(Adv. Pro. No. 13-03118, Doc. No. 34; 1 page; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This notice contains only one sentence. A subpoena was simply attached to the notice, but the drafting of the notice itself—containing only one sentence—did not call for 30 minutes of billing. It is acceptable to bill, at most, 6 minutes for this service. |
| 07/26/2013 | LKW | Draft trial subpoena for R. Sonfield, Jr. for August 6th court setting *(Adv. Pro. No. 13-03118, Doc. No. 34; 2 pages; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | The trial subpoena contains 2 pages wherein the majority of the text is generic template information. As LKW need not fill in very many blanks, the drafting of this trial subpoena does not take 30 minutes. It is excessive to bill more than 12 minutes for this service. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/12/2013 | LKW | Draft subpoena for Robert L. Sonfield, Jr.<br>*(Adv. Pro. No. 13-03118, Doc. No. 34; 1 page; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.5 | $50.00 | It is unclear whether this specific subpoena is the same "trial subpoena" that was drafted by LKW on 07/26/2013 (see time entry immediately above). The trial subpoena for Mr. Sonfield that is attached to the Notice of Issuance filed on 07/30/2013 is the subpoena filed closest to the date of 07/12/2013. LKW already received credit for the entry on 07/26/2013 (i.e., "Draft trial subpoena for R. Sonfield, Jr. for August 6th court setting"). Without any testimony clarifying this point, this Court finds this entry is duplicative. This time entry will be disallowed in its entirety. |
| 07/29/2013 | LKW | Draft Trial Subpoena for J. Abney for August 6, 2013<br>*(Doc. No. 158; 2 pages; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The trial subpoena contains 2 pages wherein the majority of the text is generic template information. As LKW need not fill in very many blanks, the drafting of this trial subpoena does not take 30 minutes. Further, LKW merely changed a few words in a previously-prepared trial subpoena (i.e., R. Sonfield, Jr.). It is excessive to bill more than 6 minutes for this service. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/30/2013 | LKW | File Notice of Issuance of trial subpoena for R. Sonfield, Jr. *(Adv. Pro. No. 13-03118, Doc. No. 34; 1 page; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The task of filing this notice of issuance does not take more than 6 minutes as the pleading consists of only 7 pages total. Thus, it is acceptable to bill, at most, 6 minutes. |
| 08/02/2013 | LKW | Draft Notice of Sworn Return of Service of Subpoena on Robert L. Sonfield, Jr. *(Adv. Pro. No. 13-03118, Doc. No. 39; 1 page; 5 pages filed) | 0.5 | $100.00 | $50.00 | 0.5 | $50.00 | The Notice is essentially a duplicate of the notice described in the time entry previously billed on 08/02/2013 in the "General" section where LKW states, "Draft Notice of Sworn Return of Service of Subpoena on Robert L. Sonfield, Jr." LKW already received credit for the drafting of such document. Thus, this entry will be disallowed in its entirety as the Applicant seeks time drafting a duplicate subpoena. |
| 08/02/2013 | LKW | File Notice of Sworn Return of Service of Subpoena on Robert L. Sonfield, Jr. *(Adv. Pro. No. 13-03118, Doc. No. 39; 1 page; 5 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | The task of filing this notice of sworn return does not take more than 6 minutes as the pleading consists of only 5 pages total. Thus, it is acceptable to bill, at most, 6 minutes. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 02/20/2014 | LKW | Draft Agreed Order to Release Funds from the Registry | 0.5 | $100.00 | $50.00 | 0.5 | $50.00 | This Court is unable to locate this "Agreed Order to Release Funds from the Registry" in the main bankruptcy case and associated adversary cases. Further, the Applicant provided no testimony as to this specific activity. As this document appears to not have been filed and no testimony was provided regarding such pleading, no credit will be given for this specific activity. |
| 02/20/2014 | LKW | Draft Agreed Order to Dismiss the Case with Prejudice | 0.5 | $100.00 | $50.00 | 0.5 | $50.00 | This Court is unable to locate this "Agreed Order to Dismiss the Case with Prejudice" in the main bankruptcy case and associated adversary cases that was filed within the time period of 02/20/2014. Further, the Applicant provided no testimony as to this specific activity. As this document appears to not have been filed and no testimony was provided regarding such pleading, no credit will be given for this specific activity. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 02/27/2014 | LKW | File and serve Order for Dismissal and Order to Release Funds from the Registry | 0.5 | $100.00 | $50.00 | 0.5 | $50.00 | This Court is unable to locate this "Order for Dismissal and Order to Release Funds from the Registry" in the main bankruptcy case and associated adversary cases that was filed near the time period of 02/27/2014. Further, the Applicant provided no testimony as to this specific activity. As this document appears to not have been filed, and no testimony was provided regarding such pleading, no credit will be given for this specific activity. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/30/2013 | DCB | Draft motion for scheduling order. (pro rate time with other Aps) (2.5 pages) *(Adv. Pro. No. 13-03118; Adv. Doc. No. 11; 4 pages; 8 pages filed) | 0.8 | $275.00 | $220.00 | 0.4 | $110.00 | This 4-page motion contains 12 paragraphs and includes information regarding the background and the basis of the request. However, it is unreasonable to spend 48 minutes on this rather straightforward pleading. It is reasonable to bill, at most, 24 minutes. |

## FEE APPLICATION CATEGORY: "DIGERATI v. OLEUM LITIGATION"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/19/2013 | LKW | Draft Notice of Issuance of Trial Subpoena on Scott Hepford *(Doc. No. 120; 1 page; 5 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This notice contains one sentence referring the Court to the attached trial subpoena. The subpoena was simply attached to the notice, but the drafting of the notice itself—containing only one sentence—did not call for 30 minutes of billing. It is acceptable to bill, at most, 6 minutes for this serv'ce. |
| 07/19/2013 | LKW | Draft Notice of Hearing for July 22, 2013 *(Doc. No. 116; 1 page; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This is a 1-page, 1-sentence pleading which includes a basic recitation of a hearing date, time, and location. Billing 30 minutes on such pleading is excessive. It is acceptable to bill, at most, 6 minutes for this service. |
| 07/24/2013 | LKW | Draft Supplemental Certificate of Service regarding Contempt Motions served on S. Hepford by FedEx *(Doc. No. 151; 1 page; 3 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This pleading contains one lengthy sentence with no attachments. Billing 30 minutes on such pleading is excessive. It is acceptable to bill, at most, 6 minutes for this service. |

## FEE APPLICATION CATEGORY: "RHODES HOLDINGS v. GORHAM LITIGATION"

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/10/2013 | LKW | Finalize and file Notice of Appearance No. 13-03121 *(Adv. Pro. No. 13-03121, Adv. Doc. No. 26: 2 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | To "finalize and file" this 2-page notice should not take more than 6 minutes total. It is excessive to bill more than 6 minutes for this service. |
| 06/10/2013 | LKW | Draft Notice of Appearance for Adversary No. 13-03121 *(Adv. Pro. No. 13-03121, Adv. Doc. No. 26: 2 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This 2-page notice does not set forth any issues and/or arguments, but rather, appears to contain generic-template provisions in the body of the notice. It is excessive to bill more than 6 minutes for this service. |
| 06/14/2013 | MSK | Drafted the Proposed Order to Redact Financial Account Information *(Adv. Pro. No. 13-03121; Adv. Doc. No. 38-1: 1 page; 9 pages filed including main document—Emergency Motion to Redact) | 0.3 | $185.00 | $55.50 | 0.2 | $37.00 | The proposed order contains two short paragraphs that set forth generic provisions granting the Debtor's motion. This appears to be a form template used for every proposed order requesting the same relief. It is excessive to bill more than 6 minutes for this service. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|-------------|----------|-------|-------------|--------|----------------|-----------------|-----------------------------------------------------------|
| 06/14/2013 | MSK | Drafted Motion to Redact the Financial Account Information of MCI *(Adv. Pro. No. 13-03121; Adv. Doc. No. 38; 1 page; 9 pages filed ) | 0.7 | $185.00 | $129.50 | 0.5 | $92.50 | This 1-page pleading contains 4 paragraphs that appear to provide straightforward information without any argument and/or legal analysis. Billing 42 minutes on this rather short pleading is excessive. It is acceptable to bill, at most, 12 minutes for this task. |
| 06/15/2013 | MSK | Drafted the Motion to Redact Financial Account Information from the Order Amending the TRO *(Adv. Pro. No. 13-03121; Adv. Doc. No. 41; 2 pages; 8 pages filed) | 0.4 | $185.00 | $74.00 | 0.2 | $37.00 | This 2-page pleading contains 4 paragraphs that appear to provide straightforward information without any argument and/or legal analysis. Billing 24 minutes on this rather short pleading is excessive. It is acceptable to bill, at most, 12 minutes for this task. |
| 06/17/2013 | LKW | File Certificate of Service regarding Order Granting Emergency Motion of MCI Partners, LLC to Amend Temporary Restraining Order *(Adv. Pro. No. 13-03121; Adv. Doc. No. 46; 1 page; 2 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | The filing of this 2-page certificate does not take more than 6 minutes to complete. Billing 24 minutes to file this certificate is excessive. |
| 06/17/2013 | LKW | Draft Certificate of Service regarding Order Granting Emergency Motion of MCI Partners, LLC to Amend Temporary Restraining Order *(Adv. Pro. No. 13-03121; Adv. Doc. No. 46; 1 page; 2 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This pleading contains two sentences with no attachments. Billing 30 minutes on such pleading is excessive. It is acceptable to bill, at most, 6 minutes for this task. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/18/2013 | MSK | Reviewed and revised the Notice of Hearing and certificate of service on the Ex Parte Motion to Redact *(Adv. Pro. No. 13-03121; Adv. Doc. No. 49; 1 page; 6 pages filed) | 0.4 | $185.00 | $74.00 | 0.3 | $55.50 | This is a 1-sentence pleading. To "review" and "revise" a 1-sentence document and its certificate of service does not require 24 minutes. It is acceptable to bill, at most, 6 minutes for this task. |
| 06/25/2013 | SKR | Draft and file a Notice of Issuance of Document Subpoena to RipoffReport.com and Xcentric Ventures LLC *(Adv. Pro. No. 13-03121; Doc. No. 69; 1 page; 8 pages filed) | 0.5 | $110.00 | $55.00 | 0.3 | $33.00 | This 1-page Notice of Issuance does not require more than 6 minutes to draft, especially when LKW had drafted a similar document for other witnesses (e.g., 07/08/2013 – "Draft and file Notice of Issuance of Subpoena Duces Tecum for Rule 2004 Examination to Xcentric Ventures, LLC" entered by LKW). Filing this particular Notice requires, at most, 6 minutes. |
| 07/15/2013 | LKW | Finalize and file Notice of Hearing regarding Debtor's Motion to Intervene *(Adv. Pro. No. 13-03121; Adv. Doc. No. 88; 1 page; 6 pages filed) | 0.4 | $100.00 | $40.00 | 0.2 | $20.00 | This activity description does not include "drafting," but instead "finalizing] and fil[ing]." It does not take more than 6 minutes to finalize a 1-sentence document, and it does not require more than 6 minutes to file a 6-page pleading. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/15/2013 | LKW | Draft Notice of Hearing regarding Debtor's Motion to Intervene *(Adv. Pro. No. 13-03121; Adv. Doc. No. 88; 1 page; 6 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This 1-page, 1-sentence pleading with no attachments or exhibits does not require more than 6 minutes to prepare. Billing 30 minutes on a 1-sentence pleading is excessive. |
| 07/18/2013 | LKW | Draft Motion to Expedite Consideration on Debtor's Motion for 1) Contempt and Sanctions for Willful Violation of the Automatic Stay by Harold Gewerter, and, 2) To Compel Turnover of Documents and Retainer from Harold Gewerter, a Nevada Attorney, Who Claims to Represent the Debtor Post-Petition in main bankruptcy case *(Doc. No. 105; 3 pages; 9 pages filed) | 0.7 | $100.00 | $70.00 | 0.3 | $30.00 | This is a 3-page motion that contains 6 paragraphs. The motion is straightforward and provides information regarding previously-filed pleadings. It does not require 42 minutes to draft a pleading such as this. It is acceptable to bill, at most, 24 minutes for this task. |
| 07/18/2013 | DCB | Draft motion for emergency consideration of Hepford and Geweter motion and order regarding same (1.) *(Doc. No. 105; 3 pages; 9 pages filed) | 1.0 | $275.00 | $275.00 | 0.8 | $220.00 | This activity description appears to relate to a similar entry on 07/18/2013 by LKW ("Draft Motion to Expedite Consideration...") with the exception of the drafting of an order. As this document was previously drafted by LKW, no more than 12 minutes is required to review such motion and draft an order. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/26/2013 | LKW | Draft Supplemental Certificate of Service for Digerati's Designation of the Record on Appeal *(Adv. Pro. No. 13-03121; Adv. Doc. No. 94; 1 page; 3 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This is a 1-page, 1-sentence supplemental certificate of service. The document contains no exhibits or attachments. Billing 30 minutes on the drafting of a 1-sentence pleading is excessive. It is acceptable to bill, at most, 6 minutes for this task. |
| 07/26/2013 | LKW | Draft trial subpoena for R. Sonfield, Jr. for August 6th court setting | 0.5 | $100.00 | $50.00 | 0.5 | $50.00 | This time entry appears to have been previously billed on 07/26/2013 in the "Digerati v. Sonfield Litigation" section. This entry will be disallowed in its entirety as it is a duplicate time entry. |
| 07/26/2013 | LKW | File and serve Supplemental Certificate of Service for Digerati's Designation of the Record on Appeal *(Adv. Pro. No. 13-03121; Adv. Doc. No. 94; 1 page; 3 pages filed) | 0.5 | $100.00 | $50.00 | 0.2 | $20.00 | Filing of a 3-page pleading does not require more than 6 minutes. The supplemental certificate shows that only one person was served via First Class Mail while several other parties were noticed by ECF notification. It does not require more than 12 minutes to serve by ECF to several parties or First Class Mail to one individual. Billing 30 minutes to file and serve a supplemental certificate of service is excessive. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/30/2013 | LKW | File Notice of Issuance of trial subpoena for J. Abney and R. Sonfield Jr. *(Doc. No. 158; 1 page; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.5 | $50.00 | This time entry appears to have been previously billed on 07/12/2013 in the "Digerati v. Sonfield Litigation" section where the activity description states, "File Notice of Issuance of trial subpoena for R. Sonfield, Jr." This entry will be disallowed in its entirety as it is a duplicate time entry. |
| 08/08/2013 | LKW | File Amended Proposed Order relating to Debtor's Motion to Intervene *(Adv. Pro. No. 13-03121; Adv. Doc. No. 96; 1 page; 1 page filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | This 1-page proposed order contains 2 short paragraphs that reflect standard provisions typically used in orders where this specific request is made. Filing a 1-page order should take no more than 6 minutes. It is excessive to bill 24 minutes for this task. |
| 08/08/2013 | LKW | Draft Amended Proposed Order relating to Debtor's Motion to Intervene *(Adv. Pro. No. 13-03121; Adv. Doc. No. 96; 1 page; 1 page filed) | 0.3 | $100.00 | $30.00 | 0.3 | $30.00 | This entry is disallowed in its entirety because this proposed order is less than one page and DCB already billed 0.2 hours for modifying and reviewing the order. [See Fee App., Doc. No. 831-4, p. 155]. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 08/27/2013 | LKW | Draft Notice of Hearing regarding Digerati Technologies, Inc.'s Motion to Dismiss Appeal Due to Lack of Standing and Lack of Subject Matter Jurisdiction with Incorporated Brief in Support *(Adv. Pro. No. 13-03121; Adv. Doc. No. 102; 1 page; 4 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This is a 1-page, 1-sentence pleading which includes a basic recitation of the hearing date, time, and location. Billing 30 minutes on such a pleading is excessive. It is acceptable to bill, at most, 6 minutes for this task. |
| 08/27/2013 | LKW | File Notice of Hearing regarding Digerati Technologies, Inc.'s Motion to Dismiss Appeal Due to Lack of Standing and Lack of Subject Matter Jurisdiction with Incorporated Brief in Support *(Adv. Pro. No. 13-03121; Adv. Doc. No. 102; 1 page; 4 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | This document is only 4 pages total and, therefore, it does not require more than 6 minutes to file this notice of hearing. Billing 24 minutes to file this document is excessive. |
| 08/29/2013 | LKW | Draft Notice of Hearing relating to Motion for Entry of Scheduling Order *(Adv. Pro. No. 13-03121; Adv. Doc. No. 104; 1 page; 4 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This 1-page notice of hearing contains only one sentence. Further, LKW had already drafted and filed another notice of hearing (e.g., 06/19/2013 – "Draft Notice of Hearing on Application to Employ Counsel for Debtor-In-Possession") and, therefore, should have been able to use the prior draft as a basic template. Thus, it is excessive to bill 30 minutes to draft this one-sentence document. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 08/30/2013 | LKW | File Notice of Hearing relating to Motion for Entry of Scheduling Order *(Adv. Pro. No. 13-03121; Adv. Doc. No. 104; 1 page; 4 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | Filing a 4-page pleading does not take more than 6 minutes. It is excessive to bill 24 minutes for this task. |
| 09/23/2013 | LKW | File Summons for Robert C. Rhodes, II *(Adv. Pro. No. 13-03121; Adv. Doc. No. 126; 2 pages; 2 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | Filing a 2-page pleading does not take more than 6 minutes. There are no attachments or exhibits. It is excessive to bill 24 minutes for this task. |
| 09/23/2013 | LKW | Draft Summons for Robert C. Rhodes, II *(Adv. Pro. No. 13-03121; Adv. Doc. No. 126; 2 pages; 2 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This 2-page document appears to be a general template wherein the legal assistant simply inputs certain information in the appropriate section. As most of the information on the document was part of the template, it should not take more than 12 minutes to input the necessary information. |
| 09/27/2013 | LKW | Draft Summons for P. Johnson for service for Turks and Caicos address through Hague Convention through Court *(Adv. Pro. No. 13-03121; Adv. Doc. Nos. 132; 2 pages; 2 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This summons request contains 2 pages that appear to be a general template wherein the legal assistant simply inputs certain information in the appropriate section. As most of the information on the document was part of the template, it should not take more than 12 minutes to input the necessary information. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 09/27/2013 | LKW | Draft Summons for P. Johnston for service for Turks and Caicos address *(Adv. Pro. No. 13-03121; Adv. Doc. Nos. 130-31; 4 pages; 4 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | These two requests for summons each contain 2 pages that appear to be a general template wherein the legal assistant simply inputs certain information in the appropriate section. Because these summons are to the same person, there is no good reason why LKW cannot duplicate the same pleading. Each summons request does not take more than 6 minutes. Billing 30 minutes for drafting essentially the same document is excessive. |
| 10/02/2013 | LKW | Finalize and file executed summons for P. Johnson at his Turks & Caicos address *(Adv. Pro. No. 13-03121; Adv. Doc. Nos. 130-32; 6 pages; 6 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This activity does not include the "drafting" of the summons at the Turks & Caicos address. In any event, it does not take more than 6 minutes to finalize the summons request, especially when previous summons requests (that look essentially the same) have previously been drafted. This document contains only 6 pages and, therefore, it does not require more than 6 minutes to file. It is excessive to bill 30 minutes for these services. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 10/02/2013 | LKW | Finalize and file executed summons for P. Johnson at his Canadian address <br> *(Adv. Pro. No. 13-03121; Adv. Doc. Nos. 129; 2 pages; 2 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This activity does not include the "drafting" of the summons at the Canadian address. In any event, it does not take more than 6 minutes to finalize the summons request, especially when previous summons requests have already been drafted. This document contains only 2 pages and, therefore, it does not require more than 6 minutes to file. Thus, it is excessive to bill 30 minutes for these services. |
| 10/02/2013 | LKW | Prepare service on P. Johnson in Canada and Turks & Caicos Islands <br> *(Adv. Pro. No. 13-03121; Adv. Doc. Nos. 137; 4 pages; 4 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This appears to be a general template wherein LKW need only insert information in the appropriate blanks. It is excessive to bill 30 minutes to fill in the blanks. |
| 02/14/2014 | LKW | Finalize and file Agreed Amended Motion to Dismiss Adversary Proceeding <br> *(Adv. Pro. No. 13-03121; Adv. Doc. Nos. 141; 3 pages; 9 pages filed) | 0.5 | $100.00 | $50.00 | 0.3 | $30.00 | This activity does not include the "drafting" of the agreed amended motion to dismiss adversary proceeding. The motion itself is 3 pages and, to "finalize" does not take more than 6 minutes. Filing a 9-page pleading does not require more than 6 minutes. Billing 30 minutes to complete both tasks is excessive. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 02/14/2014 | LKW | Filed Agreed Motion to Dismiss Adversary Proceeding *(Adv. Pro. No. 13-03121; Adv. Doc. Nos. 141; 3 pages; 9 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This Agreed Motion to Dismiss contains only 9 pages and, therefore, it does not require 30 minutes to file. It is acceptable to bill, at most, 6 minutes for this task. |
| 06/30/2013 | DCB | Draft motion for scheduling order (pro rated) *(Adv. Pro. No. 13-03121; Adv. Doc. No. 79; 4 pages; 10 pages filed) | 0.8 | $275.00 | $220.00 | 0.8 | $220.00 | This time entry appears to have been previously billed on 06/30/2013 in the "Digerati v. Sonfield" section where DCB states, "Draft motion for scheduling order. (pro rate time with other Aps)." DCB already received full credit for the drafting of such document (0.4 hour). To the extent that the Applicant's position is that DCB has not received full credit because she pro-rated her time—spreading out the total time she spent drafting this motion equally to other adversary proceedings on a pro-rata basis—the Court finds that the sum of the pro-rated amounts is excessive. This motion is a 4-page pleading that is fairly generic and contains no case law citations or any complex substantive issues. Indeed, this Court's allowance of 0.4 hour for this task in the "Digerati v. Sonfield" category is quite liberal. |

| | | FEE APPLICATION CATEGORY: "SONFIELD v. ALBECK LITIGATION" | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
| 06/04/2013 | LKW | File Notice of Removal in state court proceeding *(Adv. Pro. No. 13-03119, Doc. No. 4; 5 pages; 8 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | The activity description does not include "drafting" this notice. The filing of an 8-page pleading does not require more than 6 minutes to complete. Billing 30 minutes for this task is excessive. |
| 07/26/2013 | LKW | Draft and file trial subpoena for R. Sonfield, Jr. for August 6th court setting *(Adv. Pro. No. 13-03119, Adv. Doc. No. 21; 1 page; 7 pages filed) | 0.5 | $100.00 | $50.00 | 0.4 | $40.00 | This time entry appears to have been previously billed on 07/26/2013 in the "Digorati v. Sonfield" section where LKW states, "Draft trial subpoena for R. Sonfield, Jr. for August 6th court setting." Further, the filing of the trial subpoena was attached to the Notice of issuance, filed on 7/30/2013 by LKW, of which the time entry states, "File Notice of issuance of trial subpoena for R. Sonfield, Jr." Thus, this entry will be disallowed to the extent that the Applicant seeks any time for drafting the subpoena. The Court will allow 6 minutes for filing the subpoena in this adversary proceeding. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|------|--------------|----------|-------|-------------|--------|----------------|-----------------|-------------------------------------------------------------|
| 08/02/2013 | LKW | File Notice of Sworn Return of Service of Subpoena on Robert L. Sonfield, Jr. *(Adv. Pro. No. 13-03119, Doc. No. 25; 1 page; 4 pages filed) | 0.4 | $100.00 | $40.00 | 0.3 | $30.00 | This Notice is a 1-page pleading. The Court will allow 6 minutes for filing the subpoena in this adversary proceeding. Any additional time is unreasonable. |
| 08/02/2013 | LKW | Draft Notice of Sworn Return of Service of Subpoena on Robert L. Sonfield, Jr. *(Adv. Pro. No. 13-03119, Doc. No. 25; 1 page; 4 pages filed) | 0.5 | $100.00 | $50.00 | 0.5 | $50.00 | The Notice is essentially a duplicate of the notice described in the time entry previously billed on 08/02/2013 in the "General" section where LKW states, "Draft Notice of Sworn Return of Service of Subpoena on Robert L. Sonfield, Jr." LKW already received credit for the drafting of such document. Thus, this entry will be disallowed in its entirety as the Applicant seeks time drafting a duplicate subpoena. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 06/30/2013 | DCB | Draft motion for scheduling order. (pro rated) *(Adv. Pro. No. 13-03119; Adv. Doc. No. 9; 4 pages; 6 pages filed) | 0.5 | $275.00 | $137.50 | 0.5 | $137.50 | This time entry appears to have been previously billed on 06/30/2013 in the "Digerati v. Sonfield" section where DCB states, "Draft motion for scheduling order. (pro rate time with other Aps)." DCB already received full credit for the drafting of such document (0.4 hour). To the extent that the Applicant's position is that DCB has not received full credit because she pro-rated her time—spreading out the total time she spent drafting this motion equally to other adversary proceedings on a pro-rata basis—the Court finds that the sum of the pro-rated amounts is excessive. This motion is a 4-page pleading that is fairly generic and contains no case law citations or any complex substantive issues. Indeed, this Court's allowance of 0.4 hour for this task in the "Digerati v. Sonfield" category is quite liberal. |

| Date | Professional | Activity | Hours | Hourly Rate | Amount | Hours Excluded | Amount Excluded | The Court's Findings as to why the time billed is excessive |
|---|---|---|---|---|---|---|---|---|
| 07/03/2013 | DCB | Draft motion for entry of scheduling order (prorated) and review state court docket and Bexar County docket for preparing same *(Adv. Pro. No. 13-03119: Adv. Doc. No. 9: 4 pages: 6 pages filed) | 0.7 | $275.00 | $192.50 | 0.7 | $192.50 | This time entry appears to have been previously billed on 06/30/2013 in the "Digerati v. Sonfield" section where DCB states, "Draft motion for scheduling order. (pro rate time with other Aps)." DCB already received credit for the drafting of such document (0.4 hour. To the extent that the Applicant's position is that DCB has not received full credit because she pro-rated her time—spreading out the total time she spent drafting this motion equally to other adversary proceedings on a pro-rata basis—the Court finds that the sum of the pro-rated amounts is excessive. This motion is a 4-page pleading that is fairly generic and contains no case law citations or any complex substantive issues. Indeed, this Court's allowance of 0.4 hour for this task in the "Digerati v. Sonfield" category is quite liberal. |

| | Hours Excluded | Amount Excluded |
|---|---|---|
| **TOTAL AMOUNT DISALLOWED** | 78.9 | $11,299.00 |